IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: UBS FINANCIAL SERVICES, INC. OF PUERTO RICO SECURITIES LITIGATION | CIVIL NO. 12-1663 (CCC)<br><br>JURY TRIAL DEMANDED<br><br>SECURITIES CLASS ACTION |

**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)
OF THE FEDERAL RULES OF CIVIL PROCEDURE**

**TO THE HONORABLE COURT**:

**COME NOW** Co-defendants THE PUERTO RICO INVESTORS TAX-FREE FUND IV, INC. ("PRTIFF IV") and the Puerto Rico Investors Bond Fund I ("PRIBF I") (collectively, "Appearing Funds"), through the undersigned counsel, and respectfully allege and pray as follows:

I.   **INTRODUCTION**

This is a purported class action lawsuit in which five named plaintiffs attempt to bring an action on behalf of all persons who acquired shares of certain closed end funds ("CEFs"), among them PRTIFF IV and PRIBF I, in the period between January 1, 2008 and May 1, 2012. Plaintiffs allege, in a general form, that during this period, UBS Financial Services, Inc. of Puerto Rico ("UBS PR"), UBS Financial Services, Inc. ("UBSFS"), Miguel Ferrer and Carlos Ortiz (collectively defined by Plaintiffs as "Defendants") marketed and sold the CEFs without disclosing material facts and supposedly misrepresenting others. Plaintiffs allege that UBS PR, UBSFS, Ferrer and/or Ortiz marketed and sold the shares of the CEFs without disclosing and/or misrepresenting that: (1) the prices for the CEFs were set by co-defendant Ortiz, (2) that the

prices were not based on market forces such as supply and demand, and (3) that UBS PR controlled the secondary market for the CEFs and was artificially propping up the liquidity of such market by buying millions of dollars of CEF shares into its own inventory.  Plaintiffs also complain that, later, UBS PR began to shed its inventory of CEF shares and that "Defendants" (*i.e.,* UBS PR, UBSFS, Ferrer, and Ortiz) did not disclose as much.

The allegations and claims made in the Consolidated Amended Complaint (Docket # 45) should be dismissed as to PRITFF IV and PRIBF I.  Even viewed under the most generous of standards –and the instant action, as a securities class action, is subject to heightened pleading standard, as discussed below-- the Complaint would fail as to PRITFF IV and PRIBF I because there are absolutely no factual allegations that implicate any action or wrongdoing by the Appearing Funds.  As such, the Consolidated Amended Complaint must be dismissed for failure to plead a viable claim against the Appearing Funds.  Indeed, besides mentioning PRITFF IV and PRIBF I at the initial paragraphs of the Consolidated Amended Complaint in which a presentation of all Defendants is made, the Consolidated Amended Complaint makes no further allegation concerning these two particular Funds.  Even a review of the specific causes of action in the Consolidated Amended Complaint shows that no claim is included or intended against the Appearing Funds, as not one of the counts in the Consolidated Amended Complaint is directed against the Appearing Funds.

In light of the above, the Consolidated Amended Complaint should be immediately dismissed as to PRITFF IV and PRIBF I as even a cursory review of the document reveals that no plausible claim exists against either.  *Alternatively*, dismissal would still be warranted for the reasons explored by co-defendants UBSFS, UBS PR, Ferrer, Ortiz, Puerto Rico Fixed Income

Fund III, Inc. and Puerto Rico Fixed Income Fund V, Inc. in their Motion to Dismiss (Docket # 50), which Appearing Funds hereby join and adopt by reference.

## II.   STANDARD OF REVIEW

Under FRCP 12(b)(6), the Court may dismiss a Plaintiff's complaint if it fails to state a claim upon which relief may be granted.  Pursuant to Ashcroft v. Iqbal, 556 U.S. 662 (hereinafter, "Iqbal") and Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S. Ct. 1955 (hereinafter, "Twombly"), in order to survive a motion to dismiss a complaint must plead enough facts to make the claim facially plausible.  Two key principles underlie the standard for reviewing motions to dismiss: first, that while a Court must accept as true all well pleaded factual allegations, that does not extend to legal conclusions, conclusory statements, and threadbare recitals of the elements of a cause of action; and, second, that only complaints that state a "plausible claim for relief" can survive dismissal.  Iqbal at 1949-1950 (quoting Twombly at 555-556) (internal quotation marks omitted).   When the well pleaded facts allow the Court to infer no more "than the mere possibility of misconduct, the complaint has alleged, but it has not shown that the pleader is entitled to relief."  Iqbal at 1950 (citing Fed. R. Civ. P. 8) (internal quotation marks omitted).  Indeed,  "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."   Iqbal at 1949 (quoting Twombly at 557) (internal quotation marks omitted).

In order to apply those legal principles, the Iqbal Court counseled courts faced with a motion to dismiss to apply a two-pronged approach.  First, courts may identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Iqbal at 1950.

-3-

Then, the court may address the well-pleaded factual allegations to determine "whether they plausibly give rise to an entitlement to relief." Id.

Furthermore, as a securities class action asserting claims under §§ 10(b) and 20(a) of the Securities Exchange Act, as well as common law fraud, Plaintiffs' Consolidated Amended Complaint is subject to a heightened pleading standard under Fed. R. Civ. P. 9 and the Private Securities Litigation Reform Act ("PLSRA").  See, *e.g.*, Hoff v. Popular, Inc., 727 F. Supp. 2d 77, 87 (D.P.R. 2010).  Fed. R. Civ. P. 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Moreover, the PLRSA, 15 U.S.C. §78u-4(b), includes stringent requirements as to allegations concerning misleading statements and omissions and the defendants' state of mind which require Plaintiffs in an action such as this to plead those elements with particularity.  Specifically, and pursuant to the PLRSA, Plaintiffs are required to allege "each statement alleged to have been misleading, the reason or reasons why the statement is misleading," and state "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. §78u-4(b) (1) and (2).

### III. DISCUSSION

#### A. Factual Background as Alleged in the Consolidated Amended Complaint

Plaintiffs allege, in general form, that in the period between January 1, 2008 to May 1, 2012 (the "Class Period," see ¶107 of the Consolidated Amended Complaint), the Defendants (defined at ¶1 as UBS PR, UBSFS, Miguel Ferrer, and Carlos Ortiz) executed a scheme by which they marketed and sold shares of certain named CEFs –including Appearing Funds—to customers in Puerto Rico without disclosing and/or misrepresenting material facts, to wit: (1)

that CEF prices were not based on market forces, such as supply and demand, but rather set by Co-defendant Ortiz, (2) that UBS PR controlled the secondary market for the CEFs and the sales that the investors wanted to make depended on whether (a) UBS PR was able to procure further investors to buy the shares or (b) UBS PR was willing to buy the shares itself, (3) that UBS PR acquired million of dollars' worth of shares in the CEFs to promote the appearance of a liquid market, and (4) that UBS PR later engaged in an undisclosed sell off of its inventory.  See generally, Consolidated Amended Complaint ¶4.

With a tad more specificity, Plaintiffs allege that UBS PR used a "dividend reinvestment program" as a primary selling point for the CEFs.  Consolidated Amended Complaint ¶39.  Per that program, investors could receive dividends in the form of reinvestment shares issued at the Net Asset Value ("NAV") of the Funds and then sell them to UBS PR at the market price, so as to earn a premium.  Id.  Plaintiffs further allege that, particularly in 2008 and 2009, Defendants (i.e., UBS PR, UBSFS, Ferrer, and Ortiz, as per ¶1 of the Consolidated Amended Complaint) priced the CEFs not at market value, but in a way designed to reduce volatility and keep high premium to NAV.  Id at ¶401.  Plaintiffs add that UBS PR used its inventory account to purchase excess supply of the shares of the CEFs so as to create the illusion of a "viable market."  Id at ¶41.

As Per Plaintiffs' account, by some point in 2008, co-defendant Ortiz became aware that the supply of CEF shares outstripped demand and the market was becoming illiquid.  Consolidated Amended Complaint at ¶49.  Nonetheless, Plaintiffs allege, in December 2008 UBS PR sought, and obtained, from UBSFS, an increase in its inventory limits of the CEFs.  Id at ¶51.  Plaintiffs argue that such inventory limit increase was made so as to dissimulate the failing market from investors.  Id at ¶52.

Plaintiffs further contend that in 2008, Defendants continued to promote the CEFs without disclosing and/or misstating the strength, stability, and liquidity of the market for CEFs. Consolidated Amended Complaint ¶¶56-71. Specifically, Plaintiffs allege that the omissions or misstatements were made to financial advisors. Id. Despite the foregoing, Plaintiffs allege that throughout the fall of 2008 and 2009, UBS PR continued to buy CEF shares into its inventory and that, by December 2008, it had exceeded its CEF inventory limit. Consolidated Amended Complaint ¶¶ 72-73.

Thereafter, UBSFS directed UBS PR to reduce its inventory in the CEFs, first to $30 Million and then to $12 Million. Consolidated Amended Complaint at ¶¶ 76, 79. Plaintiffs contend that in order to comply with such instruction, UBS PR came up with a strategy titled "Objective: Soft Landing" which entailed both purchasing the minimum amount of shares possible from clients and lowering UBS PR's prices so as to keep ahead of client orders. Id at 80. Plaintiffs conclude that such plan and strategy would have a negative impact on Plaintiffs and the proposed Class. Id. Plaintiffs further allege that in executing this strategy, co-defendants UBS PR, Ferrer, and Ortiz made omissions and misrepresentations of material facts. Id at ¶¶88-94.

Plaintiffs conclude that as a result of the above, they "suffered millions of dollars of damages" because the CEF values declined *or* they possess unexecuted sell orders. Consolidated Amended Complaint at ¶99.

On the basis of these central allegations, Plaintiffs plead nine counts against several Defendants. Count I is for alleged violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b) and Rule 10b-5 promulgated thereunder and it is directed specifically against UBS PR, Ferrer, and Ortiz. See Consolidated Amended Complaint, p. 34. Counts II and

III are for alleged violations of Section 20(a) of the Securities Exchange Act of 1934 and are directed specifically against Ferrer and Ortiz (Count II) and USBSFS (Count III).  Id, p. 36 and 38.  Count IV is for alleged violations to the Puerto Rico Securities Act and is directed against "All Defendants."  Id, p. 40.  Counts V, VI, and VII are for alleged fraudulent inducement (Count V), negligent misrepresentation (Count VI), and fraudulent misrepresentation (Count VII) and are directed against UBS PR and Ferrer and Ortiz.  Id, p. 41, 42, and 43.  Count VIII is for "rescission" and is directed against "All Defendants."  Id, p. 44.  Finally, Count IX is for alleged breach of the implied duty of good faith and is directed against UBS PR and Ferrer and Ortiz. Id.

### B.  Dismissal for Failure to Plead a Plausible Claim Against Appearing Funds

A careful review of the Consolidated Amended Complaint shows that Plaintiffs have failed to plead any facts that would support a plausible entitlement to relief as against the Appearing Funds.  The factual allegations in the Consolidated Amended Complaint all refer to alleged actions, omissions and misrepresentations undertaken by UBS PR, UBSFS, and Ferrer, and Ortiz.  Without suggesting that those factual allegations are actually enough to support the claims against those Defendants, the fact of the matter is that the Consolidated Complaint is simply devoid of *any* factual allegation concerning actions or misconduct by the Appearing Funds.

Indeed, the Appearing Funds are each mentioned a grand total of two times in the entire Consolidated Amended Complaint: in the introduction of the Plaintiffs, in which Plaintiffs set forth that Plaintiffs Román Rivera and Román purchased shares from PRITFF IV and PRIBF I, and in the respective paragraphs in which each fund is identified.  See ¶¶ 13, 20, and 24.  None

of those allegations makes any reference to any wrongdoing, indeed, any action, undertaken by the Funds and which could lead to a plausible entitlement to relief.

Furthermore, Plaintiffs identified "Defendants" in this action as UBS PR, UBSFS, Ferrer, and Ortiz.  See ¶1 of the Consolidated Amended Complaint.  Co-defendants Ferrer and Ortiz together (but without UBS PR or UBSFS) were also identified as "Individual Defendants."  Id, ¶37.  By contrast, none of the CEFs identified at ¶¶20-33 were included in the collective identification of "Defendants."  The group of CEFs, instead, was identified simply as the "Funds."  Id at ¶34.

Whatever the merits of Plaintiffs' claims against UBS PR, UBSFS, Ferrer, and Ortiz, Plaintiffs cannot pretend to maintain an action against the Appearing Funds on the basis of actions, representations, misrepresentations, and omissions which Plaintiffs themselves repeatedly allege were undertaken by persons or entities *other than* Appearing Funds.  Indeed, under these circumstances, when the Iqbal Court's guidelines are followed, we find that after stripping the Consolidated Amended Complaint of conclusory allegations, there are simply no factual allegations (let alone well-pleaded factual allegations) to consider so as to determine whether they are enough to plausibly give rise to an entitlement to relief.  See Iqbal at 1950. Moreover, a review of the nine specific counts set forth in the Consolidated Amended Complaint shows that none are directed against the Appearing Funds.  Counts I, V, VI, VII, and IX are expressly directed against UBS PR and the Individual Defendants (which, as explained above, is a term defined by Plaintiffs themselves to include only Ferrer and Ortiz).  Count II is expressly directed only at the Individual Defendants.  Count III is expressly directed only at UBS FS. Finally, Counts IV and VIII are expressly directed at "All Defendants."  Given, however, that Plaintiffs defined "Defendants" to include only UBS PR, UBSFS, Ferrer, and Ortiz, see

Consolidated Amended Complaint ¶1, and that the collective nomenclature for the CEFs (including Appearing Funds) is "Funds," these claims are also not directed at the Appearing Funds.

Even if Plaintiffs pretend that Counts IV and VIII be directed against the Funds (which would include Appearing Funds), given that they failed to make any well-pleaded factual allegation that would entitle them to the relief sought through those counts (as explained in the preceding paragraphs), these counts against Appearing Funds would have to be dismissed. As there is no doubt that Plaintiffs had absolutely no intention to address the remaining counts to Appearing Funds (or any other Fund, for that matter), such dismissal would entail the dismissal of the entire Consolidated Amended Complaint, at least as against Appearing Funds.

### C. Alternative Reasons for Dismissal

Furthermore, Counts IV and VIII --the only ones that could remotely be said to apply to Appearing Funds-- are subject to dismissal for additional, alternative reasons.

*1. Count IV of the Consolidated Amended Complaint*

Count IV is a claim for violation of Puerto Rico's Uniform Securities Act ("PRUSA"), 10 P.R. Laws Ann. §§851-898, specifically of section §890, which at subsection (a)(2) provides in relevant part that:

> (a) Any person who:
> …
> (2) offers or sells a security by means of a false statement of a material fact or omitting to state a material fact needed to prevent that any statement made, in the light of the circumstances under which it was made, leads to misunderstanding (the buyer not knowing of the falsehood or omission), and does not support the burden of proof that he did not know, and in exercising reasonable prudency could not have known of the falsehood or omission, shall be liable to the person who buys the security, who may file suit to recover the price paid for the security, [in addition to interests, costs, and reasonable attorney's fees]  less the sum of any income received on, upon the tender of the security, or for damages if he no longer owns the security.

There are three alternative reasons –besides the failure to plead a plausible entitlement to relief, as set forth above— that require dismissal of Count IV: (a) it is barred by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §78bb(f)(1), (b) Plaintiffs have no cognizable claim against Appearing Funds based on Section 890, and (c) in any event it is time-barred.

    a. SLUSA

SLUSA provides in relevant part that:

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--
(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. §78bb(f)(1).

The instant action is a "covered class action" as it involves two lawsuits consolidated as a single action and seeks damages on behalf of more than fifty persons. See 15 U.S.C. §78bb(f)(5)(B); Consolidated Amended Complaint ¶9 (alleging that there are over 100 class members). Furthermore, the instant Count is based on the statutory law of Puerto Rico, specifically PRUSA. Furthermore, the claim is based on alleged misrepresentations or omissions of material facts in connection with the purchase or sale of a security. See Consolidated Amended Complaint at ¶146 and allegations throughout such pleading. Finally, the security at issue is a "covered security," as required by SLUSA, inasmuch as Appearing Funds invest in covered securities (which includes securities "listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing, on the

National Market System of the Nasdaq Stock Market," 15 U.S.C. §77r(b)(1)(A)[1]).  As this Court has recently held, most Courts have held that SLUSA "applies to cases brought by investors of a fund that invests, or represents that it will invest, in a covered security, even when the shares of the fund in which the class invested are not covered securities."  Hidalgo-Vélez v. San Juan Asset Mgmt., Inc., Civil No. 11-2175 (D.P.R., Sept. 24, 2012) (CCC), *available at* 2012 WL 4427077 (string citation omitted).

Accordingly, SLUSA bars the present action, and, as such, Count IV of the Consolidated Amended Complaint must be dismissed.

    b.  No cognizable Section 890 Claim Against Appearing Funds

As noted above, PRUSA §890 provides for a civil action against a person who "sells" or "offers to sell" securities through the misrepresentation or omission of a material fact.  Thus, by its own terms, the section does not apply to Appearing Funds.  Note that there is no allegation within the Consolidated Amended Complaint that Appearing Funds marketed or sold their shares directly to Plaintiffs.  See also Generadora de Electricidad del Caribe, Inc. v. Foster Wheeler Corp., 92 F. Supp. 2d 8, 24 (D.P.R. 2000).  Indeed, the Consolidated Amended Complaint asserts that UBS PR has been the underwriter of the Funds.  See ¶38 of the Consolidated Amended Complaint.

Furthermore, and also by its own terms, Section 890 applies to persons who have made "misrepresentations" or "omissions" of material facts.  However, the Consolidated Amended Complaint does not include a single well-pleaded factual allegation that Appearing Funds (as opposed to any other Defendant) made misrepresentations or omissions of material facts.

Accordingly, Plaintiffs have failed to plead an entitlement to relief under PRUSA Section 890 as against Appearing Defendants.

---

[1] In defining a "covered security," SLUSA references section 77r.  See 15 U.S.S. §78bb(f)(5)(E).

c. Statute of Repose

As an additional, independent reason for dismissing Count VIII, such a claim is time-barred.  Section 890(e) of PRUSA provides that "[n]o person may bring a civil suit pursuant to [its] provisions […] more than two (2) years after the sale contract has been executed." 10 L.P.R.A. § 890(e). This term is one of repose, thus, it is not subject to tolling. Cooperativa de Ahorro y Crédito Aguada v. Kidder, Peabody & Co., 799 F.Supp. 261 (D.P.R. 1992) ("the two-year statute of limitations is a civil law caducity period. The lapse of time extinguishes the cause of action".) (*Reversed* on other grounds by Cooperativa de Ahorro y Crédito Aguada v. Kidder, 993 F.2d 269 (1st Cir. 1993)).

Given the above, the claim under Section 890(e) of PRUSA is time-barred.  The Consolidated Amended Complaint alleges that by September 2009 the CEF shares had declined in value.  See Consolidated Amended Complaint ¶7, ¶97.  Plaintiffs claim damages because of the decline in value of the CEFs.  See Id at ¶98.  It follows, then, that all purchases of CEF shares must have been made on or before 2009 (at the latest) in order for Plaintiffs to be able to claim as damages the decline in value.  Indeed, the records included by Plaintiffs as exhibits to the original Complaint in Civil No. 12-1663 (Docket # 1) reveal that the last purchase made by Mr. Carmelo Román[2] of shares of PRITFF IV was on 4/27/2009, whereas the last purchase made of shares of PRIBF I was on 11/18/08.  As those purchases were made significantly more than two years ago, it is clear that any claim by Plaintiffs under Section 890(e) of PRUSA regarding Appearing Funds is timebarred.

---

[2] As set forth in the Consolidated Amended Complaint, ¶13-16, the only Plaintiffs who bought shares of Appearing Funds were Ricardo Román Rivera and Carmelo Román.  See ¶13 of the Consolidated Amended Complaint.  Mr. Román duly included a record of his transactions that were the subject of the instant action.  See Docket # 1-2 in Civil No. 12-1663.  Mr. Román Rivera, by contrast, included no such record at Docket # 1-3 in Civil No. 12-1663.  Therefore, and as Mr. Román Rivera was obviously slated to do so (see Docket # 1-3, ¶4), we presume that his transactions took place on or about the same dates as Mr. Román.

*2. Count VIII of the Consolidated Amended Complaint*

As for Count VIII of the Consolidated Amended Complaint, it merely makes a separate request for relief in the form of rescission. Although no statutory basis is cited for that request, the only plausible legal framework for the request for rescission must be PRUSA Section 890, which provides for such relief. Accordingly, and since the claim pursuant to PRUSA Section 890 should be dismissed, as more fully argued in the preceding sub-section, Count VIII should be dismissed as well.

## IV. CONCLUSION

As more fully explained above, Plaintiffs have included Appearing Funds in the Consolidated Amended Complaint despite the fact that they fail to make a single well-pleaded factual allegation concerning any wrongdoing (or even any action) by Appearing Funds that would support a finding that Plaintiffs have plead a plausible entitlement to relief. Accordingly, the Consolidated Amended Complaint must be dismissed as to Appearing Funds. Furthermore the sole two counts which could arguably be said to apply to Appearing Funds should be dismissed for additional, alternative reasons, to wit: (a) that SLUSA bars such claims; (b) that any claim against Appearing Funds pursuant to PRUSA Section 890 fails as a matter of law because Appearing Funds are not the sellers of the securities and, in any event, because there are no allegations of Appearing Funds making any misrepresentation or omission of material fact; and (c) in light of the applicable statute of repose.

**WHEREFORE,** Appearing Funds respectfully request that this Court dismiss all claims against them.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, on this 5th day of December 2012.

It is hereby certified that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

**PIETRANTONI MÉNDEZ & ÁLVAREZ LLC**
Popular Center, 19th Floor
208 Ponce de León Ave.
San Juan, Puerto Rico, 00918
Tel:  (787) 274-1212
Fax: (787) 274-1470


S/ NÉSTOR M. MÉNDEZ-GÓMEZ
Néstor M. Méndez Gómez
USDC-PR Bar No. 118409
nmendez@pmalaw.com

S/ MARÍA DOLORES TRELLES HERNÁNDEZ
María Dolores Trelles Hernández
USDC-PR Bar No. 225106
mtrelles@pmalaw.com

S/ ALEJANDRO FEBRES JORGE
Alejandro Febres Jorge
USDC-PR Bar No. 228403
afebres@pmalaw.com