## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: UBS FINANCIAL SERVICES, INC. OF PUERTO RICO SECURITIES LITIGATION | CIVIL NO. 12-1663 (CCC)<br><br>JURY TRIAL DEMANDED<br><br>SECURITIES CLASS ACTION |

**MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT (Docket # 60)**

**TO THE HONORABLE COURT**:

**COME NOW** Co-defendants THE PUERTO RICO INVESTORS TAX-FREE FUND IV, INC. ("PRTIFF IV") and the Puerto Rico Investors Bond Fund I ("PRIBF I") (collectively, "Appearing Funds"), through the undersigned counsel, and respectfully allege and pray as follows:

**I.      INTRODUCTION**

This is a purported class action lawsuit in which five named plaintiffs attempt to bring an action on behalf of all persons who acquired shares of certain closed end funds ("CEFs"), among them PRTIFF IV and PRIBF I, in the period between January 1, 2008 and May 1, 2012. Plaintiffs allege, in a general form, that during this period UBS Financial Services, Inc. of Puerto Rico ("UBS PR"), UBS Financial Services, Inc. ("UBSFS"), Miguel Ferrer ("Ferrer") and Carlos Ortiz (Ortiz) (collectively defined by Plaintiffs as "Defendants") marketed and sold the CEFs without disclosing certain material facts and supposedly misrepresenting others.  Plaintiffs allege that UBS PR, UBSFS, Ferrer and/or Ortiz marketed and sold the shares of the CEFs without disclosing and/or misrepresenting that: (1) the prices for the CEFs were set by co-defendant Ortiz, (2) that the prices were not based on market forces such as supply and demand, and (3)

that UBS PR controlled the secondary market for the CEFs and was artificially propping up the liquidity of such market by buying millions of dollars of CEF shares into its own inventory. Plaintiffs also complain that, later, UBS PR began to shed its inventory of CEF shares and that "Defendants" (*i.e.,* UBS PR, UBSFS, Ferrer, and Ortiz) did not disclose as much.  Plaintiffs add that as a result of UBS PR reducing its inventory, the CEFs lost value, thereby causing them losses.

The current version of the Complaint, the Second Consolidated Amended Complaint, Docket # 60, attempts to assert several claims as against Appearing Funds (as well as the other CEFs), mainly pursuant to the theory that Ferrer's alleged misrepresentations and omissions are attributable to the CEFs because during the relevant period Ferrer was *one* of the members of the CEFs' Boards of Directors.  This purported legal conclusion was first included in the Second Consolidated Amended Complaint, after several of the defendants (including PRITFF IV and PRIBF I) pointed out the total lack of allegations that would make out a plausible entitlement to relief as against the CEFs.  See Docket # 53, Docket # 50.

In the previous incarnations of the complaints, Dockets ## 1 and 45 of Civil # 12-1663 and Docket # 1 of Civil # 12-1849, Plaintiffs did not even attempt to assert liability against the Funds on any theory.  Indeed, in the previous pleadings Plaintiffs mentioned Appearing Funds (as well as other CEFs) in the introductory portions of the pleadings, defined them collectively as Funds, and then failed to include *any* factual allegations concerning the Funds.  That much remains essentially the same in this current version of the Complaint, except that in an apparent attempt to keep the Funds at all costs in the action (and despite the lack of any viable claim against them), Plaintiffs have come up with the theory that the Funds should be held liable for Ferrer's alleged misrepresentations and omissions.  Ultimately, however, and despite Plaintiffs' blatantly

2

unsupported attempt to keep the CEFs in this action as defendants, the Second Consolidated Amended Complaint is subject to dismissal, particularly as to PRITFF IV and PRIBF I (and all the other CEFs) because Plaintiffs have failed to allege *any* facts regarding *any* involvement by PRITFF IV or PRIBF I in the "scheme" alleged in the Second Consolidated Amended Complaint.  Plaintiffs' attempt to keep PRITFF IV and PRIBF I in this case (indeed, the attempt to add causes of action against these defendants) on the basis of an incorrect legal conclusion – *i.e.*, that they are responsible for statements made by Ferrer during the course of his relationship with UBS PR— is devoid of any factual or legal support and should be rejected as such.

Accordingly, and for the reasons more fully explored below, PRITFF IV and PRIBF I request immediate dismissal of the Second Consolidated Amended Complaint because nothing in such complaint supports any plausible entitlement to relief as against Appearing Funds.  Moreover, dismissal is also warranted for the reasons discussed by Defendants UBS PR, UBSFS, Ferrer, Ortiz, and Puerto Rico Fixed Income Fund III, Inc. and Puerto Rico Fixed Income Fund IV, Inc. in their Motion to Dismiss (Docket # 66), which Appearing Funds hereby adopt and incorporate by reference.

**II.**    **STANDARD OF REVIEW**

Under FRCP 12(b)(6), the Court may dismiss a Plaintiff's complaint if it fails to state a claim upon which relief may be granted.  Pursuant to <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (hereinafter, "<u>Iqbal</u>") and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 554, 127 S. Ct. 1955 (hereinafter, "<u>Twombly</u>"), in order to survive a motion to dismiss a complaint must plead enough facts to make the claim facially plausible.  Two key principles underlie the standard for reviewing motions to dismiss: first, that while a Court must accept as true all well pleaded factual allegations, that does not extend to legal conclusions, conclusory statements, and threadbare

recitals of the elements of a cause of action; and, second, that only complaints that state a "plausible claim for relief" can survive dismissal.  Iqbal at 1949-1950 (quoting Twombly at 555-556) (internal quotation marks omitted).   When the well pleaded facts allow the Court to infer no more "than the mere possibility of misconduct, the complaint has alleged, but it has not shown that the pleader is entitled to relief."  Iqbal at 1950 (citing Fed. R. Civ. P. 8) (internal quotation marks omitted).  Indeed,  "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Iqbal  at 1949 (quoting  Twombly  at 557) (internal quotation marks omitted).

In order to apply those legal principles, the Iqbal Court counseled courts faced with a motion to dismiss to apply a two-pronged approach.  First, courts may identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Iqbal at 1950.  Then, the court may address the well-pleaded factual allegations to determine "whether they plausibly give rise to an entitlement to relief."  Id.

Furthermore, as a securities class action asserting claims under §§ 10(b) and 20(a) of the Securities Exchange Act and Rule 10b-5,  15 U.S.C. §78j(b), §78t(a), and 17 C.F.R. §240 10b-5, (hereinafter, §10(b), §20(a), and Rule 10b-5) as well as common law fraud, Plaintiffs' Second Consolidated Amended Complaint is subject to a heightened pleading standard under Fed. R. Civ. P. 9 and the Private Securities Litigation Reform Act ("PLSRA").  See, e.g., Hoff v. Popular, Inc., 727 F. Supp. 2d 77, 87 (D.P.R. 2010).   Fed. R. Civ. P. 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Moreover, the PLRSA, 15 U.S.C. §78u-4(b), includes stringent requirements

as to allegations concerning misleading statements and omissions and the defendants' state of mind which require Plaintiffs in an action such as this to plead those elements with particularity. Specifically, and pursuant to the PLRSA, Plaintiffs are required to allege "<u>each</u> statement alleged to have been misleading, the reason or reasons why the statement is misleading," and state "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b) (1) and (2).

### III.   <u>DISCUSSION</u>

#### A. Factual Background as Alleged in the Second Consolidated Amended Complaint

Plaintiffs allege, in general form, that in the period between January 1, 2008 to May 1, 2012 (the "Class Period," <u>see</u> ¶111 of the Second Consolidated Amended Complaint), the Defendants (defined at ¶1 as UBS PR, UBSFS, Ferrer, and Ortiz) executed a scheme by which they marketed and sold shares of certain named CEFs –including Appearing Funds—to customers in Puerto Rico without disclosing and/or misrepresenting material facts, to wit: (1) that CEF prices were not based on market forces, such as supply and demand, but rather set by Co-defendant Ortiz, (2) that UBS PR controlled the secondary market for the CEFs and the sales that the investors wanted to make depended on whether (a) UBS PR was able to procure further investors to buy the shares or (b) UBS PR was willing to buy the shares itself, (3) that UBS PR acquired million of dollars' worth of shares in the CEFs to promote the appearance of a liquid market, and (4) that UBS PR later engaged in an undisclosed sell off of its inventory.  <u>See generally,</u> Second Consolidated Amended Complaint ¶4.

Plaintiffs also generally allege that UBS PR used a "dividend reinvestment program" as a primary selling point for the CEFs.  Second Consolidated Amended Complaint ¶39.  Per that program, investors could receive dividends in the form of reinvestment shares issued at the Net

Asset Value ("NAV") of the Funds and then sell them to UBS PR at the market price, so as to earn a premium.  Id.  Plaintiffs further allege that, particularly in 2008 and 2009, Defendants (*i.e.*, UBS PR, UBSFS, Ferrer, and Ortiz) priced the CEFs not at market value, but in a way designed to reduce volatility and keep a high premium to NAV.  Id at ¶41.  Plaintiffs add that UBS PR used its inventory account to purchase excess supply of the shares of the CEFs so as to create the illusion of a "viable market."  Id.

As Per Plaintiffs' account, by some point in 2008, co-defendant Ortiz became aware that the supply of CEF shares outstripped demand and the market was becoming illiquid.  Second Consolidated Amended Complaint at ¶49.  Nonetheless, Plaintiffs allege, in December 2008 UBS PR sought, and obtained, from UBSFS, an increase in its inventory limits of the CEFs.  Id at ¶51-52.  Plaintiffs argue that such inventory limit increase was made so as to dissimulate the failing market from investors.  Id at ¶53.

Plaintiffs further contend that in 2008 Defendants continued to promote the CEFs without disclosing  and/or misstating the strength, stability, and liquidity of the market for CEFs.  Second Consolidated Amended Complaint ¶62.  Specifically, Plaintiffs allege that the omissions or misstatements were made to financial advisors.  Id.  Despite the foregoing, Plaintiffs allege that throughout the fall of 2008 and 2009, UBS PR continued to buy CEF shares into its inventory and that, by December 2008, it had exceeded its CEF inventory limit.  Second Consolidated Amended Complaint ¶¶ 73-74.

Thereafter, UBSFS directed UBS PR to reduce its inventory in the CEFs, first to $30 Million and then to $12 Million.  Second Consolidated Amended Complaint at ¶¶ 78, 81. Plaintiffs contend that in order to comply with such instruction, UBS PR came up with a strategy titled "Objective: Soft Landing" which entailed both purchasing the minimum amount of shares

possible from clients and lowering UBS PR's prices so as to keep ahead of client orders.  Id at 82.  Plaintiffs conclude that such plan and strategy would have a negative impact on Plaintiffs and the proposed Class.  Id.  Plaintiffs further allege that in executing this strategy, co-defendants UBS PR, Ferrer, and Ortiz made omissions and misrepresentations of material facts.  Id at ¶¶88-94.

Plaintiffs further allege that as a result of UBS PR selling off 75% of its inventory in the CEFs and ceasing to support the secondary market, the value of the funds declined in the period between **March 2009 and September 2009**.  Second Consolidated Amended Complaint ¶101.  Moreover, Plaintiffs allege that on **May 2012**, that is, some three years after the alleged decline in value, "the truth was revealed" by virtue of an SEC order regarding the CEF market and certain findings concerning Defendants' (*i.e.*, as defined in the Second Consolidated Amended Complaint, UBSFS, UBS PR, Ferrer, and Ortiz) actions.  Id at ¶104.   Inconsistently, Plaintiffs then go on to conclude, without more, that "as a direct and proximate result of **Defendants'** [not the Funds] actions and **once the truth was revealed** [that is, after May 2012, as per Plaintiffs' own allegations] the value of Plaintiffs' and other Class Members' CEFs was dramatically reduced."  Id at ¶106 (emphasis added); see also ¶107.  Of course, it bears mentioning that Plaintiffs fail to include *any* allegation as to reduced values after May 2012, when "the truth was revealed," as per their allegations, such that the bald conclusion just quoted finds absolutely no factual support in the Second Consolidated Amended Complaint.

### B.  Claims Against the Funds and Reasons for Dismissal

A review of the foregoing and the purported *factual* allegations in the Second Consolidated Amended Complaint make one thing glaringly clear: the *actors* in Plaintiffs' narrative as to what allegedly happened --the alleged misrepresentations and omissions-- are

UBS PR, UBSFS, Ferrer, and Ortiz.  Without suggesting that such narrative would lead to a viable claim –as explained by such defendants in their Motion to Dismiss, it does not--, the fact that throughout Plaintiffs' key factual allegations there is absolutely no mention of any action, misrepresentation, or omission by Appearing Funds clearly shows that dismissal in this case is warranted.

Indeed, in the Second Consolidated Amended Complaint, the sole *factual* allegations concerning Appearing Funds are those contained at ¶¶ 21 and 25, in which Plaintiffs identify Appearing Funds as closed-end management investment companies and corporations (that is, juridical persons with their own independent existence) organized pursuant to Puerto Rico law. Second Consolidated Amended Complaint at ¶¶ 21 and 25.  In those same paragraphs, Plaintiffs add that co-defendant Ferrer is *a* member (one) of the Board of Directors of each of the Appearing Funds.  Id.  Those are the only factual allegations made by Plaintiffs concerning Appearing Funds.

Despite the foregoing, through the Second Consolidated Amended Complaint Plaintiffs attempt to bring claims against Appearing Funds for: (1) violations of §10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b) (hereinafter, "§10(b)"), and Rule 10b-5, 17 C.F.R. §240 10b-5 (hereinafter "Rule 10b-5"); (2) Puerto Rico Securities Act, 10 P.R. Laws Ann. §890; (3) fraudulent inducement; (4) negligent misrepresentation; (5) fraudulent misrepresentation; and (6) breach of implied duty of good faith, pursuant to 31 P.R. Laws Ann. §3517.  Second Consolidated Amended Complaint at ¶¶ 129, 155, 161, 168, 175, 187.  With the exception of the purported claim pursuant to the Puerto Rico Securities Act, all of the other causes of action are asserted against Appearing Funds (and all other CEFs in the action) on the basis of the following: "Defendant Funds are vicariously liable for the fraudulent conduct of and/or attributable to

Ferrer.  The omissions and/or material misleading statements attributable to Ferrer are also attributable to the Funds because Ferrer was a director of the Funds during the Class period."  Id at ¶¶ 129; see also similar allegations at ¶¶ 161, 168, 175, 187.

1. *Dismissal of Counts  I, V, VI, VII, and IX as against Appearing Funds (§10(b) and Rule 10b-5, Fraudulent Inducement, Negligent and Fraudulent Misrepresentation, and Breach of Implied Duty of Good Faith:*

As noted above, Plaintiffs have included Appearing Funds as liable for the referenced counts without including any *factual* allegation as to actual involvement by Appearing Funds in the alleged actions, misrepresentations, and omissions which they claim give rise to these claims. The sole reason for including Appearing Funds in these claims is that they are supposedly vicariously liable for Ferrer's conduct and that Ferrer's omissions and/or misleading statements are attributable to the Funds in light of the fact that Ferrer was a member of the Funds' Boards of Directors.

Plaintiffs' theory of liability is unsupported by the law and ultimately belied by their own factual allegations.   As per Plaintiffs' own allegations, Appearing Funds are corporations, that is, for the purposes of the law persons distinct and independent from their shareholders, officers, and directors.  See  1 Fletcher Cyc. Corp. § 25.  As such, Appearing Funds cannot be held liable for the actions of Ferrer, a single member of the Boards of Directors who allegedly undertook certain actions on his own behalf and/or in connection with a different entity, UBS PR (see discussion below), unless secondary liability  is available in securities claims such as these. Even then, as more fully discussed below, secondary liability in the circumstances alleged in the Second Consolidated Amended Complaint would be inappropriate.

In the context of aiding and abetting liability, the U.S. Supreme Court noted that Congress had failed to provide for such secondary liability in the Exchange Act and that such

omission was telling, particularly in light of Section 20(a) of the Exchange Act, 15 U.S.C. §78t (a) (hereinafter, "§20(a)") which "suggests that when Congress wished to create such secondary liability, it had little trouble doing so". Central Bank of Denver, N.A. v. First Interstate Bank of Denver, 511 U.S. 164, 184 (internal quotation marks and citations omitted). In light of that ruling, the First Circuit noted in Dinco v. Dylex, Ltd, 111 F.3d 964, 968 (1997) that its previous holding in In re Atlantic Financial Mgmt, Inc., 784 F.2d 29 (1st Cir. 1986) that liability under §20(a) did not foreclose common law avenues of vicarious liability was now in doubt. Consistent with that, at least one other court within this Circuit has applied Central Bank of Denver, 511 U.S. 164, so as to foreclose vicarious liability of a corporation for the statements made by an officer thereof. In re Fidelity/Micron Securities Litigation, 964 F. Supp. 536, 544 (D. Mass. 1997). Other courts within other Circuits have reached similar conclusions. See Rochez Bros., Inc. v. Rhoades, 527 F.2d 880, 883-885 (3rd Cir. 1975) (refusing to impose liability on corporation whose President had been found guilty of violating Rule 10b-5 on the basis of agency principles, finding *respondeat superior* would not advance the legislative purpose of the Exchange Act and would actually undermine §20(a)); Converse, Inc. v. Norwood Venture Corp., 96 Civ. 3745(HB) (S.D. N.Y. Dec. 1, 1997), *available at* 1997 WL 742535 *2 ("Likewise, I find that the text of 10(b) does not provide for claims based on agency. Indeed, in *Central Bank*, the court implied that all forms of secondary liability are no longer viable.")

These courts' conclusion that § 10(b) and Rule 10b-5, as interpreted by the Supreme Court in Central Bank of Denver, 511 U.S. 164, do not allow for secondary liability finds renewed support in the Supreme Court's case of Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296 (2011), in which the Supreme Court rejected that a mutual fund investment adviser could be held liable under § 10(b) and Rule 10b-5 for statements included

within the prospectuses of the mutual fund it advised, a separate legal entity.  In rejecting

liability for the statements of a separate legal entity, the Supreme Court emphasized the matter of

who made and had control of the statement.  <u>Janus Capital Group, Inc.</u>, 131 S. Ct. at 2302-2303.

The Supreme Court further noted that the plaintiff's argument that the investment adviser had an

influence over the mutual funds, such that liability should be available as against the adviser for

the statements of the mutual fund, could not be adopted as it "would read into Rule 10b-5 a

theory of liability similar to –but broader in application than […]—what Congress has already

created expressly elsewhere [referring to § 20(a)]."  <u>Id</u> at 2304.

Given the above, Plaintiffs' attempt at holding Appearing Funds responsible for the

conduct of co-defendant Ferrer should be rejected as based on an implausible theory of law.

Alternatively, even if the possibility of secondary liability on the basis of common law agency

principles is deemed to be legally viable (<u>see</u> <u>In re Atlantic Financial Mgmt., Inc</u>, 784 F.2d 29,

decided prior to <u>Central Bank of Denver</u>, 511 U.S. 164), in the circumstances alleged by

Plaintiffs, no vicarious liability could be imposed on Appearing Funds for the conduct of Ferrer.

Co-defendant Ferrer is but *one* member of the Boards of Directors of the Funds

(Appearing Funds and others, as alleged by Plaintiffs).   Second Consolidated Amended

Complaint ¶¶ 21 and 25.   A corporation does not act and is not bound by the actions of a single

director, but rather by the Board of Directors acting collectively and as such.  <u>See</u>   2 Fletcher

Cyc. Corp. § 392.  Nothing in the Second Consolidated Amended Complaint suggests that the

Boards of Directors of Appearing Funds made any statements, misrepresentations, or omissions,

or otherwise engaged in any conduct which harmed Plaintiffs.  In fact, as noted above and as is

evident from reading the Second Consolidated Amended Complaint, that pleading fails to

attribute any actions, statements, misrepresentations, omissions, or indeed, any particular

conduct of any type, to the Appearing Funds themselves or to the Boards of Directors or any officer or employee of Appearing Funds acting in any representative capacity.

Bypassing the above, which should also be enough to dispose of Plaintiffs' vicarious liability theory as against Appearing Funds, it bears noting that even if Plaintiffs attempted to liken a single director –which, as noted, does not have the capacity individually to act for the corporation- to an officer or employee for the purposes of vicarious liability, the Second Consolidated Amended Complaint would still be insufficient to impose liability on Appearing Funds on the basis of Ferrer's alleged conduct.  There is no allegation, not even the suggestion of one, that in making the alleged misrepresentations or allegedly omitting certain material facts, Ferrer was acting on behalf of Appearing Funds or pursuant to their authorization.  This does away with any possibility of imposing liability on agency principles based on actual authority.  Moreover, the agency principles of apparent authority are also not available because Plaintiffs failed to allege any *facts* that support a conclusion that Appearing Funds made certain manifestations (relied on by Plaintiffs) so as to lead Plaintiffs to *reasonably* believe that co-defendant Ferrer was acting on behalf of Appearing Funds.  <u>See generally</u> Restatement (Third) of Agency §2.03.

In fact, a review of the facts alleged in the Second Consolidated Amended Complaint shows that, if anything, Plaintiffs have pled that Ferrer made certain misrepresentations and omitted certain facts while acting on his own behalf and for his own personal benefit and/or while acting in his capacity as an executive of UBS PR.  Note, for example, the following allegations made by Plaintiffs themselves: Ferrer is grouped with UBSFS, UBS PR, and Ortiz under the collective term "Defendants", which does not include the Funds; Ferrer's compensation was based on UBS PR's revenue and *that* gave him a direct financial interest in

the CEF's performance; Ferrer, *as part of the Defendants*, participated in certain actions which Plaintiffs claim artificially inflated prices for CEFs; Ferrer had certain interactions with UBS PR's financial advisors and the UBS PR sales force which were allegedly misleading and/or omitted facts; Ferrer knew certain facts concerning UBS PR or UBSFS and the inventory and pricing of the CEFs; Ferrer made certain statements at a UBS PR's Group Management Board meeting; Ferrer gave certain instructions to Ortiz's Capital Markets Group; Ferrer made certain statements to "*other* UBS PR executives"; Ferrer made certain allegedly misleading statements at a UBS PR Investors Conference.  See, Second Amended Complaint at, *e.g.*, ¶¶ 1, 35, 41, 43, 50, 56, 59-65, 67, 73, 75, 90-92, 99.  All of this underscores that the actions, statements, and omissions attributed to Ferrer were (allegedly) made by Ferrer in his capacity as a UBS PR executive and as part of his role in that organization.  Moreover, Plaintiffs' count against Ferrer on the basis of § 20(a),[1]  which *is* based on a legislatively enacted form of secondary liability, see Central Bank of Denver, 511 U.S. at 184, is based on Ferrer's relationship with UBS PR, not Appearing Funds.

In sum, as per Plaintiffs' own allegations, Ferrer allegedly acted in pursuit of his own benefit and/or in connection with his role as an executive of UBS PR.  Nowhere in the Second Consolidated Amended Complaint do Plaintiffs allege that Ferrer made a statement, omission, or otherwise took *any* action as a member of the Board of Directors of the Appearing Funds, in representation of Appearing Funds, with Appearing Fund's authorization to speak on their behalf, and/or that could reasonably have been understood by Plaintiffs to have been made pursuant to Appearing Funds' authorization (such reasonable belief to stem from Appearing Funds' own actions or representations, as to which Plaintiffs allege nothing).  In light of these circumstances, even if secondary liability were available for the securities claims that Plaintiffs

---

[1] See Count II of the Second Consolidated Amended Complaint, ¶¶ 134-141.

wish to assert against Appearing Funds, no liability could be imposed.  Moreover, with regards to the Puerto Rico law claims, it bears noting that Puerto Rico law provides for secondary liability only under very specific circumstances, none of which have been alleged here.  See P.R. Laws Ann. §5142.

2. *Dismissal of Count IV as against Appearing Funds (P.R. Securities Act)*

Count IV is a claim for violation of Puerto Rico's Uniform Securities Act ("PRUSA"), 10 P.R. Laws Ann. §§851-898, specifically of section §890, which at subsection (a)(2) provides in relevant part that:

> (a) Any person who:
> …
> (2) offers or sells a security by means of a false statement of a material fact or omitting to state a material fact needed to prevent that any statement made, in the light of the circumstances under which it was made, leads to misunderstanding (the buyer not knowing of the falsehood or omission), and does not support the burden of proof that he did not know, and in exercising reasonable prudency could not have known of the falsehood or omission, shall be liable to the person who buys the security, who may file suit to recover the price paid for the security, [in addition to interests, costs, and reasonable attorney's fees] less the sum of any income received on, upon the tender of the security, or for damages if he no longer owns the security.

There are three alternative reasons –besides the failure to plead a plausible entitlement to relief— that require dismissal of Count IV: (a) it is barred by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §78bb(f)(1), (b) Plaintiffs have no cognizable claim against Appearing Funds based on Section 890, and (c) in any event it is time-barred.

a.  SLUSA

SLUSA provides in relevant part that:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--
> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. §78bb(f)(1).

The instant action is a "covered class action" as it involves two lawsuits consolidated as a single action and seeks damages on behalf of more than fifty persons.  See 15 U.S.C. §78bb(f)(5)(B); Second Consolidated Amended Complaint ¶10 (alleging that there are over 100 class members).  Furthermore, the instant Count is based on the statutory law of Puerto Rico, specifically PRUSA.  Furthermore, the claim is based on alleged misrepresentations or omissions of material facts in connection with the purchase or sale of a security.  See Second Consolidated Amended Complaint, Count IV.  Finally, the security at issue is a "covered security," as required by SLUSA, inasmuch as Appearing Funds invest in covered securities (which includes securities "listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing, on the National Market System of the Nasdaq Stock Market," 15 U.S.C. §77r(b)(1)(A)[2].  As this Court has recently noted, most Courts have held that SLUSA "applies to cases brought by investors of a fund that invests, or represents that it will invest, in a covered security, even when the shares of the fund in which the class invested are not covered securities."  Hidalgo-Vélez v. San Juan Asset Mgmt., Inc., Civil No. 11-2175 (D.P.R., Sept. 24, 2012) (CCC), *available at* 2012 WL 4427077 (string citation omitted).

Accordingly, SLUSA bars the present action, and, as such, Count IV of the Consolidated Amended Complaint must be dismissed.

b.  No cognizable Section 890 Claim Against Appearing Funds

As noted above, PRUSA §890 provides for a civil action against a person who "sells" or "offers to sell" securities through the misrepresentation or omission of a material fact.   Thus, by

---

[2] In defining a "covered security," SLUSA references section 77r.  See 15 U.S.S. §78bb(f)(5)(E).

its own terms, the section does not apply to Appearing Funds inasmuch as there is no allegation within the Second Consolidated Amended Complaint that Appearing Funds marketed or sold their shares directly to Plaintiffs.  See also Generadora de Electricidad del Caribe, Inc. v. Foster Wheeler Corp., 92 F. Supp. 2d 8, 24 (D.P.R. 2000).   In an attempt to overcome this obvious bar, Plaintiffs allege at ¶155 of the Second Consolidated Amended Complaint, that the Funds "indirectly sold their shares to Plaintiffs through UBS PR".  This bald conclusion, however, is unsupported by any factual allegations.

Furthermore, and also by its own terms, Section 890 applies to persons who have made "misrepresentations" or "omissions" of material facts.   Again, the Second Consolidated Amended Complaint does not include a single well-pleaded factual allegation that Appearing Funds (as opposed to any other Defendant) made misrepresentations or omissions of material facts.

Accordingly, Plaintiffs have failed to plead an entitlement to relief under PRUSA Section 890 as against Appearing Defendants.

c.  Statute of Repose

As an additional, independent reason for dismissing Count IV, such a claim is time-barred.  Section 890(e) of PRUSA provides that "[n]o person may bring a civil suit pursuant to [its] provisions […] more than two (2) years after the sale contract has been executed." 10 L.P.R.A. § 890(e).  This term is one of repose, thus, it is not subject to tolling. Cooperativa de Ahorro y Crédito Aguada v. Kidder, Peabody & Co., 799 F.Supp. 261 (D.P.R. 1992) ("the two-year statute of limitations is a civil law caducity period. The lapse of time extinguishes the cause of action".) (Reversed on other grounds by Cooperativa de Ahorro y Crédito Aguada v. Kidder, 993 F.2d 269 (1st Cir. 1993)); See also See also PaineWebber Inc. of P.R. v. First Boston, 136

DPR 541546-547 (1994) (emphasizing the importance of the short, two year term to avoid undue burdens on the issuer or securities dealer in question); <u>Generadora de Electricidad del Caribe, Inc. v. Foster Wheeler Corp.</u>, 92 F. Supp. 2d 8, 24 (D.P.R. 2000); <u>Salgado v. Piedmont Capital Corp.,</u> 534 F. Supp. 938, 947 (D.P.R. 1981).  .

        Given the above, the claim under Section 890(e) of PRUSA is time-barred.  The Second Consolidated Amended Complaint alleges that by September 2009 the CEF shares had declined in value.  <u>See</u> Second Consolidated Amended Complaint ¶101.  Plaintiffs claim damages because of the decline in value of the CEFs.  <u>See Id</u> at ¶102.  It follows, then, that all purchases of CEF shares must have been made on or before 2009 (at the latest) in order for Plaintiffs to be able to claim as damages the decline in value.  Indeed, the records included by Plaintiffs as exhibits to the original Complaint in Civil No. 12-1663 (Docket # 1) reveal that the last purchase made by Mr. Carmelo Román[3] of shares of PRITFF IV was on 4/27/2009, whereas the last purchase made of shares of PRIBF I was on 11/18/08.  As those purchases were made significantly more than two years ago, it is clear that any claim by Plaintiffs under Section 890(e) of PRUSA regarding Appearing Funds is time-barred.[4]

---

[3] As set forth in the Second Consolidated Amended Complaint, ¶14-17, the only Plaintiffs who bought shares of Appearing Funds were Ricardo Román Rivera and Carmelo Román.  <u>See</u> ¶14 of the Second Consolidated Amended Complaint.  Mr. Román duly included a record of his transactions that were the subject of the instant action.  <u>See</u> Docket # 1-2 in Civil No. 12-1663.  Mr. Román Rivera, by contrast, included no such record at Docket # 1-3 in Civil No. 12-1663.  Therefore, and as Mr. Román Rivera was obviously slated to do so (<u>see</u> Docket # 1-3, ¶4), we presume that his transactions took place on or about the same dates as Mr. Román.

[4] It is unclear whether Plaintiffs also intended to assert Count VIII against Appearing Funds because that count does not refer to the Funds, as do the counts that are apparently directed against them, but rather to "all Defendants".  As noted, Defendants was defined by Plaintiffs themselves at ¶1 to include only UBSFS, UBS PR, Ferrer, and Ortiz.  However, to the extent that Plaintiffs actually wanted to assert this count against Appearing Funds, it too would be unavailable.  Count VIII merely requests a particular remedy, rescission.  Because, as discussed above, there is no viable entitlement to *any* relief as against Appearing Funds, the particular remedy of rescission sought by Plaintiffs cannot be requested of Appearing Funds.

### IV. CONCLUSION

As more fully explained above, Plaintiffs have included Appearing Funds in the Second Consolidated Amended Complaint despite the fact that they fail to make a single well-pleaded factual allegation concerning any wrongdoing (or even any action) by Appearing Funds that would support a finding that Plaintiffs have plead a plausible entitlement to relief.  Further, Plaintiffs' theory that Appearing Funds are liable for the conduct of Ferrer, a single member of the Boards of Directors of the Funds who, pursuant to Plaintiffs own allegations, was not acting on behalf of the Funds nor representing as much, is untenable for the reasons more fully explored in this motion.  Accordingly, Plaintiffs claims against Appearing Funds should be dismissed.

**WHEREFORE,** Appearing Funds respectfully request that this Court dismiss all claims against them.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, on this 28th day of February 2013.

It is hereby certified that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

**PIETRANTONI MÉNDEZ & ÁLVAREZ LLC**
Popular Center, 19th Floor
208 Ponce de León Ave.
San Juan, Puerto Rico, 00918
Tel:  (787) 274-1212
Fax: (787) 274-1470

S/ NÉSTOR M. MÉNDEZ-GÓMEZ
Néstor M. Méndez Gómez
USDC-PR Bar No. 118409
nmendez@pmalaw.com

S/ MARÍA DOLORES TRELLES HERNÁNDEZ

María Dolores Trelles Hernández
USDC-PR Bar No. 225106
mtrelles@pmalaw.com