## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re: UBS FINANCIAL SERVICES, INC. OF PUERTO RICO SECURITIES LITIGATION | : : : : : : : : : : : : | Civil No.: 12-cv-1663-CCC |

**ECF Case**
**Electronically Filed**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT

Roberto C. Quiñones-Rivera
MCCONNELL VALDÉS LLC
270 Muñoz Rivera Ave.
Hato Rey, Puerto Rico  00918
Tel.:  (787) 759-9292

*Attorney for Defendants Puerto Rico Fixed
Income Fund III, Inc. and Puerto Rico Fixed
Income Fund V, Inc.*

Salvador J. Antonetti-Stutts
Mauricio O. Muñiz-Luciano
Ubaldo M. Fernández-Barrera
O'NEILL & BORGES LLC
American International Plaza
250 Muñoz Rivera Ave., Suite 800
Hato Rey, Puerto Rico  00918-1813
Tel.:  (787) 764-8181

OF COUNSEL

Paul J. Lockwood
Nicole A. DiSalvo
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
Tel.:  (302) 651-3000

*Attorneys for Defendants UBS Financial
Services Incorporated of Puerto Rico, UBS
Trust Company of Puerto Rico, UBS Financial
Services Inc., Miguel A. Ferrer and Carlos J.
Ortiz*

# TABLE OF CONTENTS

Page

TABLE OF CASES & AUTHORITIES.........................................................................................ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................ 3

THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ......................................... 3

I.      THE SAC DOES NOT ALLEGE A PLAUSIBLE CLAIM UNDER SECTION
        10(B). ......................................................................................................................... 3

        A.      UBS-PR's Public Disclosures Refute Plaintiffs' Allegations Of Fraud. ................. 3

        B.      The *Affiliated Ute* Presumption Does Not Apply. ................................................. 5

        C.      Plaintiffs Have Not Alleged A Plausible Theory Of Loss Causation. .................. 10

        D.      Plaintiffs Have Not Alleged Scienter................................................................... 13

II.     PLAINTIFFS' PUERTO RICO LAW CLAIMS SHOULD BE DISMISSED................. 13

        A.      Plaintiffs' Claims Are Barred By The Statute Of Repose. .................................... 13

        B.      Plaintiffs' Puerto Rico Law Claims Are Barred By SLUSA. ............................... 14

CONCLUSION.......................................................................................................................... 15

# TABLE OF CASES & AUTHORITIES

**CASES**                                                                                                                                       **PAGE(S)**

*Abell v. Potomac Ins. Co.*,
    858 F.2d 1104 (5th Cir. 1988) ................................................................................. 5, 8

*Abelson v. Strong*,
    644 F. Supp. 524 (D. Mass. 1986) ................................................................................. 6

*Affiliated Ute Citizens v. United States*,
    406 U.S. 128 (1972) ................................................................................. *passim*

*Anschutz Corp. v. Merrill Lynch & Co.*,
    785 F. Supp. 2d 799 (N.D. Cal. 2010), *appeal denied*,
    2011 WL 2160888 (N.D. Cal. June 1, 2011) ................................................................................. 3, 4

*Anschutz Corp. v. Merrill Lynch & Co.*,
    690 F.3d 98 (2d Cir. 2012) ................................................................................. 4

*In re Apple REITS Litig.*,
    No. 11-cv-2919 (KAM), 2013 WL 1386202 (E.D.N.Y. Apr. 3, 2013) ................................. 3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................. 2, 10, 11, 12

*Beissinger v. Rockwood Computer Corp.*,
    529 F. Supp. 770 (E.D. Pa. 1981) ................................................................................. 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................. 2, 10, 11, 12

*Cavalier Carpets, Inc. v. Caylor*,
    746 F.2d 749 (11th Cir. 1984) ................................................................................. 5

*Cellular South Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    No. 12-3640-CV, 2013 WL 1110654 (2d Cir. Mar. 19, 2013) ................................. 3

*Conley v. Gibson*,
    355 U.S. 41 (1957), *overruled by*
    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................. 10,11

*Cooperativa de Ahorro y Crédito Aguada v. Kidder, Peabody & Co.*,
    799 F. Supp. 261 (D.P.R. 1992), *rev'd on other grounds*,
    993 F.2d 269 (1st Cir. 1993) ................................................................................. 14

*COSSEC v. González López*,
    179 D.P.R. 793 (P.R. 2010) ................................................................................. 13

*In re Credit Suisse-AOL Sec. Litig.*,
    253 F.R.D. 17 (D. Mass. 2008) ................................................................................. 9

*Defer LP v. Raymond James Fin., Inc.*,
    No. 08 Civ. 3449 (LAK), 2010 WL 3452387 (S.D.N.Y. Sept. 2, 2010) .................. 3, 4, 5

*Desai v. Deutsche Bank Sec. Ltd.*,
    573 F.3d 931 (9th Cir. 2009) ....................................................................... 5, 8

*In re Dynex Capital, Inc. Sec. Litig.*,
    No. 05 Civ. 1897 (HB), 2009 WL 3380621 (S.D.N.Y. Oct. 19, 2009) ...................... 7, 8

*Eckstein v. Balcor Film Investors*,
    740 F. Supp. 572 (E.D. Wis. 1990) ................................................................... 7

*Fogarazzo v. Lehman Bros.*,
    263 F.R.D. 90 (S.D.N.Y. 2009) ...................................................................... 7, 8

*Hidalgo-Velez v. San Juan Asset Mgmt., Inc.*,
    No. 11-2175, 2012 WL 4427077 (D.P.R. Sept. 24, 2012),
    *certification denied*, 2013 WL 1089745 (D.P.R. Mar. 15, 2013) ............................ 14, 15

*Hoff v. Popular, Inc.*,
    727 F. Supp. 2d 77 (D.P.R. 2010) ................................................................... 12

*In re Interbank Funding Corp. Sec. Litig.*,
    629 F.3d 213 (D.C. Cir. 2010) ...................................................................... 5, 6

*Johnston v. HBO Film Mgmt., Inc.*,
    265 F.3d 178 (3d Cir. 2001) ...................................................................... 5, 6, 9

*Joseph v. Wiles*,
    223 F.3d 1155 (10th Cir. 2000) .................................................................... 5, 8

*In re JP Morgan Auction Rate Sec. Mktg. Litig.*,
    867 F. Supp. 2d 407 (S.D.N.Y. 2012) ................................................................ 3

*Kelley v. Microsoft Corp.*,
    No. C07-0475 (MJP), 2009 WL 973368 (W.D. Wash. Apr. 10, 2009),
    *aff'd in relevant part*, 395 F. App'x 431 (9th Cir. 2010) ....................................... 9

*Lalor v. Omtool, Ltd.*,
    No. 99-469M, 2000 WL 1843247 (D.N.H. Dec. 14, 2000) ...................................... 13

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) ......................................................................... 12

*Lewis v. Straka*,
    No. 05-C-1008, 2006 WL 2927658 (E.D. Wis. Oct. 12, 2006) .................................. 9

*In re Merrill Lynch Auction Rate Sec. Litig.*,
    704 F. Supp. 2d 378 (S.D.N.Y. 2010), *aff'd sub nom.*
    *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120 (2d Cir. 2011) .............................. 1, 3, 8

*In re Parmalat Sec. Litig.*,
  No. 04 MD 1653 (LAK), 2008 WL 3895539 (S.D.N.Y. Aug. 21, 2008) ...................... 7, 8

*Perry v. New England Bus. Serv., Inc. (NEBS) Long-Term Disability Plan*,
  No. 01-11508 (RWZ), 2002 WL 31399132 (D. Mass. Oct. 22, 2002), *aff'd*,
  347 F.3d 343 (1st Cir. 2003) ............................................................................................ 12

*Rowe v. Maremont Corp.*,
  650 F. Supp. 1091 (N.D. Ill. 1986), *aff'd*,
  850 F.2d 1226 (7th Cir. 1988) ........................................................................................... 9

*In re Sahlen & Assocs., Inc. Sec. Litig.*,
  773 F. Supp. 342 (S.D. Fla. 1991) .................................................................................... 9

*In re Salomon Analyst Metromedia Litig.*,
  236 F.R.D. 208 (S.D.N.Y. 2006), *vacated on other grounds*,
  544 F.3d 474 (2d Cir. 2008) .............................................................................................. 6

*In re Smith Barney Transfer Agent Litig.*,
  No. 05 Civ. 7583 (WHP), 2013 WL 1150737 (S.D.N.Y. Mar. 21, 2013) ................ 6, 7, 8

*Starr ex rel. Estate of Sampson v. Georgeson S'holder, Inc.*,
  412 F.3d 103 (2d Cir. 2005) .......................................................................................... 2, 5

*Starr Int'l Co. v. Fed. Reserve Bank of N.Y.*,
  No. 11 Civ. 8422 (PAE), 2012 WL 5834852 (S.D.N.Y. Nov. 16, 2012) ....................... 12

*Steiner v. Southmark Corp.*,
  734 F. Supp. 269 (N.D. Tex. 1990) .................................................................................. 9

*Swack v. Credit Suisse First Boston*,
  383 F. Supp. 2d 223 (D. Mass. 2004) ............................................................................. 12

*In re Towers Fin. Corp. Noteholders Litig.*,
  No. 93 Civ. 0810 (WK) (AJP), 1995 WL 571888 (S.D.N.Y. Sept. 20, 1995) ................. 9

*Urman v. Novelos Therapeutics, Inc.*,
  867 F. Supp. 2d 190 (D. Mass. 2012) ............................................................................. 10

*Vega Martínez v. Calzadilla*,
  756 F. Supp. 78 (D.P.R. 1991) ........................................................................................ 14

*Vervaecke v. Chiles, Heider & Co.*,
  578 F.2d 713 (8th Cir. 1978) ............................................................................................ 5

*Wilson v. Comtech Telecommunications Corp.*,
  648 F.2d 88 (2d Cir. 1981) ................................................................................................ 6

*Wilson v. Merrill Lynch & Co.*,
  671 F.3d 120 (2d Cir. 2011) ................................................................................... 1, 2, 3, 4

**STATUTES**

Federal Rule of Civil Procedure 8(a)(2) ...................................................... 11

Federal Rule of Civil Procedure 9(b)...................................................... 1, 15

Federal Rule of Civil Procedure 12(b)(6) .............................................. 1, 15

Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b)............................ 2, 3, 10

Puerto Rico Uniform Securities Act, 10 L.P.R.A. § 890 ...................................... 13, 14

**OTHER AUTHORITIES**

Restatement (Second) of Agency § 275 cmt. b (2012) ...................................... 13

## PRELIMINARY STATEMENT

In their opening brief in support of their motion to dismiss (the "Opening Brief" or "Def. Br."), Defendants[1] demonstrated that Plaintiffs' claims should be dismissed for failure to allege fraud with particularity under Rule 9(b) and for failure to plead a claim under Rule 12(b)(6). In response to those arguments, Plaintiffs point to wholly conclusory assertions that fail to plead a plausible claim under Rule 12(b)(6), much less meet the heightened pleading requirements of Rule 9(b) and the PSLRA. Plaintiffs' claims should be dismissed for the following reasons:

*First*, UBS-PR's extensive disclosures in prospectuses and on its website refute any claim that Plaintiffs could have been misled about UBS-PR's role in maintaining the market for CEF shares. Plaintiffs argue that UBS-PR's disclosures regarding its role in the market were inadequate and misleading because, according to Plaintiffs, UBS-PR merely disclosed that it "may" maintain a market in the shares and that those shares "could" become illiquid if UBS-PR ceased its activities. (*See* Pl. Br. at 10) Plaintiffs misquote UBS-PR's disclosures, which advise that "[UBS-PR] currently *intends* to maintain a market in the Shares" and that "[i]f at any time [UBS-PR] ceases to maintain a market, the Shares *will* become illiquid until a market is reestablished." (Pl. Br. Ex. 2 at 8, Ex. 3 at 8, Ex. 4 at 9, Ex. 5, at 2; Def. Br. Exs. A, B & C) (emphasis added) Thus, investors were warned that the market for these shares depended upon UBS-PR's activities.

In asserting that UBS-PR's disclosures were inadequate, Plaintiffs also ask the Court to reject the reasoning of the Southern District of New York in *In re Merrill Lynch Auction Rate Securities Litigation*, 704 F. Supp. 2d 378, 391-92 (S.D.N.Y. 2010), *aff'd sub nom Wilson v. Merrill Lynch & Co.*, 671 F.3d 120 (2d Cir. 2011), which addressed similar disclosures concerning markets for auction rate securities supported by Merrill Lynch. In criticizing the Southern District of New York's reasoning, however, Plaintiffs ignore that the *In re Merrill Lynch* opinion was affirmed by the Second Circuit in *Wilson v. Merrill Lynch & Co.*, 671 F.3d

---

[1] All undefined capitalized terms defined in Defendants' Opening Brief.

120 (2d Cir. 2011), and that *Wilson* has been adopted in numerous subsequent cases.  This Court

should adopt the reasoning of *In re Merrill Lynch* and *Wilson* and dismiss this case.

 *Second*, Plaintiffs have not attempted to plead reliance.  Instead, they rely entirely on a

presumption of reliance that can apply in cases that are *primarily* based on omissions.  *See*

*Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972); *Starr ex rel. Estate of Sampson v.*

*Georgeson S'holder, Inc.*, 412 F.3d 103, 109 n.5 (2d Cir. 2005) (holding *Affiliated Ute*

presumption does not apply where "omissions exacerbated the misleading nature of the

affirmative statements").  Plaintiffs cannot invoke that presumption here because this case

concerns alleged misrepresentations regarding the liquidity of the Funds' shares and that market

forces set the prices.  Indeed, Plaintiffs' Opposition Brief helpfully lists the five affirmative

misstatements at the heart of their case.  (*See* Pl. Br. at 8 (listing alleged misstatements))  To

plead a claim under Section 10(b), Plaintiffs must allege that they relied on those statements, but

no such allegations are found in the Second Consolidated Amended Complaint (the "SAC").

 *Third*, Plaintiffs have failed to plead a plausible theory of loss causation consistent with

the pleading standard established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Plaintiffs rely on a wholly conclusory assertion that the

purported misrepresentations "caused prices to decline" (SAC ¶ 101), but they make no effort to

connect in any way the alleged decline to the alleged corrective disclosures.  (*See* Pl. Br. at 17)

As the only drop in the stock price described in the SAC precedes the alleged corrective

disclosures by almost two years, Plaintiffs' theory of loss causation is implausible and should be

rejected at the pleading stage.

 *Fourth*, the Court should reject Plaintiffs' attempt to plead scienter based on a broad

contention that Ferrer and Ortiz were motivated to commit fraud because their compensation was

tied to UBS-PR's success.  As that motivation applies to nearly every executive in every

company, courts have routinely dismissed securities fraud claims based on such allegations.

 *Fifth*, Plaintiffs' Puerto Rico law claims are barred by the statute of repose and by

SLUSA.

 For these reasons and other reasons as set forth below and in Defendants' Opening Brief,

the SAC should be dismissed with prejudice.

## ARGUMENT

## THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

## I.   THE SAC DOES NOT ALLEGE A PLAUSIBLE CLAIM UNDER SECTION 10(B).

### A.   UBS-PR's Public Disclosures Refute Plaintiffs' Allegations Of Fraud.

As Defendants explained in their Opening Brief, UBS-PR's extensive disclosures regarding its market activity and the liquidity of the market for CEF shares negate any claim of misrepresentation.  (Def. Br. at 11-12, citing *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 124, 140 (2d Cir. 2011))  In response, Plaintiffs argue that UBS-PR's disclosures are inadequate and that other cases have purportedly "rejected" and "distinguished" *Wilson*.  (Pl. Br. at 9)  On the contrary, *Wilson* is directly on point, well-reasoned and should be followed by this Court.

The cases cited by Plaintiffs – *Anschutz Corp. v. Merrill Lynch & Co.*, 785 F. Supp. 2d 799, 813-14 (N.D. Cal. 2010) ("*Anschutz Cal*"), *appeal denied*, 2011 WL 2160888 (N.D. Cal. June 1, 2011) and *Defer LP v. Raymond James Fin., Inc.*, No. 08 Civ. 3449 (LAK), 2010 WL 3452387, at *2 (S.D.N.Y. Sept. 2, 2010) – did not "reject" *Wilson*.  Those opinions, which predate *Wilson*, only discuss the trial court's opinion – *In re Merrill Lynch Auction Rate Securities Litigation*, 704 F. Supp. 2d 378 (S.D.N.Y. 2010) – which the Second Circuit had not yet affirmed.  Indeed, the court in *Anschutz Cal* noted that the Second Circuit was then reviewing *In re Merrill Lynch*.  785 F. Supp. 2d at 814 n.11.  Not only was *In re Merrill Lynch* ultimately affirmed in *Wilson*, but *Wilson* has been repeatedly applied in subsequent cases to bar fraud claims where a defendant disclosed that it "may" take specified actions.  *See Cellular South Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 12-3640-CV, 2013 WL 1110654, at *2 (2d Cir. Mar. 19, 2013); *In re Apple REITS Litig.*, No. 11-cv-2919 (KAM), 2013 WL 1386202, at *13 (E.D.N.Y. Apr. 3, 2013); *In re JP Morgan Auction Rate Sec. Mktg. Litig.*, 867 F. Supp. 2d 407, 417-18 (S.D.N.Y. 2012).  Notably, the *Anschutz Cal* decision cited by Plaintiffs was not followed in a companion case brought by Anschutz against Merrill Lynch in New York, in which the Second Circuit, based on *Wilson*, dismissed nearly identical claims against Merrill Lynch

based on its website disclosures. *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108-10 (2d Cir. 2012) ("*Anschutz NY*").[2]

In any event, the disclosures in *Anshutz Cal* are meaningfully different from UBS-PR's disclosures here. *See* 785 F. Supp. 2d at 813-14. The court held that defendant Deutsche Bank Securities, Inc. ("DBSI") made "limited" disclosures that did not negate a fraud claim because they were "significantly different" from Merrill Lynch's disclosures in the *Wilson* and *Anschutz NY* cases. *Id.* In particular, DBSI had only disclosed that it "may" place support bids in the auctions, whereas Merrill Lynch had disclosed that it "may routinely" place bids. *Id.* Here, in an attempt to invoke the *Anschutz Cal* opinion, Plaintiffs paraphrase UBS-PR's disclosures to make them sound similarly equivocal, but they are actually even more definitive than the disclosures in *Wilson*. Plaintiffs assert that UBS-PR's disclosures that it "*may*" provide liquidity by maintaining the market for CEF shares was misleading because, in fact, UBS-PR *was* taking those actions. (Pl. Br. at 11) But UBS-PR's disclosures actually state that "[UBS-PR] currently *intends* to maintain a market in the Shares . . . ." (Pl. Br. Ex. 2 at 8, Ex. 3 at 8, Ex. 4 at 9, Ex. 5, at 2; Def. Br. Exs. A, B & C) (emphasis added)

Plaintiffs next argue that UBS-PR failed to disclose that there would be "insufficient legitimate market demand for CEFs to create liquidity absent UBS PR's participation." (Pl. Br. at 11) Again, the actual disclosures refute this point: "If at any time [UBS-PR] ceases to maintain a market, the Shares *will* become illiquid until a market is reestablished." (Def. Br. Exs. A, B & C) (emphasis added)

Plaintiffs' reliance on the Southern District of New York's decision in *Defer LP v. Raymond James Financial, Inc.* is likewise misplaced. 2010 WL 3452387, at *2. (*See* Pl. Br. at 10) The court in *Defer* explained that "[t]he essence of plaintiffs' claims is that RJA and RJFS routinely and consistently represented to their financial advisors that ARS were equivalent to

---

[2] Plaintiffs assert that the Court cannot consider, for purposes of a motion to dismiss, the disclosures to investors on UBS-PR's website. (Pl. Br. at 6-7 & n.4) But Plaintiffs do not even try to rebut the cases cited in the Opening Brief that take judicial notice of corporate websites. (Def. Br. at 6 n.5) In any event, the disclosures in the offering documents are not materially different from the website disclosures. The motion should still be granted if the Court looks only to the offering documents.

cash and were highly liquid, short-term investment vehicles . . . ."  2010 WL 3452387, at *2.
Here, UBS-PR not only expressly warned of the risks of illiquidity, but also advised investors
that the CEFs were intended to be "long-term" investments and therefore investors "should not
view the Fund as a vehicle for trading purposes."  (Def. Br. Exs. A, B & D)

**B.     The *Affiliated Ute* Presumption Does Not Apply.**

As explained in Defendants' Opening Brief, Plaintiffs have not pled reliance because they
failed to allege that they heard or read any purportedly misleading statements.  (Def. Br. at 15)
In their Opposition Brief, Plaintiffs concede that they have not alleged reliance and instead
invoke the presumption of reliance announced in *Affiliated Ute Citizens v. United States*, 406
U.S. 128 (1972).  (Pl. Br. at 12-15)  But, as Defendants explained in their Opening Brief,
*Affiliated Ute* only applies to cases based *primarily* on omissions, not to cases like this one that
involve alleged misrepresentations.  (Def. Br. at 15-17)

As an initial matter, the Court should reject Plaintiffs' argument that Defendants have
"restrict[ed] the holding of *Affiliated Ute* too narrowly."  (Pl. Br. at 13)  All of the federal circuits
that have considered the issue agree that *Affiliated Ute* only applies to cases based "primarily" on
omissions.  *See In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 219-20 (D.C. Cir. 2010);
*Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 940 (9th Cir. 2009); *Starr ex rel. Estate of
Sampson v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 n.5 (2d Cir. 2005); *Johnston v. HBO
Film Mgmt., Inc.*, 265 F.3d 178, 193 (3d Cir. 2001); *Joseph v. Wiles*, 223 F.3d 1155, 1162 (10th
Cir. 2000); *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1118-19 (5th Cir. 1988); *Cavalier Carpets,
Inc. v. Caylor*, 746 F.2d 749, 755 (11th Cir. 1984); *Vervaecke v. Chiles, Heider & Co.*, 578 F.2d
713, 717 (8th Cir. 1978).  Courts recognize that reading *Affiliated Ute* broadly could eliminate
the reliance requirement in that "an artfully-pleaded complaint can recharacterize as an omission
conduct which more closely resembles a misrepresentation."  *Joseph*, 223 F.3d at 1162.  The
distinction between omissions and misrepresentations can be manipulated because "every
misstatement both advances false information and omits truthful information."  *Id.*  Indeed, here,
Plaintiffs artfully re-pleaded the original complaint in response to Defendants' reliance argument
by inserting the words "never disclosed" and "omitted" in strategic places in the SAC.  (*See* Def.
Br. at 16-17)  Courts strictly limit the *Affiliated Ute* presumption precisely because, as here,

through simple word-smithing, "nearly any misrepresentation could become an omission, which . . . would allow the presumption to swallow the reliance requirement almost completely." *Johnston*, 265 F.3d at 193.

Thus, despite Plaintiffs' vehement assertion that they are "masters of their own complaint" (Pl. Br. at 2, 12), courts have consistently disregarded a plaintiff's biased characterization of his claims as omissions-based.  *See, e.g.*, *Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88, 93 (2d Cir. 1981) (noting that "labels by themselves . . . are of little help" in determining whether a complaint primarily alleges omissions).  Instead, courts assess whether, under the facts alleged, reliance would be impossible to prove.  *See Interbank*, 629 F.3d at 218 (declining to apply *Affiliated Ute* because "the evidentiary problems inherent in proving reliance on a nondisclosure are not present"); *Abelson v. Strong*, 644 F. Supp. 524, 528 (D. Mass. 1986) ("The 'presumption' of causation of *Affiliated Ute* does not apply where such positive statements exist because reliance may then be proven."); *In re Salomon Analyst Metromedia Litig.*, 236 F.R.D. 208, 219-20 (S.D.N.Y. 2006) ("[B]ecause positive misstatements form the primary basis of the surviving claims . . . the evidentiary problem of proving reliance on a mere non-disclosure is simply not present, and the *Affiliated Ute* exception does not apply."), *vacated on other grounds*, 544 F.3d 474 (2d Cir. 2008).[3]

Here, a review of the SAC shows that this case is *not* primarily about omitted information as to which reliance would be impossible to prove.  Rather, as demonstrated in the Opening Brief, there are dozens of allegations in the SAC describing purported affirmative misstatements.  (Def. Br. at 17)  Even the Opposition Brief lists the alleged misleading statements on which Plaintiffs' claims are based:

- The CEF prices were published in *El Vocero* and did not reveal that prices were actually arbitrarily set by Ortiz (¶47);

- Monthly/Quarterly statements were sent to Plaintiffs and the Class with "market values" but not disclosing the arbitrary pricing practice (¶48);

---

[3] Indeed, even *In re Smith Barney Transfer Agent Litigation*, No. 05 Civ. 7583 (WHP), 2013 WL 1150737 (S.D.N.Y. Mar. 21, 2013) (cited in Pl. Br. at 13) makes this point.  That opinion notes that the *Affiliated Ute* doctrine is "a pragmatic one" and that reliance is presumed only "when it would be *impossible* to prove."  *Id.* at *5 (emphasis added).

- Newspaper and Television ads promoting investor conferences about CEFs "superior returns and liquidity" (¶91);

- Public presentation by Ortiz (attended by Ferrer) touting increasing liquidity and supply and demand in an open market (¶92); and

- An interview with Ferrer in the newspaper wherein he discussed fantastic results and "low volatility" (¶96).

(*See* Pl. Br. at 8)

Plaintiffs do not, because they cannot, explain why it would have been impossible to plead and prove reliance on those alleged misleading statements. As reliance was possible, Plaintiffs were required to plead reliance. *See Eckstein v. Balcor Film Investors*, 740 F. Supp. 572, 578 (E.D. Wis. 1990) (refusing to apply *Affiliated Ute* where plaintiffs "could prove that they relied upon the omissions merely by proving that they relied on the documents which allegedly contained the misstatements and omitted information").

Moreover, a comparison of the allegations here to the cases cited by Plaintiffs further confirms that this case does not primarily concern omissions. Each of those cases involved affirmative statements that were, standing alone, true. *See Smith Barney*, 2013 WL 1150737, at *5 (characterizing case as primarily about omissions because affirmative statements were "truthful, as far as they go" but were misleading because of "what they do not say"); *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897 (HB), 2009 WL 3380621, at *7 (S.D.N.Y. Oct. 19, 2009) (statements about the cause of credit losses may have been true in themselves, but they were misleading because they omitted that other factors affected the severity of the losses); *Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 106 (S.D.N.Y. 2009) (analyst reports on which plaintiffs based their claims did not make any affirmative false statements about conflicts but simply failed to disclose that conflicts existed); *In re Parmalat Sec. Litig.*, No. 04 MD 1653 (LAK), 2008 WL 3895539, at *8 (S.D.N.Y. Aug. 21, 2008) (recognizing that affirmative statements in plaintiffs' complaint were "not deceptive in themselves").

Here, in contrast, Plaintiffs contend that Defendants "created the illusion of liquidity in the CEF market through a series of omissions, *manipulations, half-truths, and lies*." (Pl. Br. at 2)

(emphasis added).[4]  Their contention that the purported fraudulent scheme concerned purported "half-truths and lies" is a fair characterization of their case.  Plaintiffs allege that UBS-PR made false statements that the published prices of CEF shares were "market values."  (Pl. Br. at 8; SAC ¶¶ 47-48, 54-55)  Plaintiffs allege that Ferrer and Ortiz falsely "touted the liquidity" of the market.  (Pl. Br. at 8; SAC ¶¶ 62-63, 66, 68, 70, 91-92)  Plaintiffs allege that Ferrer purportedly instructed financial advisors to tell investors that UBS-PR's commissions were zero when they were really three percent.  (SAC ¶ 50)  These allegations differ from those in *Smith Barney*, *Dynex*, *Fogarazzo* and *Parmalat* because the affirmative statements alleged in the SAC are purportedly deceptive in themselves.  *See Abell*, 858 F.2d at 1119 (refusing to apply *Affiliated Ute* because plaintiffs' allegations that defendants "represented that Westside was feasible, when it was not; that Fryar was to have $2 million of his own money in the transaction, when he did not; and that the real estate had a value or cost basis to Westside of over $2.4 million, when it did not" were misrepresentations in that they were "outright lies").

Although Plaintiffs assert that the "core" of their lawsuit is Defendants' purported failure to disclose their "artificial" support of the market (Pl. Br. at 14-15), the true core of their suit are the allegations that Defendants pointed to "market values" and "tout[ed] increasing liquidity and supply and demand in an open market" when those facts were supposedly false.  (Pl. Br. at 8; *see also id*. at 11-12 ("Because UBS PR knew that there was insufficient legitimate demand for the CEFs, knew there was no real market for the shares, and knew that customers would be

---

[4] While Plaintiffs' Opposition Brief frequently uses the term "manipulations," they have expressly disclaimed any attempt to plead a market manipulation claim.  (*See* Pl. Br. at 7 ("Although Defendants repeatedly attempt to reclassify this case as a 'market manipulation' case, that, in fact, is not what is alleged."))  Defendants submit that Plaintiffs have backed away from a market manipulation claim because they would have to plead reliance to support such a claim. *See Desai*, 573 F.3d at 940-41 (refusing to apply *Affiliated Ute* presumption to market manipulation claim); *Joseph*, 223 F.3d at 1162-63 (*Affiliated Ute* inapplicable where plaintiffs alleged that defendant "engaged in a pattern of deception which involved manipulating financial data, disseminating false information about the company, concealing the truth about the company's true financial outlook, and hiding the existence of the fraudulent scheme itself"); *In re Merrill Lynch*, 704 F. Supp. 2d at 398 (market manipulation claim not entitled to *Affiliated Ute* presumption because alleged omissions "merely exacerbated the misleading nature of the alleged conduct") (internal quotation marks omitted).

absolutely unable to sell their CEFs while UBS PR was under its forced inventory reduction . . ., its statements were actionable . . . ."))

Notably, Plaintiffs made no attempt to rebut Defendants' argument that they had no affirmative duty to disclose the liquidity of the CEF market or UBS-PR's intent to reduce its inventory.  (*See* Def. Br. at 13)  Rather, Plaintiffs invoke the theory that "Defendants opted to speak about the CEFs and upon choosing to speak, one must speak truthfully."  (Pl. Br. at 12 n.6 (quotation omitted))  But the "underlying rationale" of *Affiliated Ute* "does not logically apply in a case in which 'omissions' are the type that can be said to exist only because of other, positive statements that the [defendant] has made."  *Rowe v. Maremont Corp.*, 650 F. Supp. 1091, 1105 (N.D. Ill. 1986), *aff'd*, 850 F.2d 1226 (7th Cir. 1988) (internal quotation marks omitted; alteration in original).  In declining to extend *Affiliated Ute* to a case involving no affirmative duty to disclose, the Third Circuit explained:  "[D]efendants' failure to inform plaintiffs that Michael Douglas was not under contract to produce movies for Cinema Plus is meaningless without the representation that Douglas would produce movies."  *Johnston*, 265 F.3d at 193.[5]  Likewise, a court in this Circuit has held:  "[I]t seems clear that *Affiliated Ute* applies to 'omissions cases' only where there is a special affirmative 'obligation to disclose' material information rather than merely a duty to speak truthfully."  *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 26-27 (D. Mass. 2008).[6]

---

[5] *See also Kelley v. Microsoft Corp.*, No. C07-0475 (MJP), 2009 WL 973368, at *8-9 (W.D. Wash. Apr. 10, 2009) (*Affiliated Ute* did not apply because plaintiffs' allegations "all center on the claim that computers lacking WDDM compatibility cannot achieve full Vista Basic functionality" which was "only potentially deceptive in the context of Microsoft's" affirmative representation that the computers were "'Vista Capable'"), *aff'd in relevant part*, 395 F. App'x 431 (9th Cir. 2010); *Lewis v. Straka*, No. 05-C-1008, 2006 WL 2927658, at *8 (E.D. Wis. Oct. 12, 2006) (*Affiliated Ute* did not apply because plaintiffs "primarily allege that defendants' statements regarding CIB's financial health and its loan portfolio were distortions of the truth"); *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 276 (N.D. Tex. 1990) ("[T]he crux of plaintiffs' complaints centers on distortions, not omissions; hence plaintiffs are not entitled to the *Ute* presumption.").

[6] *See also In re Towers Fin. Corp. Noteholders Litig.*, No. 93 Civ. 0810 (WK) (AJP), 1995 WL 571888, at *20 (S.D.N.Y. Sept. 20, 1995) ("[T]he Supreme Court implicitly held that the presumption of reliance would not apply where, as here, there is no fiduciary relationship and thus no duty of disclosure."); *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 354 (S.D. Fla. 1991) (*Affiliated Ute* did not apply because "defendants did not 'stand mute' in the face of a

*(cont'd)*

As the SAC and Plaintiffs' Opposition Brief are replete with purported misstatements for which Plaintiffs could plausibly plead and prove reliance, the *Affiliated Ute* presumption of reliance does not apply here and Plaintiffs' Section 10(b) claims against all Defendants must be dismissed.

## C.     Plaintiffs Have Not Alleged A Plausible Theory Of Loss Causation.

In the Opening Brief, the UBS Defendants explained that Plaintiffs' Section 10(b) claim should be dismissed because Plaintiffs have not pled loss causation.  (Def. Br. 19-22)  In response, Plaintiffs point to the general assertion in the SAC that "Plaintiffs and the putative Class purchased millions of dollars of CEFs that had a value that have dramatically declined far below the value of what Plaintiffs paid for them."  (SAC ¶ 103)  This allegation is insufficient because, *inter alia*, Plaintiffs do not allege *when* these prices declined relative to when the purported corrective disclosures occurred.  As explained in the Opening Brief, allegations regarding the timing of the loss are critical to successfully pleading loss causation.  (*See* Def. Br. at 20)  *See also Urman v. Novelos Therapeutics, Inc.*, 867 F. Supp. 2d 190, 197 (D. Mass. 2012) ("The timing of the disclosure is no small matter.").

Instead of offering a plausible theory of loss causation, Plaintiffs respond that loss causation is supposedly too factual to be addressed at the pleading stage.  (Pl. Br. at 15-17)  On the contrary, Defendants have cited numerous cases dismissing Section 10(b) claims for failure to plead loss causation, which Plaintiffs make no attempt to distinguish.  (*See* Def. Br. at 20-21 (citing cases granting 12(b)(6) motions on loss causation grounds))

Plaintiffs next argue that they satisfied the notice pleading requirements of Rule 8 merely by offering wholly conclusory allegations that they suffered losses "as a direct and proximate consequence of Defendants' actions."  (SAC ¶ 103; Pl. Br. at 17)  In support of this argument, Plaintiffs ignore the pleading standards established by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Indeed, Plaintiffs expressly rely on the "no set of facts in support of his claim" standard articulated in *Conley v.*

---

*(cont'd from previous page)*
duty to disclose"); *Beissinger v. Rockwood Computer Corp.*, 529 F. Supp. 770, 785 (E.D. Pa. 1981) (same).

*Gibson*, 355 U.S. 41 (1957) (*see* Pl. Br. at 6), which was overruled by the Supreme Court.

*Twombly*, 550 U.S. at 563; *see also Iqbal*, 556 U.S. at 669 (noting that the Court retired the "no-set-of-facts" standard in *Twombly*).  In *Twombly*, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alteration in original).  As such, the Supreme Court acknowledged that Rule 8(a)(2) "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  *Id.* at 555 n.3.

In *Iqbal*, the Supreme Court stated that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Rule 8 is not satisfied by "a plaintiff armed with nothing more than conclusions." *Id.* at 679.  Also, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

Plaintiffs' conclusory allegations of loss causation do not satisfy Rule 8's pleading requirements under *Twombly* and *Iqbal*.  In their Opposition Brief, Plaintiffs point to three paragraphs of the SAC to show that they have adequately pled loss causation.  (Pl. Br. at 17, citing SAC ¶¶ 101, 102, 103)  Paragraph 101 of the Complaint points to a purported decrease in the value of the Funds *between March and September 2009* (SAC ¶ 101) – nearly two years before the corrective disclosure.  Paragraph 102 merely alleges, in the most conclusory fashion, that Plaintiffs' "injuries are the direct and proximate result of Defendants' fraudulent activities." (*Id.* ¶ 102)  This allegation is a mere "formulaic recitation of the elements" of loss causation. *Twombly*, 550 U.S. at 555.  Paragraph 103 alleges that "Plaintiffs have suffered millions of dollars of damages because the CEFs have declined in value *or* they possess unexecuted sell

orders." (SAC ¶ 103) (emphasis added)  Again, this allegation pleads no facts that plausibly connect Plaintiffs' losses to the May 2012 corrective disclosures.[7]

In addition, Plaintiffs ignored their obligation to differentiate their losses from general losses suffered as a result of the deep recession and the global financial crisis that occurred during the class period.  (*See* Def. Br. at 21); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005).  Thus, they failed to plead loss causation for this reason as well.[8]

Not surprisingly, all but one of the cases cited by Plaintiffs for their contention that they merely have to allege "some indication of the loss and the causal connection that the plaintiff has in mind" (Pl. Br. at 16) were decided before *Twombly* and *Iqbal*.  Their only post-*Twombly* case, *Hoff v. Popular, Inc.*, 727 F. Supp. 2d 77 (D.P.R. 2010), had factual allegations connecting the losses to the corrective disclosures – critical facts that are not found in the SAC.  *See id.* at 94 (loss causation adequately pled based on allegations that the stock price of Popular fell by 50% following the corrective disclosures).[9]  No similar factual allegations are present here.

---

[7] Plaintiffs' formulaic allegations of loss causation are not only insufficient, but they are refuted by the prices shown in the newspaper price listings and monthly account statements cited in the SAC.  (SAC ¶¶ 47-48)  Those documents show that the Funds' prices rebounded after September 2009 and never fell in response to the alleged corrective disclosure in May 2012.  (*See* Def. Br. Exs. G-M)  Plaintiffs contend that the Court cannot look at that price data, but those documents are properly before the Court because they are incorporated by reference into the SAC.  (*See* Def. Br. at 5 n.4)  *See also Perry v. New England Bus. Serv., Inc. (NEBS) Long-Term Disability Plan*, No. 01-11508 (RWZ), 2002 WL 31399132, at *1 n.2 (D. Mass. Oct. 22, 2002) ("Although plaintiff did not attach a copy of the plan document to her amended complaint, it is entirely proper for this Court to consider the policy without converting this proceeding into a motion for summary judgment.  The amended complaint refers to and quotes from the plan document, which is central to plaintiff's claim."), *aff'd*, 347 F.3d 343 (1st Cir. 2003).  Defendants further reserve the right to seek sanctions under Rule 11 in the event that the SAC survives a motion to dismiss because Plaintiffs have no factual basis to allege a price decline after the May 2012 corrective disclosure.

[8] Plaintiffs criticize Defendants for citing newspaper articles describing the 2008 global financial crisis.  The Court may take judicial notice of that well known market event.  *See Starr Int'l Co. v. Fed. Reserve Bank of N.Y.*, No. 11 Civ. 8422 (PAE), 2012 WL 5834852, at *1 n.1 (S.D.N.Y. Nov. 16, 2012) ("The Court also takes notice of the events constituting the financial crisis that occurred in fall 2008, for the purpose of providing historical context, and because the Court 'may take judicial notice of indisputable historical events.'") (citations omitted).

[9] Plaintiffs also rely on pre-*Dura* case law that is inconsistent with the elements of loss causation established in *Dura*.  *See Swack v. Credit Suisse First Boston*, 383 F. Supp. 2d 223, 242 (D. Mass. 2004) (sustaining loss causation where plaintiff merely pled that "the stock price was, at least on some of the dates and at least in part, affected by [defendant's] misleading ratings");

*(cont'd)*

**D.     Plaintiffs Have Not Alleged Scienter.**

Finally, Defendants also demonstrated in their Opening Brief that Plaintiffs have not alleged a strong inference of scienter on the part of UBS-PR, Ferrer, or Ortiz.  (Def. Br. at 22-24)  In the face of extensive contrary authorities, Plaintiffs do not provide any further support for their conclusory assertion that Ferrer and Ortiz's compensation for managing the Funds provided them with a motive to commit fraud.  (Def. Br. at 23-24; Pl. Br. at 20)

Furthermore, with respect to the claims against the Funds, Plaintiffs have also failed to plead fraud based on the statements and purported scienter of Ferrer.  His statements and knowledge cannot be attributed to the Funds merely because he was a director of the Funds because he was not acting on behalf of the Funds at those times.  *See* RESTATEMENT (SECOND) OF AGENCY § 275 cmt. b (2012) ("If knowledge . . . is the important element in a transaction, and the agent who has the knowledge is not one acting for the principal in the transaction, the principal is not affected by the fact that the agent has the knowledge.")  Plaintiffs have not pled facts to suggest that Ferrer was acting on behalf of the Funds when he made the disputed statements.

## II.     PLAINTIFFS' PUERTO RICO LAW CLAIMS SHOULD BE DISMISSED.

**A.     Plaintiffs' Claims Are Barred By The Statute Of Repose.**

Plaintiffs' Puerto Rico Uniform Securities Act claims are barred by the two-year statute of repose applicable to such claims.  *See* 10 P.R. Laws Ann. § 890(e).  Plaintiffs try to avoid this time bar based on a "fraudulent concealment" theory, but even they concede that no court has ever applied that theory to PRUSA.  (Pl. Br. at 26)  The ***only*** case on point is Judge Fusté's opinion in *Cooperativa de Ahorro y Crédito Aguada v. Kidder, Peabody & Co.*, 799 F. Supp. 261, 263 n.4 (D.P.R. 1992), *rev'd on other grounds*, 993 F.2d 269 (1st Cir. 1993), which expressly rejected the application of the fraudulent concealment theory to the PRUSA.

_____

(cont'd from previous page)
*Lalor v. Omtool, Ltd.*, No. 99-469M, 2000 WL 1843247, at *2-3 (D.N.H. Dec. 14, 2000) (sustaining loss causation even though purported corrective disclosures were not linked to alleged fraud).

Judge Fusté's decision is consistent with the statutory language, which reflects an intent to create a statute of repose ("caducidad"), rather than a mere statute of limitations.  *See* 10 P.R. Laws Ann. § 890(e) ("*No person may bring a civil suit* pursuant to the provisions of this section more than two (2) years after the sale contract has been executed.") (emphasis added).  The language of Section 890(e) admits of no exceptions and specifies the moment from which the period is to be computed:  the date of execution of the contract.  Such language reflects an intent to preclude tolling.  *See Vega Martínez v. Calzadilla*, 756 F. Supp. 78, 81-82 (D.P.R. 1991) (Fusté, J.) (citing sources and discussing differences between caducity and limitations periods, and stating that "review of Puerto Rico law convinces us that where a period of limitations is one of *caducidad*, there can be no tolling of the time period").

In contrast, the Puerto Rico Supreme Court opinion cited by Plaintiffs – *COSSEC v. González López*, 179 D.P.R. 793, 809, 813 (P.R. 2010) – involved a different statute (specifically, Puerto Rico's Uniform Commercial Code) that contains a statute of limitations, not a statute of repose or caducity.  Moreover, the Puerto Rico Supreme Court was determining the start date for the limitations period, given that "neither from Section 2-118 . . . nor from Section 2-420 . . . can it be determined when [the cause of action] arises." *Id.* at 805 (translation ours).  Here, in contrast, there is no question under the statute about when the period of repose begins.  Thus, *COSSEC* does not apply to the statute of repose found in PRUSA.

**B.     Plaintiffs' Puerto Rico Law Claims Are Barred By SLUSA.**

This Court has applied SLUSA to bar class action claims based on state law arising out of the misrepresentation or omission of a material fact in connection with the purchase or sale of a "covered security."  (Def. Br. at 28, citing *Hidalgo-Velez v. San Juan Asset Mgmt., Inc.*, No. 11-2175, 2012 WL 4427077, at *2 (D.P.R. Sept. 24, 2012) (Cerezo, J.), *interlocutory appeal denied*, 2013 WL 1089745 (D.P.R. Mar. 15, 2013))  This Court has also held that, even where the fund at issue is not traded on a national exchange, claims relating to such funds will still be considered in "connection with" the purchase or sale of "covered securities" if the fund invests in other covered securities.  *Hidalgo*, 2012 WL 4427077, at *2.

Plaintiffs argue that this Court's holding in *Hidalgo* is overbroad and should be narrowed by two decisions from the Southern District of New York that predated *Hidalgo*.  (Pl. Br. at 24)

14

On the contrary, the reasoning of *Hidalgo* is not only correct, but squarely applies here.  A key allegation in the SAC is Plaintiffs' contention that the prices of the Funds' shares were purportedly artificially priced because they did not sufficiently correlate to their "net asset value" derived from the underlying securities in which the Funds invested.  (SAC ¶¶ 44-45, 56)  Thus, Plaintiffs' claims are in "connection with" the purchase and sale of a "covered security" and SLUSA's preclusion applies.

In addition, even if SLUSA did not apply, for the reasons set forth in Defendants' Opening Brief and in the Motion to Dismiss of PRTIFF IV and PRIBF I, Plaintiffs have failed to state a claim under Puerto Rico statutory law.  (Def. Br. at 29; D.I. 68, PRTIFF IV and PRIBF I Motion To Dismiss at 15-16)

## CONCLUSION

WHEREFORE, Defendants respectfully request that all claims filed by Plaintiffs Ricardo Román-Rivera, Carmelo Román, Onnasis Corporation, SDM Holdings, Inc. and Julio Tormes-Rodríguez be dismissed with prejudice under Federal Rules of Civil Procedure 12(b)(6) and 9(b) for failure to state a claim upon which relief can be granted and failure to plead fraud with particularity.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 18th day of April, 2013.

IT IS HEREBY CERTIFIED that the foregoing was filed electronically with the Clerk of the Court using CM/ECF on this same date and that, as such, the foregoing was served electronically upon all counsel of record.

Roberto C. Quiñones-Rivera
MCCONNELL VALDÉS LLC
270 Muñoz Rivera Ave.
Hato Rey, Puerto Rico  00918
Tel.: (787) 759-9292
Fax: (787) 759-9225

By:  /s/ Roberto C. Quiñones-Rivera
         Roberto C. Quiñones-Rivera
         USDC-PR No. 211512

*Attorney for Defendants Puerto Rico Fixed Income Fund III, Inc. and Puerto Rico Fixed Income Fund V, Inc.*

Salvador J. Antonetti-Stutts
Mauricio O. Muñiz-Luciano
Ubaldo M. Fernández-Barrera
O'NEILL & BORGES LLC
American International Plaza
250 Muñoz Rivera Ave., Suite 800
Hato Rey, Puerto Rico  00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

By:  /s/ Mauricio O. Muñiz-Luciano
         Mauricio O. Muñiz-Luciano
         USDC-PR No. 220914

OF COUNSEL:
Paul J. Lockwood
Nicole A. DiSalvo
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
Tel.:  (302) 651-3000
Fax:  (302) 651-3001

*Attorneys for Defendants UBS Financial
Services Incorporated of Puerto Rico, UBS
Trust Company of Puerto Rico, UBS
Financial Services Inc., Miguel A. Ferrer and
Carlos J. Ortiz*

16