## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: UBS FINANCIAL SERVICES, INC. OF PUERTO RICO SECURITIES LITIGATION | Civil Case No.:  3:12-cv-01663-CCC<br><br>JURY TRIAL DEMANDED<br><br>SECURITIES CLASS ACTION |
| NORA FERNANDEZ; AUGUSTO SCHREINER; EDDIE TORO VELEZ; VICTOR R. VELA DIEZ DE ANDINO; JUAN VIERA; GEORGINA VELEZ MONTES; and ESTHER SANTANA, on behalf of themselves and all others similarly situated,<br><br><div align=center>Plaintiffs,</div><br><div align=center>v.</div><br>UBS AG; UBS FINANCIAL SERVICES, INC.; UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO; UBS TRUST COMPANY OF PUERTO RICO; UBS BANK USA; CARLOS V. UBIÑAS; MIGUEL A. FERRER; BANCO POPULAR de PUERTO RICO; and POPULAR SECURITIES, LLC,<br><br><div align=center>Defendants.</div> | Civil Case No.:  3:14-cv-01441-CCC<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

**PLAINTIFFS' JOINT CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO TRANSFER VENUE AND IN FURTHER SUPPORT OF PLAINTIFFS' JOINT MOTION FOR MODIFICATION OF THE OCTOBER 16, 2012 CONSOLIDATION ORDER**

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ..................................................................................... 1

II.  FACTUAL BACKGROUND......................................................................................... 4

   A.   The Breach Of Duty Action Is Uniquely Tied To Puerto Rico ...................................... 4

   B.   The Securities Action And Defendants' Concession That Puerto Rico Is The Proper Forum.................................................................................................................... 5

III. ARGUMENT................................................................................................................ 6

   A.   Puerto Rico Is The Most Appropriate Venue For The Breach Of Duty Action ............. 6

     1.   Legal Standard......................................................................................................... 6

     2.   Puerto Rico's Exceptionally Strong Interest In The Breach Of Duty Action Makes It The Most Appropriate Forum For The Breach Of Duty Action ....................................... 8

     3.   Defendants Have Conceded That Puerto Rico Is The Appropriate Forum.................... 13

     4.   The UBS Forum Selection Clause Does Not Cover The Whole Action........................ 15

   B.   Consolidation Is Mandated Under The Court's Consolidation Order And Is Proper Under Rule 42(a) .......................................................................................................... 17

     1.   The Consolidation Order Applies And Requires Consolidation.................................... 17

     2.   Rule 42(a) Confirms That Consolidation Is Appropriate.............................................. 19

     3.   Defendants' Arguments Against Consolidation Fail .................................................... 21

IV.  CONCLUSION............................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*,
  374 F.3d 23 (1st Cir. 2004) .......................................................................................13, 14

*Am. Greetings, Corp. v. Cookie Jar Entm't*,
  No. 09-cv-1056, 2009 WL 3713686 (N.D. Ohio Nov. 3, 2009) ...............................15

*Aquila v. Fleetwood, R.V.*,
  No. 12-cv-3281, 2014 WL 1379648 (E.D.N.Y. Mar. 27, 2014) ................................12

*Arroyo v. Chardon*,
  90 F.R.D. 603 (D.P.R. 1981) ....................................................................................23

*Arroyo-Perez v. Demir Grp. Int'l*,
  733 F. Supp. 2d 314 (D.P.R. 2010) .....................................................................12, 14

*Atlantic Marine Construction Co. v. United States District Court for the Western District of
Texas*,
  134 S. Ct. 568 (2013) .......................................................................................... *passim*

*Banco Popular de Puerto Rico v. Airborne Group PLC*,
  882 F. Supp. 1212 (D.P.R. 1995) ..............................................................................16

*Banculescu v. Compania Sud Americana De Vapores, SA*,
  No. 11 Civ. 2681, 2012 WL 5909696 (S.D.N.Y. Nov. 26, 2012) ............................10

*Bank of Montreal v. Eagle Assocs.*,
  117 F.R.D. 530 (S.D.N.Y. 1987) ..............................................................................23

*Barletta Heavy Div., Inc. v. Erie Interstate Contractors, Inc.*,
  677 F. Supp. 2d 373 (D. Mass. 2009) .......................................................................17

*Bus. Store, Inc. v. Mail Boxes, Etc.*,
  No. 11-cv-3662, 2012 WL 525966 (D.N.J. Feb. 16, 2012) ......................................12

*Caguas Lumber Yard Inc. v. Ace Hardware Corp.*,
  827 F. Supp. 2d 76 (D.P.R. 2011) ...............................................................................7

*Caribbean Restaurants, LLC v. Burger King Corp.*,
  No. 14-1200, 2014 WL 2465133 (D.P.R. June 3, 2014) ...........................................14

*Cianbro Corp. v. Curran–Lavoie, Inc.*,
  814 F.2d 7 (1st Cir. 1987) ............................................................................................7

*Cmty. Voice Line, L.L.C. v. Great Lakes Commc'n Corp.*,
    No. C 12-4048, 2014 WL 3102124 (N.D. Iowa July 7, 2014) ....................................8, 9, 12

*Coady v. Ashcraft & Gerel*,
    223 F.3d 1 (1st Cir. 2000) ...................................................................................................11

*Collazo v. Calderón*,
    212 F.R.D. 437 (D.P.R. 2002) ...........................................................................................22

*Cordua v. Navistar Int'l Transp. Corp.*,
    No. C 10-4961, 2011 WL 62493 (N.D. Cal. Jan. 7, 2011) ...................................................12

*Cruickshank v. Clean Seas Co.*,
    402 F. Supp. 2d 328 (D. Mass. 2005) ...............................................................................22

*D.I.P.R. Mfg., Inc. v. Perry Ellis Int'l, Inc.*,
    472 F. Supp. 2d 151 (D.P.R. 2007)....................................................................................16

*Gonzalez-Quiles v. Cooperativa de Ahorro Y Credito de Isabela*,
    250 F.R.D. 91 (D.P.R. 2007) ..............................................................................................22

*Goya Foods, Inc. v. Golla Oy*,
    959 F. Supp. 2d 201 (D.P.R. 2013).....................................................................................10

*Houston Baptist Univ. v. ACE Am. Ins. Co.*,
    No. H-093914, 2010 WL 376325 (S.D. Tex. Jan. 26, 2010).................................................12

*Jon Feingersh Photography, Inc. v. Pearson Educ., Inc.*,
    978 F. Supp. 2d 463 (E.D. Pa. 2013) .................................................................................15

*In re Lucent Techs. Inc. Sec. Litig.*,
    221 F. Supp. 2d 472 (D.N.J. 2001) ....................................................................................23

*Marano Enters. v. Z-Teca*,
    254 F.3d 753 (8th Cir. 2001) .............................................................................................16

*Milliken & Co. v. Grupo Antolin Michigan, Inc.*,
    No. 10-cv-2109, 2010 WL 3938389 (D.S.C. Oct. 5, 2010).................................................15

*NPR, Inc. v. Am. Int'l Ins. Co. of Puerto Rico*,
    242 F. Supp. 2d 121 (D.P.R. 2003).......................................................................................7

*Phi, Inc. v. Apical Indus., Inc.*,
    No. 13-cv-00015, 2014 WL 1820717 (W.D. La. Mar. 7, 2014)...........................................17

*Philadelphia Indem. Ins. Co. v. Douglas E. Barnhart, Inc.*,
    No. 06-cv-0717, 2007 WL 2873683 (S.D. Cal. Sept. 27, 2007)...........................................22

*Pino-Betancourt v. Hosp. Pavia Santurce,*
    928 F. Supp. 2d 393 (D.P.R. 2013)................................................................22

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981).........................................................................8, 9, 10

*In re Relafen Antitrust Litig.,*
    218 F.R.D. 337 (D. Mass. 2003).........................................................12, 14

*Rice v. Bellsouth Adver. & Pub. Corp.,*
    240 F. Supp. 2d 526 (W.D.N.C. 2002) .......................................................12

*Rivera-Feliciano v. Acevedo-Vila,*
    Nos. 06-1358, 05-1910, 2007 WL 582006 (D.P.R. Feb. 20, 2007)........................21

*St. Jude Medical, S.C., Inc. v. Biosense Webster, Inc.,*
    No. 12-621, 2012 WL 1576141 (D. Minn. May 4, 2012)....................................16

*Stewart v. Am. Van Lines,*
    No. 12-cv-394, 2014 WL 243509 (E.D. Tex. Jan. 21, 2014) .................................14

*Taxes of Puerto Rico, Inc. v. TaxWorks, Inc.,*
    No. 12-cv-2059, 2014 WL 1089259 (D.P.R. Mar. 20, 2014).................................14

*Thayer v. Shearson, Loeb, Rhoades, Inc.,*
    99 F.R.D. 522 (W.D.N.Y. 1983).................................................................22

*Tingley Sys., Inc. v. CSC Consulting, Inc.,*
    152 F. Supp. 2d 95 (D. Mass. 2001) .............................................................22

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964)..............................................................................7

*Vazquez Rivera v. Congar Int'l Corp.,*
    241 F.R.D. 94 (D.P.R. 2007) .....................................................................22

**Statutes**

28 U.S.C. § 1404(a) ............................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 42(a) ........................................................................... *passim*

Plaintiffs respectfully submit this Joint Consolidated Memorandum of Law in Opposition to Defendants' Motions to Transfer Venue and in Further Support of Plaintiffs' Joint Motion for Modification of the October 16, 2012 Consolidation Order and Leave to File a Master Consolidated Complaint.[1]

## I.      PRELIMINARY STATEMENT

Defendants' motions to transfer the Breach of Duty Action to New York, a forum with virtually no connection to this case, should be denied based upon Puerto Rico's exceptionally strong public interest in the matters before this Court.  Indeed, by litigating claims in Puerto Rico for the past two years in the Securities Action based on the *same* UBS customer contracts at issue here, the UBS Defendants have by their own actions acknowledged that Puerto Rico is the proper forum for such claims.  Thus, transfer is inappropriate and, as set forth in the Consolidation Motion, this case should be consolidated with the Securities Action pursuant to the Consolidation Order and Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)").

The Breach of Duty Action is uniquely tied to Puerto Rico and its particular financial troubles.  This case concerns the sale of non-exchange-traded CEFs by UBS PR, Puerto Rico's largest broker-dealer, and Popular Securities LLC ("Popular Securities"), an affiliate of Puerto

---

[1] On July 11, 2014, Defendants in the Breach of Duty Action filed two separate motions to transfer that action, styled as The UBS Defendants' Motion to Transfer Venue (ECF No. 35 in the Breach of Duty Action) ("Transfer Memo" or "Transfer Mem."), and Popular's Motion to Transfer Venue (ECF No. 37 in the Breach of Duty Action) ("Popular Transfer Mot."), respectively.  Part III.A of this Memorandum sets forth the opposition of Plaintiffs in the Breach of Duty Action to Defendants' motions to transfer.  On July 11, 2014, Defendants in the Breach of Duty Action and the Defendants in the Securities Action also filed a joint response in opposition to the Consolidation Motion (ECF No. 36 in the Breach of Duty Action) ("Defendants' Joint Opposition" or "Defs.' Joint Opp.").  Part III.B of this Memorandum sets forth the Securities Action and Breach of Duty Action Plaintiffs' joint reply in further support of the Consolidation Motion.  Unless otherwise indicated herein, all capitalized terms have the meanings ascribed to them in Plaintiffs' Joint Motion for Modification of the October 16, 2012 Consolidation Order and Leave to File a Master Consolidated Complaint filed on June 12, 2014 (the "Consolidation Motion") (ECF No. 6 in the Breach of Duty Action).

Rico's largest bank, Banco Popular de Puerto Rico ("Banco Popular," together with Popular Securities, "Popular"). The action alleges that, for years, these two leading Puerto Rico financial institutions breached fundamental fiduciary and contractual duties owed to thousands of customers, *all of whom were Puerto Rico residents*, by selling them risky CEF securities "tailored exclusively to Puerto Rico," and that this scheme resulted in massive losses for those same Puerto Rico residents. Moreover, because the CEFs were primarily backed by Puerto Rico government debt, the case is closely intertwined with the island's economic crisis. In sum, this is a case: (i) brought by Puerto Rico residents; (ii) against financial institutions doing business in Puerto Rico; (iii) concerning Puerto Rico-based securities loaded with Puerto Rico instruments; and (iv) in which the securities were exclusively sold in Puerto Rico to Puerto Rico residents. It is difficult to imagine circumstances in which a forum has a more clear-cut and overwhelming public interest in a case than Puerto Rico does in the Breach of Duty Action.

Puerto Rico's undeniable connection to this action is not (and cannot be) undermined by the fact that Plaintiffs initially filed similar claims in the U.S. District Court for the Southern District of New York before voluntarily dismissing them and filing the Breach of Duty Action in this Court. Defendants did not rely on or even answer the New York pleading. Moreover, Plaintiffs filed this action in Puerto Rico after discussions with the Plaintiffs in the Securities Action confirmed not only the depth of common legal and factual issues shared by the two cases, but also the compelling degree of efficiency and judicial economy that will be realized by consolidating the Breach of Duty Action with the Securities Action in Puerto Rico.

The *sole* premise for Defendants' argument that the Breach of Duty Action should be transferred is the forum selection clause in the UBS customer contracts, which identifies New York as the forum for adjudicating disputes *with respect to that agreement*. Defendants contend

that, due to such a forum selection clause, the U.S. Supreme Court's decision in *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 134 S. Ct. 568 (2013) mandates transfer.  This argument cannot be credited given, *inter alia*:  (i) Puerto Rico's exceptional public interest in the Breach of Duty Action; and (ii) Defendants' concession that Puerto Rico is the proper forum by litigating substantially similar claims arising under the same UBS customer contract in the Securities Action.  Puerto Rico's overwhelming interest in the action and the applicable law regarding transfer under 28 U.S.C. § 1404(a) strongly support adjudication of the Breach of Duty Action in Puerto Rico.  As set forth below in Section III.A, Defendants' motion to transfer should be denied.

Instead, the Breach of Duty Action should be consolidated in this Court with the Securities Action.  The two actions share common defendants, common issues of fact and law, and will require common proof of liability.  Defendants' cursory efforts to oppose consolidation – arguing that the Consolidation Order does not apply or that the actions do not share common issues – all fall woefully short.  By its plain terms, the Consolidation Order mandates consolidation because the Breach of Duty action arises out of the same "subject matter" as the Securities Action (i.e., the sale of CEFs by UBS PR).  *See* Consolidation Order at §§ I.A, I.B, III.G.  Rule 42(a) further confirms that the Breach of Duty Action and the Securities Action should be consolidated given, *inter alia*, the significant overlap in alleged misconduct, defendants, and relevant time periods, as well as the shared factual and legal issues that will arise in the two actions.  In sum, significant efficiencies will be gained, and the best interests of the classes in both actions will be significantly advanced, through consolidation of the two actions under the joint leadership structure proposed in Plaintiffs' Consolidation Motion.  *See* Section III.B *infra*.  Plaintiffs' Consolidation Motion should therefore be granted in its entirety.  *Id*.

3

## II.   FACTUAL BACKGROUND

### A.   The Breach Of Duty Action Is Uniquely Tied To Puerto Rico

The Breach of Duty Action arises out of the sale of CEFs to Puerto Rico residents by UBS PR and Popular from May 2008 through the present.  Class Action Complaint (ECF No. 1 in the Breach of Duty Action) ("Breach of Duty Action Compl.") ¶¶ 96-114.  The Breach of Duty Action concerns sales of twenty-three different CEFs that were marketed exclusively in Puerto Rico, including all thirteen of the CEFs at issue in the Securities Action.  *Id.* ¶ 39a-b. UBS Trust Company of Puerto Rico ("UBS Trust") was the sole manager of fourteen of the CEFs, while UBS and Popular co-managed the remaining nine.  *Id.*  Along with certain Popular corporate entities, the Breach of Duty Action Defendants include, *inter alia*, UBS PR, UBS Bank USA ("UBS Bank") (a UBS affiliate and lender institution based in Utah), UBS Trust, and two individual Defendants – Miguel A. Ferrer ("Ferrer"), who is also named in the Securities Action, and Carlos V. Ubiñas ("Ubinas").  Ubiñas, like Ferrer, is an executive officer of UBS PR, and both are executive officers of all twenty-three of the CEFs at issue in the Breach of Duty Action. *Id.* ¶¶ 28-29.

It is undisputed that the CEFs at issue were "exclusively tailored to the Puerto Rico market" and were "sold only to Puerto Rico residents."  *Id.* ¶ 42.  The CEFs were tailored to the Puerto Rico market in several respects, including that:  (i) at least two-thirds of the assets underlying the CEFs were required by statute and by the CEFs' governing documents to be issued by Puerto Rico issuers (and were primarily Puerto Rico government debt instruments); (ii) the CEFs provided tax-free income to Puerto Rico residents; and (iii) the CEFs were incorporated in Puerto Rico and the CEF shares were sold exclusively to Puerto Rico residents (thus exempting the CEFs from the strictures of the Investment Company Act of 1940).  *Id.* ¶¶ 41-43.

4

The Breach of Duty Action alleges that UBS and Popular breached their fiduciary and contractual duties by selling the risky CEFs to Puerto Rico investors in order to reap enormous fees and commissions – but without regard for the suitability of those investments – from May 5, 2008 through the present.  *Id*. ¶¶ 1-11, 16-112, 121-164.  The action also alleges that UBS engaged in an unlawful loan scheme that involved urging Puerto Rico residents to take on personal debt by borrowing from UBS's Utah-based affiliate, UBS Bank, in order to obtain more money to invest in CEFs.  *Id*. ¶¶ 74-104.  Based upon Defendants' misconduct, government investigations by Puerto Rico regulators and federal agencies are "focused on UBS and Popular and their roles in the collapse of the Puerto Rico bond market."  *Id*. ¶ 9.[2]

**B.    The Securities Action And Defendants' Concession That Puerto Rico Is The Proper Forum**

The Securities Action asserts claims for violations of federal and Puerto Rico law arising out of Defendants' sale of CEFs to Puerto Rico residents pursuant to allegedly misleading statements and omissions regarding the nature and liquidity of the marketplace for CEF shares from January 1, 2008 through May 1, 2012.  Securities Action SAC ¶¶ 1, 4, 111, 120-190.  As set forth in Plaintiffs' Consolidation Motion, the Breach of Duty Action and the Securities Action share common defendants (e.g., UBS PR), involve common issues of fact (e.g., the risks of the CEFs) and law (e.g., whether UBS breached its contractual duties), and will require common proof of liability (e.g., documents and testimony from UBS and others concerning the common facts at issue).  *See* Consolidation Motion at 1-15.

Notably, the Securities Action – pending before this Court for over two years – also includes a Puerto Rico state law claim based on alleged breaches of the contract between the

---

[2] In fact, UBS has already entered into a settlement with the Commissioner of Financial Institutions of Puerto Rico ("OCIF") related to the unlawful loan scheme involving UBS Bank that underlies, in part, Plaintiffs' claims.  *Id*. ¶ 111.

UBS Defendants and their customers. *See, e.g.*, Securities Action SAC ¶ 6 ("Internal e-mails and other documents show that Defendants knew the true facts about the CEFs but nevertheless failed to disclose these material facts to Plaintiffs and other retail customers in Puerto Rico"); ¶ 185 ("The actions and conduct of the [UBS] Defendants . . . clearly and expressly demonstrate a lack and complete absence of any basic good faith principles or compliance with fair dealing standards in fulfilling their contractual obligations to Plaintiffs and the Class."). As the UBS Defendants readily concede, all UBS customers are required to sign a form of contract containing the same UBS forum selection clause at issue here. *See, e.g.*, Affidavit of Maureen Millett (ECF No. 35-1 in the Breach of Duty Action) ("Millett Aff.") ¶¶ 2-5 (testifying that all UBS customers from 2001 to the present have been required to sign a contract containing a forum selection clause providing for venue in New York). In sum, the UBS customer contracts at issue in the Securities Action are the same UBS customer contracts at issue in the Breach of Duty Action – and they contain the same forum selection clause. Nevertheless, in the two years since the Securities Action was commenced, the UBS Defendants have not moved to transfer that action pursuant to the forum selection clause.[3]

## III.   ARGUMENT

### A.   Puerto Rico Is The Most Appropriate Venue For The Breach Of Duty Action

#### 1.   Legal Standard

Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may

---

[3] Defendants argue that the Securities Complaint "never specifically alleges that the Securities Plaintiffs or the putative class members are or were clients" of UBS. Defs.' Joint Opp. at 5. As explained above, Defendants are wrong. The Securities Action plainly alleges that the Securities Action Plaintiffs and class were customers of UBS and that UBS breached the contractual duties it owed to them. Securities Action SAC ¶¶ 2, 6, 185.

transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).  The purpose of § 1404(a) is "to prevent the waste of 'time, energy, and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *NPR, Inc. v. Am. Int'l Ins. Co. of Puerto Rico*, 242 F. Supp. 2d 121, 125 (D.P.R. 2003) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).  District courts adjudicate transfer motions through an individualized, case-by-case consideration of convenience and fairness.  *Caguas Lumber Yard Inc. v. Ace Hardware Corp.*, 827 F. Supp. 2d 76, 79 (D.P.R. 2011).

While courts consider the presence of a valid forum selection clause in analyzing whether transfer is appropriate under § 1404(a), Defendants concede (as they must), that such a clause does not end the analysis.  Indeed, it is a matter of black-letter law that a forum selection clause can be outweighed by a showing that a specific forum has strong "public interest factors" favoring venue in that jurisdiction.  *Atlantic Marine*, 134 S. Ct. at 582.  The public-interest factors relevant to the § 1404(a) analysis include, *inter alia*:   (i) the forum's interest in adjudicating controversies of particular concern to that forum; (ii) the fairness of burdening with jury duty the citizens of the forum with the greater connection to the dispute; (iii) court congestion; and (iv) the possibility of consolidation.  *See NPR, Inc.*, 242 F. Supp. 2d at 125; *Caguas Lumber Yard*, 827 F. Supp. 2d at 80 (citing *Cianbro Corp. v. Curran–Lavoie, Inc.,* 814 F.2d 7, 11 (1st Cir. 1987); *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000)); *see also Atlantic Marine*, 134 S. Ct. at 581 n.6.  Here, as explained below, these factors overwhelmingly favor litigating the Breach of Duty Action in Puerto Rico.

2.      **Puerto Rico's Exceptionally Strong Interest In The Breach Of Duty Action Makes It The Most Appropriate Forum For The Breach Of Duty Action**

Defendants contend that the UBS forum selection clause dictates that the Breach of Duty Action must be transferred to New York and that no relevant public interest factors compel a different result. Transfer Mem. at 9-14. Defendants are wrong. Puerto Rico is the superior forum in light of Puerto Rico's deep-rooted connection to and exceptional public interest in the subject matter of this action. *See Cmty. Voice Line, L.L.C. v. Great Lakes Commc'n Corp.*, No. C 12-4048, 2014 WL 3102124, at *4-5 (N.D. Iowa July 7, 2014) (denying transfer despite valid forum selection clause due to strength of Iowa's public interest in action concerning business conduct and party interactions that occurred in Iowa); *see also Atlantic Marine*, 134 S. Ct. at 583-84 (remanding to lower courts to determine existence of "public interest factors that might support the denial" of defendant's motion to transfer). For the reasons set forth below, Puerto Rico's public interest in the Breach of Duty Action overwhelmingly outweighs that of New York – which has virtually no factual connection to the events at issue in this dispute.

Under *Atlantic Marine*, the critical question is whether Puerto Rico has an exceptionally strong public interest in this action thereby demonstrating that the case should not be transferred, notwithstanding one or more forum selection clauses pointing elsewhere. *See Atlantic Marine*, 134 S. Ct. at 582-83. When applied to this case, even assuming that the UBS forum selection clause covers the entire action and is not contradicted by competing jurisdictional clauses (which is not the case here, *see infra* Sections III.A.3, III.A.4), the public interest factors under § 1404(a) overwhelmingly favor Puerto Rico as the superior forum for the Breach of Duty Action.

***Puerto Rico Has An Extraordinary Interest In This Dispute.*** One key public interest factor is the forum's particular interest in the controversy at issue. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981), *cited with approval in Atlantic Marine*, 134 S. Ct. at 581

8

n.6.  This factor is highly significant for a forum where the primary conduct underlying the litigation and "the nexus of . . . the parties' interactions" occurred in that forum.  *Cmty. Voice Line*, 2014 WL 3102124, at *4.  Puerto Rico's unique and dominant interest in the controversy at issue in the Breach of Duty Action is undeniable.

This case is not a simple contract dispute, as the UBS Defendants would have it, but instead involves an alleged pattern of widespread uniform unlawful conduct by major Puerto Rico financial institutions that exclusively damaged Puerto Rico residents numbering in the thousands.  Moreover, the dispute implicates and is deeply connected to Puerto Rico's economic downturn.   Among the undisputed facts bearing upon the Court's analysis of Puerto Rico's interest in this action are that:  (i) *all* of the core business conduct at issue occurred in Puerto Rico; (ii) *all* of the individuals and entities who comprise the putative class reside in Puerto Rico; (iii) *all* of the CEFs at issue were designed specifically for the Puerto Rico market; (iv) *all* of the CEFs at issue were sold exclusively in Puerto Rico to Puerto Rico residents; and (v) *all* of the alleged harm was inflicted upon Puerto Rico residents.  Thus, Puerto Rico's unique connections to the case are all-encompassing and easily qualify as "exceptional" by any standard.  *Piper Aircraft*, 454 U.S. at 260 (concluding that the location of an airline crash (Scotland) had a "very strong interest in th[e] litigation" because, *inter alia*, the incident occurred there and all of the victims of the crash were Scottish).[4]

In stark contrast, New York has no material connection to the facts of this case and Defendants do not identify any.  Accordingly, this public interest factor is of great significance, it

---

[4] Defendants' contention that Puerto Rico has no "exceptional local interest" in this action because it "is a case for monetary damages that solely involves private parties" (Transfer Mem. at 13-14) is misguided.  This case concerns Puerto Rico's unique CEF markets, the Puerto Rico institutions that created them, and the exclusively Puerto Rico-based investors who lost all or a substantial portion of their life savings by investing in the CEFs at issue.

overwhelmingly favors Puerto Rico, and it alone justifies keeping the Breach of Duty Action in Puerto Rico.

   ***A Puerto Rico Jury Should Decide This Dispute.***   Another public interest factor is the fairness of "burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co.*, 454 U.S. at 241 n.6.  Defendants ignore this factor in their brief – likely because there is no set of circumstances under which Puerto Rico jurors could be viewed as "citizens in an unrelated forum." *Id*.  Given the Breach of Duty Action's almost exclusive focus on individuals, business entities, interactions, corporate practices, investments and financial injury in Puerto Rico, it is clearly fair for a Puerto Rico jury to decide the case.  *See Goya Foods, Inc. v. Golla Oy*, 959 F. Supp. 2d 201, 205 (D.P.R. 2013) (denying transfer of trademark infringement case to Illinois, in part, because core of Plaintiff's case centered on consumers' perceptions in Puerto Rico, and Illinois jury should not be "burdened with contemplating what consumers think . . . across the island of Puerto Rico.").  Given New York's tenuous connection to the case, this factor weighs in favor of Puerto Rico as the appropriate forum.

   ***The Southern District Of New York Is Extremely Congested.***   An additional public interest factor considers "'the administrative difficulties flowing from court congestion.'" *Atlantic Marine*, 134 S. Ct. at 581 n.6 (citation omitted).  While Defendants note that the District of Puerto Rico is highly congested (*see* Transfer Mem. at 13), they ignore that the New York court into which they propose transfer is also extremely busy and highly congested.  Indeed, "'[i]t is well-recognized that the Southern District of New York is a congested district'" and that district has a "'legitimate interest in ensuring that disputes with little connection to the district be litigated elsewhere.'"  *Banculescu v. Compania Sud Americana De Vapores, SA*, No. 11 Civ. 2681, 2012 WL 5909696, at *8 (S.D.N.Y. Nov. 26, 2012) (citation omitted).  While Plaintiffs

recognize that all courts in the federal judiciary are busy, the 2013 Report on Federal Judicial Caseload Statistics (published by the Administrative Office of the U.S. Courts on behalf of the Federal Judiciary) makes clear that the U.S. District Court for the Southern District of New York has approximately *ten times* the caseload of the U.S. Court for the District of Puerto Rico (despite having only around four times the number of judgeships). *See* Ex. A (in 2012, the Southern District of New York had 10,329 cases commenced and 13,580 cases pending and the District of Puerto Rico had 1,208 cases commenced and 1,428 cases pending; in 2013, the Southern District of New York had 9,562 cases commenced and 13,377 cases pending and the District of Puerto Rico had 1,107 cases commenced and 1,408 pending).   Indeed, contrary to Defendants' claims, the Southern District of New York is a more congested jurisdiction. *See* Ex. B (in 2012, the Southern District of New York had 703 pending cases and 523 weighted filings per judge and the District of Puerto Rico had 487 pending cases and 384 weighted filings per judge; in 2013, the Southern District of New York had 667 pending cases and 483 weighted filings per judge and the District of Puerto Rico had 516 pending cases and 433 weighted filings per judge).   Thus, this factor also favors Puerto Rico as the forum for this dispute.

   ***The Consolidation Order And Other Factors Supporting Consolidation Weigh Against Transfer.***   A related public interest consideration is the "possibility of consolidation" in the forum in question. *See Coady*, 223 F.3d at 11.   This factor strongly favors keeping the Breach of Duty Action in Puerto Rico so that it can be consolidated with the overlapping Securities Action. As set forth in the Consolidation Motion (and below), the extensive overlap among the parties, CEFs, investors, time periods and underlying conduct at issue in the two cases means that consolidation would yield efficiencies and economies in all phases of the litigation.   In contrast, "[t]o have two cases – which would involve similar, if not identical, facts and allegations –

proceed simultaneously in two separate courts at taxpayer expense would constitute 'extravagantly wasteful and useless duplication of time and effort.'" *Aquila v. Fleetwood, R.V.*, No. 12-cv-3281, 2014 WL 1379648, at *4 (E.D.N.Y. Mar. 27, 2014).[5]

For the foregoing reasons, the § 1404(a) public interest factors conclusively demonstrate that Puerto Rico's exceptional interest in this action overwhelms the UBS forum selection clause and demands that this case be heard in Puerto Rico. Courts have repeatedly rejected forum selection clauses and denied motions to transfer based on compelling public interest factors such as those present here. *See, e.g.*, *Cmty. Voice Line*, 2014 WL 3102124, at *4-5 (denying motion to transfer to forum identified in forum selection clause where public interest factors showed Iowa's "uncommon" interest in case); *Bus. Store, Inc. v. Mail Boxes, Etc.*, No. 11-cv-3662, 2012 WL 525966, at *9 (D.N.J. Feb. 16, 2012) (denying transfer despite valid forum selection clause based on New Jersey's extensive public interests and contacts with respect to case); *Cordua v. Navistar Int'l Transp. Corp.*, No. C 10-4961, 2011 WL 62493, at *4 (N.D. Cal. Jan. 7, 2011) (denying transfer despite valid forum selection clause due to public interest factors showing California's numerous material connections to case).[6] Defendants' transfer motions should similarly be denied.

---

[5] Moreover, litigating the Breach of Duty Action in New York separate from the Securities Action would create a substantial risk of inconsistent rulings on Defendants' liability – including UBS's liability for breach of the UBS customer contract at issue in both cases – and would contradict any reasonable notion of judicial efficiency. *See Arroyo-Perez v. Demir Grp. Int'l*, 733 F. Supp. 2d 314, 321 (D.P.R. 2010) (denying the defendants' motion to transfer venue because the purpose of consolidation is to prevent duplication and inconsistent rulings); *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 347 (D. Mass. 2003) (granting class certification as it would, *inter alia*, "limit [] the possibility of inconsistent rulings").

[6] *See also Houston Baptist Univ. v. ACE Am. Ins. Co.*, No. H-093914, 2010 WL 376325, at *2-3 (S.D. Tex. Jan. 26, 2010) (denying transfer of case despite valid forum selection clause based on Texas' strong interest in subject matter of case and transferee forum's lack of connection to case); *Rice v. Bellsouth Adver. & Pub. Corp.*, 240 F. Supp. 2d 526, 530-31 (W.D.N.C. 2002) (denying transfer despite valid forum selection clause given North Carolina's strong public

### 3. Defendants Have Conceded That Puerto Rico Is The Appropriate Forum

The UBS Defendants have by their own conduct acknowledged that claims arising from the UBS customer contract should be litigated in Puerto Rico.  Indeed, the UBS customer contracts at issue in the Securities Action are the *same* UBS customer contracts at issue in the Breach of Duty Action – and they contain the *same* forum selection clause.  *See* Millett Aff. ¶¶ 2-5.  Yet, belying the UBS Defendants' attempt to invoke that forum selection clause now, during the two years that the Securities Action has been litigated in Puerto Rico, the UBS Defendants have not moved to transfer and have not argued that the forum selection clause requires the case to be heard anywhere other than Puerto Rico.  *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 32-33 (1st Cir. 2004) ("'As a general matter, the doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding.'") (citation omitted).  At best, the UBS Defendants have acknowledged the propriety of Puerto Rico as the forum to litigate claims based on the UBS customer contracts.  At worst, they have waived any argument that the UBS forum selection clause applies to such claims.  Either way, the UBS Defendants cannot now credibly rely on the UBS forum selection clause to transfer the Breach of Duty Action.

In addition, because Defendants have not moved to transfer the Securities Action, the UBS Defendants will continue to litigate those claims in Puerto Rico regardless of whether the Breach of Duty Action is transferred.[7]  Thus, transfer of the Breach of Duty Action to New York

---

interest in subject matter of action, which occurred in North Carolina and chiefly affected North Carolina citizens).

[7] Defendants suggest in a footnote that, if the Court consolidates the Breach of Duty Action with the Securities Action, then the Court should transfer the newly-consolidated action to the

would not only defeat Puerto Rico's compelling public interest in resolving this dispute here – it would create a substantial risk of inconsistent rulings on Defendants' liability and would contradict any reasonable notion of judicial efficiency.  *See Arroyo-Perez*, 733 F. Supp. 2d at 321; *Relafen*, 218 F.R.D. at 347.[8]

Defendants try to make much of the fact that Plaintiffs initially filed similar claims in the U.S. District Court for the Southern District of New York.  But Defendants' arguments in this regard cannot be credited.  Plaintiffs voluntarily dismissed the New York filing within one month to file the Breach of Duty Action in this Court after conferring with counsel for the Plaintiffs in the Securities Action.  Plaintiffs' counsel in both actions agreed that there was considerable overlap between the cases, that it would be inefficient and wasteful to litigate the actions separately, and that working together in a consolidated action proceeding in Puerto Rico

---

Southern District of New York.  Defs.' Joint Opp. at 7 n.3.  As discussed *supra*, having conceded and acquiesced to the convenience of the Puerto Rico forum for more than two years, Defendants belated rumination that the Securities Action, if consolidated with the Breach of Duty Action, should be transferred to New York is entitled to no weight.  *Cf. Alt. Sys. Concepts*, 374 F.3d at 32-33.

[8] Defendants' reliance on *Caribbean Restaurants, LLC v. Burger King Corp.*, No. 14-1200, 2014 WL 2465133 (D.P.R. June 3, 2014) is misplaced.  In *Caribbean Restaurants* the court transferred an action to Florida because – unlike here – it concerned a private contract dispute between sophisticated business counterparts.  *Id*. at *7 ("This case is about a contractual dispute between Caribbean and Burger King that stems from the multiple agreements they have signed over the course of decades of business relationship.").  The dispute at issue in *Caribbean Restaurants* is completely inapposite because it did not implicate the broader public interest of Puerto Rico that is central to the Breach of Duty Action.  *See Stewart v. Am. Van Lines*, No. 12-cv-394, 2014 WL 243509, at *1, *5 (E.D. Tex. Jan. 21, 2014) (denying motion to transfer despite valid forum selection clause and noting that "*Atlantic Marine* dealt with two businesses which can deal at arm's length.  Such is not the case in the consumer setting.").  *Taxes of Puerto Rico, Inc. v. TaxWorks, Inc.*, No. 12-cv-2059, 2014 WL 1089259 (D.P.R. Mar. 20, 2014), is also inapposite because, unlike here, the two separate forum selection clauses at issue were incorporated by reference into a single contract, which expressly provided that the forum selection clause enforced by the court would govern.

would best serve the interests of the classes in both actions.  Thus, the fact that Plaintiffs filed an unanswered pleading in New York merits little weight.

<div align="center">

**4.    The UBS Forum Selection Clause Does Not Cover The Whole Action**

</div>

As Defendants themselves concede, the New York forum selection clause in the UBS customer contracts is not the only forum selection clause implicated in the Breach of Duty Action.  Specifically, Defendants admit that a different choice of forum clause governs claims against UBS Bank and provides for jurisdiction in Utah.  *See* Transfer Mem. at 9 n.8.

Courts faced with multiple forum selection clauses, none of which clearly governs the whole dispute, regularly decline to accord the clauses significant weight in the § 1404(a) analysis.  *See Jon Feingersh Photography, Inc. v. Pearson Educ., Inc.*, 978 F. Supp. 2d 463, 468 (E.D. Pa. 2013) (denying motion to transfer under Section 1404(a) and noting, "'[f]ederal courts construing conflicting forum selection clauses governing separate claims raised in a single action often decline to enforce [the] clauses out of concern for wasting judicial and party resources'") (citation omitted); *Am. Greetings, Corp. v. Cookie Jar Entm't*, No. 09-cv-1056, 2009 WL 3713686, at *7 (N.D. Ohio Nov. 3, 2009) ("the Court finds that no clear forum selection clause governs the whole of this dispute . . . and will give the clauses little weight in the [Section] 1404(a) balancing"); *Milliken & Co. v. Grupo Antolin Michigan, Inc.*, No. 10-cv-2109, 2010 WL 3938389, at *6 (D.S.C. Oct. 5, 2010) ("the competing forum selection clauses are not a controlling factor that weighs in favor of either forum").

In addition, the forum selection clause in the UBS customer contracts is of minimal significance because it does not govern all of the claims in the Breach of Duty Action.  Half of the counts in the Breach of Duty Action are against an entirely separate institution, Popular, not UBS.  Indeed, one of these claims concerns Popular's breaches of separate contracts with its own customers.  The Popular Defendants admit that they are not party to the UBS forum selection

<div align="center">15</div>

clause – yet they are silent as to any forum selection clause in their own customer contracts with Plaintiffs and class members in the Breach of Duty Action. Popular Transfer Mot. at 1.

Both Popular and UBS nonetheless claim that Popular can take advantage of UBS's forum selection clause because Popular's alleged misconduct is "closely related" to UBS's alleged misconduct. Popular Transfer Mot. at 2; Transfer Mem. at 11-12. Defendants are incorrect, and the cases they cite are inapposite. For example, this Court's opinion in *Banco Popular de Puerto Rico v. Airborne Group PLC*, 882 F. Supp. 1212, 1216 (D.P.R. 1995) is based upon facts completely different from those presented here. In that case, the "associated parties" purportedly entitled to benefit from a forum selection clause in a contract to which they were not parties were all *subcontractors or affiliates of the main contracting party*. *Id*. They were not, as is the case here, entirely separate parties with their own separate contracts. Moreover, the claims in *Airborne* arose from a *single* contract that "was responsible for setting in motion all the secondary relationships that were later established" and did not, as here, arise from two separate and distinct contractual relationships with plaintiffs. *Id*. The other cases that Defendants cite – *D.I.P.R. Mfg., Inc. v. Perry Ellis Int'l, Inc.*, 472 F. Supp. 2d 151 (D.P.R. 2007) and *St. Jude Medical, S.C., Inc. v. Biosense Webster, Inc.*, No. 12-621, 2012 WL 1576141 (D. Minn. May 4, 2012) – also miss the mark.[9] Accordingly, the circumstances in which courts have concluded

---

[9] Each of these cases, unlike the situation here, involved only *one* contract (not separate contracts with two separate financial institutions) that was responsible for setting into motion the secondary relationships at issue. *See D.I.P.R.*, 472 F. Supp. 2d at 154 (applying forum selection clause to non-contracting plaintiff based upon its admitted receipt of economic benefits under the contract); *St. Jude Medical*, 2012 WL 1576141, at *5 (applying forum selection clause in employee's contract with prior employer to new employer who joined as co-plaintiff in employee's litigation against prior employer). Moreover, in *Marano Enters. v. Z-Teca*, 254 F.3d 753 (8th Cir. 2001), the Eighth Circuit determined that it was fair to apply a forum selection clause to an individual who was not a party to the contact at issue because that non-party admitted that he was "a shareholder, officer, and director" of a contracting party. *Id*. at 757.

16

that it is appropriate to apply a contractual forum selection clause against a non-contracting party are wholly absent here.[10]

Courts in multi-party litigations involving multiple claims regularly find that forum selection clauses in contracts signed only by certain parties and that underlie only certain claims *do not control* the issue of forum.  *See, e.g.*, *Phi, Inc. v. Apical Indus., Inc.*, No. 13-cv-00015, 2014 WL 1820717, at *1, *10 (W.D. La. Mar. 7, 2014) (denying motion to transfer premised on forum selection clause in contract between some but not all parties as "not in the best interest of justice" because the non-signatories had no expectation that they would be litigating in Indiana); *Barletta Heavy Div., Inc. v. Erie Interstate Contractors, Inc.*, 677 F. Supp. 2d 373, 379 (D. Mass. 2009) (according significantly less weight to forum selection clause in contract between only certain parties in multi-party litigation because the clause did not govern claims involving non-signatories).

For all of the foregoing reasons, Defendants' motions to transfer should be denied.

**B.    Consolidation Is Mandated Under The Court's Consolidation Order And Is Proper Under Rule 42(a)**

Consolidation of the Breach of Duty Action with the Securities Action is mandated by the Consolidation Order and appropriate under Rule 42(a).   As discussed below, Defendants' arguments in opposition serve only to highlight the compelling factors favoring consolidation here.

**1.    The Consolidation Order Applies And Requires Consolidation**

The Breach of Duty Action falls squarely within the plain language of the Consolidation Order ("Consol. Order"), which directs that "[e]ach new case which arises out of the subject

---

[10] The UBS Defendants offer the unsupported observation that a "plaintiff . . . should not be able to avoid its binding contractual obligation, by joining with non-signatories . . . in bringing suit." Transfer Mem. at 12.  Tellingly, UBS cites no authority to support its position.

matter of the [Securities Action] that is filed in this Court . . . *shall be consolidated* with this action." Consol. Order § III.G (emphasis added). Section I.B of the Order establishes the scope of the foregoing provision, instructing that the Order "shall apply . . . to any and all cases that are subsequently filed in this Court or transferred to this Court which are brought against the defendants or any other past or present employee or agent of any defendant, and which relate to the sale of CEFs by [UBS PR]." Consol. Order § I.B.[11] Thus, "subject matter," as used in Section III.G, refers to the "sale of [CEFs] by [UBS PR]" and related conduct by the defendants (or any other past or present employee or agent of any defendant) named in the Securities Action.

As with the Securities Action, the sale and marketing of CEFs by UBS PR and other Defendants is indisputably the subject matter of the Breach of Duty Action. By way of example, Plaintiffs allege that "Defendants breached their fiduciary and contractual duties to Plaintiffs and other Class members by . . . adopting and carrying out policies designed to push Plaintiffs and other Class members to invest [in CEFs] without any regard for Plaintiffs' and other Class members' circumstances or risk appetites." Breach of Duty Compl. ¶ 6. Moreover, Plaintiffs assert claims against "defendants" in the Securities Action (i.e., UBS PR, UBS Delaware, UBS Trust and Ferrer), as well as "other past or present employee[s] or agent[s] of any defendant" (i.e., Ubiñas) (Consol. Order § I.B).[12] Thus, by its express terms, the Consolidation Order

---

[11] Additionally, Section I.A, of the Order states that the Order applies to "any future-filed or transferred tag-along action relating to the sale of [CEFs] by [UBS PR]" and provides that any such action shall be "consolidated for all purposes into one action pursuant to Rule 42(a) of the Federal Rules of Civil Procedure . . . ." Consol. Order § I.A.

[12] Defendant Ubiñas has served as both the Executive Vice President and Chief Executive Officer of UBS Financial Services, Inc. and as an officer of each of the thirteen CEFs at issue in the Securities Action. Breach of Duty Compl. ¶¶ 22-25, 27-29.

applies to the Breach of Duty Action and requires consolidation.  *See* Consol. Order §§ I.B, III.G.

## 2.    Rule 42(a) Confirms That Consolidation Is Appropriate

Consolidation of the two cases is equally supported by Rule 42(a), which authorizes courts to consolidate actions that "involve a common question of law or fact."  FED. R. CIV. P. 42(a).

As set forth in Plaintiffs' Consolidation Motion, the Securities Action and the Breach of Duty Action share numerous common issues of law and fact as well as numerous defendants.  Consolidation Motion at 1-10.  The major points of overlap include, *inter alia*:

- *Overlapping Plaintiff Classes:*  A substantial portion of the putative class members in the Securities Action are also members of the putative class in the Breach of Duty Action – namely, all purchasers of CEFs through UBS during the period of overlap between the class periods – i.e., May 5, 2008 to May 1, 2012.[13]

- *Overlapping Defendants:*  The two actions share common key defendants – namely, UBS PR, UBS Delaware, UBS Trust and Ferrer.  Indeed, even Defendants concede, as they must, that the actions share overlapping defendants.  *See* Defs.' Joint Opp. at 11.

- *Overlapping Time Periods:*  There is significant temporal overlap between the relevant periods in each action (i.e., all but four months of the class period for the Securities Action overlaps with the class period for the Breach of Duty Action).

- *Overlapping Securities At Issue:*  All thirteen CEFs at issue in the Securities Action are also at issue in the Breach of Duty Action. *Compare* Securities Action SAC ¶¶ 21-33 *with* Breach of Duty Action Compl. ¶ 39a-b; *see also* Defs.' Joint Opp. at 11 (recognizing that thirteen of the twenty-three CEFs at issue in the Breach of Duty Action are also at issue in the Securities Action)).[14]

---

[13] The class in the Breach of Duty Action is defined as: "All persons who were clients of UBS Puerto Rico and/or Popular Securities and who were invested in any of the Funds during the Class Period [from May 5, 2008 through the present] and were damaged as a result of the conduct alleged herein" (Breach of Duty Compl. ¶¶ 113-114), while the class in the Securities Action is defined as: "[A]ll persons who purchased or acquired the Funds from UBS PR during the period from January 1, 2008 to May 1, 2012" (Securities Action SAC ¶ 111).

[14] Defendants' reliance on the fact that the CEFs themselves are not named as defendants in the Breach of Duty Action (*see* Ex. E to Defs.' Joint Opp.) misleadingly elevates form over

- ***Overlapping Factual Issues:***  Both actions concern the improper marketing and sale of CEFs to Puerto Rico residents.  Indeed, UBS's course of conduct and business practices in selling CEFs in Puerto Rico will be central to both actions.

- ***Overlapping Claims:***  As explained above, both actions assert claims against UBS for breach of the *same* UBS customer contract relating to the sale of CEFs.

- ***Overlapping Legal Issues:***  The two actions share numerous legal issues, including, *inter alia*: what legal duties the UBS Defendants owed CEF purchasers; the parties' contractual relationships and obligations; whether the UBS Defendants' actions and representations constitute culpable conduct or otherwise give rise to liability; and inevitable legal issues related to discovery, including issues regarding the scope of any privilege or protection from disclosure asserted by the common Defendants.[15]

- ***Overlapping Proof of Liability:***  The two actions will share considerable common proof of liability, including what is likely to be millions of pages of documents and extensive testimony from witnesses at UBS and non-parties (all based in Puerto Rico).

Accordingly, considerations of efficiency, convenience and judicial economy all weigh heavily in favor of consolidating the actions into one proceeding.  Moreover, consolidating the actions under Plaintiffs' jointly proposed leadership structure will provide for the most efficient coordination of the litigation to ensure the full adjudication on the merits of all claims by victims of Defendants' conduct in connection with the Puerto Rico CEFs.  To force Plaintiffs to litigate the actions separately – as Defendants seek to do – would create a significant risk of inconsistent rulings on Defendants' liability and would result in duplicative, piecemeal litigation.  Avoidance of these risks more than justifies consolidation.

---

substance.  The CEFs are indisputably central to both actions, giving rise to numerous common questions of law and fact.  Moreover, in an attempt to manufacture differences between the two actions, Defendants mistakenly claim that there are thirteen CEF defendants left in the Securities Action.  *Compare* Ex. E to Defs.' Joint Opp. (indicating that 13 CEFs are defendants) *with* Securities Action SAC ¶¶ 21-27 (listing only seven CEFs as defendants) *and* ECF No. 82 on the Securities Action docket (granting voluntary dismissal of two of these seven CEFs).

[15] The facts underlying the misrepresentations in the two actions are inextricably intertwined and thus present common legal and factual questions:  the claims in the Breach of Duty Action are based on Defendants' misrepresentation of the nature and risk of the CEFs, matters which are equally central to the Securities Action.  *See* Defs.' Joint Opp. at 4-6

### 3.  Defendants' Arguments Against Consolidation Fail

As explained below, Defendants' arguments against consolidation lack merit.

*First*, as detailed in Section III.A *supra*, transfer of the Breach of Duty Action is not warranted, and the asserted contractual forum selection provision provides no basis to deny consolidation.

*Second*, Defendants disregard the controlling language of the Consolidation Order.  For example, Defendants repeatedly suggest that the Consolidation Order is somehow inapplicable because it was entered "nearly two years ago."  Defs.' Joint Opp. at 3; *see also id*. at 13 (same). This irrelevant contention would eviscerate the express, broad language of the Consolidation Order, which requires consolidation of *all* future-filed cases arising from the subject matter of the Securities Action.  *See, e.g.*, Consol. Order § III.G (discussing "each new action"); *id.* § I.B (addressing "any and all cases that are subsequently filed").[16]  Defendants' interpretation of the Consolidation Order is unsupported, and Defendants offer no legitimate basis to rewrite the Order at this stage.

*Third*, Defendants' attempts to manufacture distinctions between the two actions fail. Defs.' Joint Opp. at 10-13.  As a threshold matter, the two actions plainly share common defendants and common issues of fact and law and will require common proof of liability. Consolidation Motion at 1-10.  Moreover, it is well-established that consolidation under Rule 42(a) does not require complete identity among parties and claims.  *See* Consolidation Motion at 8-9 (citing *Rivera-Feliciano v. Acevedo-Vila*, Nos. 06-1358, 05-1910, 2007 WL 582006, at *5 (D.P.R. Feb. 20, 2007); *Collazo v. Calderón*, 212 F.R.D. 437, 440 (D.P.R. 2002)); *see also*

---

[16] *See also* Consol. Order § I.B (requiring consolidation of future actions "brought against the defendants or any other past or present employee . . . of any defendant" that "relate to the sale of CEFs by" UBS PR).

*Cruickshank v. Clean Seas Co.*, 402 F. Supp. 2d 328, 342 n.16 (D. Mass. 2005) ("the legal and factual issues need not be identical to support consolidation"); *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 102 (D. Mass. 2001) (same).[17]

**Fourth**, "[c]ourts have stressed that the purpose of joining actions is to promote convenience and judicial economy." *Pino-Betancourt v. Hosp. Pavia Santurce*, 928 F. Supp. 2d 393, 394-95 (D.P.R. 2013). Thus, "[c]onsolidation is appropriate if it will 'promote the aims of all the parties [and] economize time and effort without circumscribing the opportunity for full litigation of all relevant claims' but it is inappropriate if it causes prejudice to a party." *Id.* (citations omitted). As noted above, common evidence and witnesses will be needed to prove the claims in both cases – a fact that Defendants ignore. For example, the Securities Action will require, *inter alia*, documentary evidence and witness testimony regarding the creation, marketing and sale of CEFs during the period from 2008 to at least 2012. The Breach of Duty Action will require UBS to produce substantially similar evidence and witnesses. Consolidation would thus dramatically reduce the costs and burdens of discovery. *See, e.g.*, *Vazquez Rivera*, 241 F.R.D. at 95 ("The purpose of consolidation is to avoid . . . *excess cost incurred by all parties and the government* . . . .") (emphasis added).

**Fifth**, Defendants assert that they will suffer prejudice if the UBS forum selection clause is not enforced to transfer the entire action (including the non-contracting parties) to New York.

---

[17] Defendants' efforts to distinguish Plaintiffs' authorities (*see* Defs.' Joint Opp. at 12-13) actually support the propriety of consolidation here, where the cases involve, *inter alia*: (i) the "same defendants"; (ii) "a shared witness and common, if not identical questions of fact and law"; (iii) "the same questions of law and fact"; (iv) "[a] question common to all actions"; and (v) "the same time periods." *Id.* (citing *Gonzalez-Quiles v. Cooperativa de Ahorro Y Credito de Isabela*, 250 F.R.D. 91 (D.P.R. 2007); *Vazquez Rivera v. Congar Int'l Corp.*, 241 F.R.D. 94 (D.P.R. 2007); *Philadelphia Indem. Ins. Co. v. Douglas E. Barnhart, Inc.*, No. 06-cv-0717, 2007 WL 2873683 (S.D. Cal. Sept. 27, 2007); *Thayer v. Shearson, Loeb, Rhoades, Inc.*, 99 F.R.D. 522 (W.D.N.Y. 1983)). Moreover, *Collazo* confirms that actions need not be identical to be consolidated. *See* Consolidation Motion at 9.

*See, e.g.*, Defs.' Joint Opp. at 7, 10.   Defendants' conclusory and unsupported speculation is insufficient to establish any prejudice.  *See, e.g.*, *Bank of Montreal v. Eagle Assocs.*, 117 F.R.D. 530, 534 (S.D.N.Y. 1987) (finding that party challenging consolidation "failed to persuade this Court that *substantial prejudice* and confusion would result . . . by virtue of consolidation" and stating "[i]t appears that plaintiff's references to possible prejudice are merely speculative and not grounded in fact") (emphasis added); *see also In re Lucent Techs. Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 480 (D.N.J. 2001) ("In the absence of an articulated basis to assert confusion or prejudice, consolidation is generally appropriate.").[18]   Moreover, Defendants' assertions of prejudice are empty because they have been litigating the substantially similar Securities Action – including claims based on the same UBS customer contracts at issue in the Breach of Duty Action – for nearly two years in Puerto Rico, and will continue to do so irrespective of whether the two cases are consolidated.

For the reasons discussed above, the Court should order the two actions consolidated and permit Plaintiffs to file a master consolidated complaint.

## IV.   CONCLUSION

For the reasons stated herein, Defendants' motions to transfer should be denied, and Plaintiffs' Motion for Consolidation should be granted in full.

---

[18] Defendants' citation to *Arroyo v. Chardon*, 90 F.R.D. 603, 605-06 (D.P.R. 1981) is unavailing. The motion to consolidate was denied in *Arroyo* because the acts of the defendants in the actions at issue were unique and, unlike here, lacked common proof of liability such that a jury would likely be confused and prejudice would result to the defendants.  *Id.* at 605-06.  Here, however, no such prejudice will exist if these two cases are consolidated because the case involves considerable common proof of UBS and Popular's misconduct, as they co-managed the Jointly Managed Funds and the allegations against these Defendants are made on a class-wide basis.

RESPECTFULLY SUBMITTED,

In San Juan, Puerto Rico, this 8th day of August, 2014.

s/ Luis E. Miñana

Luis E. Miñana
USDC Bar No. 225608
ESPADA MINANA &
PEDROSA LAW OFFICES PSC
122 Calle Manuel Dómenech
Altos Urb. Baldrich
San Juan, PR 00918
Tel: (787)758-1999
Fax: (787)773-0500
emplawpsc@gmail.com
minanalaw@yahoo.com

-and-

Héctor Eduardo Pedrosa-Luna, Esq.
USDC Bar No. 223202
THE LAW OFFICES OF
HECTOR E. PEDROSA-LUNA
P.O. Box 9023963
San Juan, PR 00902-3963
Tel: (787) 920-7983
Fax: (787) 764-7511
hectorpedrosa@gmail.com

*Co-Liaison Counsel*

Eric Quetglas-Jordan
QUETGLAS LAW OFFICES
USDC-PR No. 202514
P.O. BOX 16606
San Juan PR 00908-6606
Tel: (787) 722-0635/(787) 722-7745
Fax: (787) 725-3970
Quetglaslaw@gmail.com;
Eric@Quetglaslaw.com

*Co-Liaison Counsel*

s/ Andres W. Lopez

Andres W. Lopez
USDC Bar No. 215311
THE LAW OFFICES OF ANDRES W.
    LOPEZ P.S.C.
P.O. Box 13909
San Juan, Puerto Rico 00908
Tel:  (787) 294-9508
Fax: (787) 294-9519
andres@awllaw.com

*Liaison Counsel for Plaintiffs Nora
Fernandez, Augusto Schreiner, Eddie Toro
Velez, Victor R. Vela Diez De Andino, Juan
Viera, Georgina Velez Montes, and Esther
Santana*

Gerald Silk (*pro hac vice* pending)
Hannah Ross (*pro hac vice* pending)
Jeremy Robinson (*pro hac vice* pending)
Michael Blatchley
BERNSTEIN LITOWITZ BERGER &
    GROSSMANN LLP
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel: (212) 554-1400
Fax: (212) 554-1444

-and-

Jay W. Eisenhofer
Daniel L. Berger (*pro hac vice* pending)
Mary S. Thomas (*pro hac vice* pending)
Deborah A. Elman (*pro hac vice* pending)
Robert D. Gerson (*pro hac vice* pending)
GRANT & EISENHOFER P.A.
485 Lexington Ave 29th Floor
New York, New York 10017
Tel: (646) 722-8500
Fax: (646) 722-8501

24

David R. Scott (admitted *pro hac vice*)
Amanda Lawrence (admitted *pro hac vice*)
SCOTT + SCOTT LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537
Fax: (860) 537-4432
drscott@scott-scott.com
alawrence@scott-scott.com

-and-

Joseph P. Guglielmo (admitted *pro hac vice*)
SCOTT + SCOTT LLP
The Chrylser Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Tel: (212) 223-6444
Fax: (212) 223-6334
jguglielmo@scott-scott.com

*Lead Counsel for the Securities Plaintiffs*

Richard P. Rouco
QUINN, CONNOR, WEAVER, DAVIES & ROUCO, LPP
2700 Highway 280
Mountain  Brook Center Ste. 380
Birmingham, Alabama 35223
Tel:  (205) 870-9989
Fax:  (205) 803-4143
rrouco@qcwdr.com

*Counsel for the Securities Plaintiffs*

-and-

Michael K. Yarnoff (*pro hac vice* pending)
Johnston de F. Whitman, Jr. (*pro hac vice* pending)
Joshua E. D'Ancona (*pro hac vice* pending)
Margaret E. Onasch (*pro hac vice* pending)
KESSLER TOPAZ
   MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Tel:  (610) 667-7706
Fax:  (610) 667-7056

*Counsel for Plaintiffs Nora Fernandez, Augusto Schreiner, Eddie Toro Velez, Victor R. Vela Diez De Andino, Juan Viera, Georgina Velez Montes, and Esther Santana*