# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARMELO ROMAN, RICARDO ROMAN RIVERA and SDM HOLDINGS, INC. Individually and on Behalf of All Others Similarly Situated, | Civil Case No.: 3:12-cv-01663-CCC |
| Plaintiffs, | |
| vs. | |
| UBS FINANCIAL SERVICES, INC. OF PUERTO RICO; UBS TRUST COMPANY OF PUERTO RICO; PUERTO RICO INVESTORS TAX-FREE FUND IV, INC.; PUERTO RICO FIXED INCOME FUND III, INC.; PUERTO RICO FIXED INCOME FUND V, INC.; PUERTO RICO INVESTORS BOND FUND I, INC.; PUERTO RICO AAA PORTFOLIO BOND FUND, INC.; PUERTO RICO AAA PORTFOLIO BOND FUND II, INC.; MIGUEL A. FERRER; and CARLOS J. ORTIZ, | |
| Defendants. | |

## DEFENDANT MIGUEL A. FERRER'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY A CLASS

Guillermo J. Bobonis
Enrique G. Figueroa-Llinás
BOBONIS, BOBONIS & RODRIGUEZ POVENTUD
129 De Diego Ave.
San Juan, P.R. 00911-1927
Telephone: (787) 725-7941

Melvin A. Brosterman (admitted *pro hac vice*)
Francis C. Healy (admitted *pro hac vice*)
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400

*Attorneys for Defendant Miguel A. Ferrer*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .................................................................................................................. 2

    A.    Allegations Against Ferrer ...................................................................................... 2

    B.    SEC Claims Against Ferrer Are Dismissed ............................................................ 4

ARGUMENT ....................................................................................................................... 5

    I.    Legal Standard For Class Certification ................................................................... 5

    II.    Plaintiffs Cannot Satisfy Class Certification Requirements Under Rule 23(b)(3) .................................................................................................................... 5

        A.    Individual Questions Concerning Ferrer's Alleged Statements Predominate Over Common Questions .......................................................... 6

        B.    Individual Questions Concerning Reliance Predominate Over Common Questions ................................................................................................... 9

        C.    Class Action Is Not Superior To Individual Actions ................................... 13

    III.    Plaintiffs Cannot Satisfy Rule 23(a)'s Requirements ......................................... 13

CONCLUSION .................................................................................................................. 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abelson v. Strong*,
 644 F. Supp. 524 (D. Mass. 1986) ........................................................................11

*Affiliated Ute Citizens of Utah v. U.S.*,
 406 U.S. 128 (1972) ...........................................................................10, 11, 12

*Amgen Inc. v. Connecticut. Retirement Plans and Trust Funds*,
 __ U.S. __, 133 S.Ct. 1184 (2013) ...................................................................9, 10

*Anixter v. Home-Stake Production Co.*,
 77 F.3d 1215 (10th Cir. 1996) ..........................................................................7

*In re Bank of America Home Affordable Modification Program Contract*
 *Litigation*,
 No. 10-2193-RWZ, 2013 WL 4759649 (D. Mass. Sept. 4, 2013) ...........................................13

*Collazo v. Calderone*,
 212 F.R.D. 437 (D.P.R. 2002) ..........................................................................14

*In re Credit Suisse-AOL Securities Litigation*,
 253 F.R.D. 17 (D. Mass. 2008) .....................................................................11, 12

*Dow Corning Corp. v. BB&T Corp.*,
 No. 09-5637(FSH)(PS), 2010 WL 4860534 (D.N.J. Nov. 23, 2010) ......................................11

*Starr ex Rel. Estate of Sampson v. Georgeson Shareholder, Inc.*,
 412 F.3d 103 (2d Cir. 2005) ......................................................................10, 12

*Goodman v. Genworth Financial Wealth Management, Inc.*,
 300 F.R.D. 90 (E.D.N.Y. 2014) ..................................................................9, 10, 11

*Hawaii Ironworkers Annuity Trust Fund v. Cole*,
 No. 3:10CV371, 2011 WL 3862206 (N.D. Ohio Sept. 1, 2011) ..........................................8

*In re Hydrogen Peroxide Antitrust Litigation*,
 552 F.3d 305 (3d Cir. 2008) ...........................................................................6

*In re Interbank Funding Corp. Securities Litigation*,
 629 F.3d 213 (D.C. Cir. 2010) ........................................................................10

*Janus Capital Group, Inc. v. First Derivative Traders*,
 131 S. Ct. 2296 (2011) .............................................................................7, 8

*Johnston v. HBO Film Management, Inc.*,
265 F.3d 178 (3d Cir. 2001).................................................................. *passim*

*Kenney v. State Street Corp.*,
754 F. Supp. 2d 288 (D. Mass. 2010) .......................................................9

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002)..........................................................6, 8, 12

*In re New Motor Vehicles Canadian Export Antitrust Litigation*,
522 F.3d 6 (1st Cir. 2008)..................................................................5, 13

*In re Nexium Antitrust Litig.*,
Nos. 14-1521, 14-1522, 2015 WL 265548 (1st Cir. Jan. 21, 2015) .........9

*In re Pharmaceutical Industry Average Wholesale Price Litgiation*,
230 F.R.D. 61 (D. Mass. 2005)..................................................................5

*Puerto Rico College of Dental Surgeons v. Triple S Management Inc.*,
290 F.R.D. 19 (D.P.R. 2013) ........................................................5, 13, 14

*Rodriguez-Feliciano v. Puerto Rico Electric Power Auth.*,
240 F.R.D. 36 (D.P.R. 2007) ...............................................................14, 15

*SEC v. Daifotis*,
874 F. Supp. 2d 870 (N.D. Cal. 2012) ......................................................8

*SEC v. Nacchio*,
438 F. Supp. 2d 1266 (D. Colo. 2006)......................................................7

*Securities Investor Protection Corp. v. BDO Seidman, LLP*,
222 F.3d 63 (2d Cir. 2000).....................................................................12

*Smilow v. Southwestern Bell Mobile Sys.*,
323 F.3d 32 (1st Cir. 2003).......................................................................8

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
552 U.S. 148 (2008)............................................................................6, 10

*Tardiff v. Knox County*,
365 F.3d 1 (1st Cir. 2004)..........................................................................9

*In Re Tyco International Ltd.*,
No. MD-02-1335-PB, 2006 WL 2349338 (D.N.H. Aug. 15, 2006).........11

*In re UBS AG Securities Litigation*,
No. 07 Civ. 11225 (RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)................8

*Van West v. Midland National Life Insurance Co.*,
    199 F.R.D. 448 (D.R.I. 2001) ......................................................................7, 13, 14

*Wal-Mart Stores, Inc. v. Dukes*,
    — U.S. —, 131 S.Ct. 2541 (2011) ...........................................................................13

*Westernbank Puerto Rico v. Kachkar*,
    No. 07-1606, 2009 WL 6337949 (D.P.R. Dec. 10, 2009) ......................................12

*WM High Yield Fund v. O'Hanlon*,
    No. 04-3423, 2013 WL 3231680 (E.D. Pa. Jun. 27, 2013).....................................12

## Statutes, Rules & Regulations

Fed. R. Civ. P. 23 ..........................................................................................................5

Fed. R. Civ. P. 23(a) ............................................................................................ *passim*

Fed. R. Civ. P. 23(b)(3)..............................................................................................8, 13

10 P.R. Laws Ann. § 890(a)(2) ....................................................................................12

## Other Authorities

J. William Hicks, *17 Civil Liabilities: Enforcement & Litigation under the 1933
    Act*, § 4:43 ..............................................................................................................9

## PRELIMINARY STATEMENT

Defendant Miguel A. Ferrer ("Ferrer"), by and through his undersigned attorneys, respectfully submits this memorandum of law in opposition to Plaintiffs' motion to certify a class and appoint class counsel, dated February 20, 2015 (the "Motion").[1]

Plaintiffs seek to certify a class of all persons who, from January 1, 2008 to May 1, 2012, purchased shares of closed-end funds (the "CEFs") marketed and sold by UBS Financial Services of Puerto Rico ("UBS PR"). (Pls. Memo at 1.) In support of their Motion, Plaintiffs argue that proof of their claims under the Securities Exchange Act of 1934 (the "Exchange Act"), the Puerto Rican Uniform Securities Act ("PRUSA") and common law "relies on common evidence of Defendants' alleged misconduct, and common issues – such as, for example whether Defendants misrepresented the nature of the market for and risks involved in the CEFs" – predominate over individual issues. (*Id.*)

However, the only misrepresentations or omissions concerning the CEFs that Plaintiffs allege Ferrer made are in non-public, internal communications from Ferrer to UBS PR financial advisors (the "FAs"), *not* Plaintiffs or any members of the putative class. Indeed, the Complaint contains no allegations that any named Plaintiff or putative class member even spoke to Ferrer. Therefore, individualized questions of fact concerning what, if anything, Ferrer or an FA allegedly represented to each class member, the material variations in the nature of those representations, whether any FA attributed such representations to Ferrer, and what each class member relied upon not only predominate over, but completely overwhelm any questions common to the class. Accordingly, Plaintiffs cannot satisfy Rule 23(b)(3).

---

[1] Otherwise undefined capitalized terms are defined as set forth in Plaintiffs' Class Action Complaint, dated August 13, 2012 (the "Complaint" or "CAC") (ECF No. 1) and Plaintiffs' Memorandum of Law in Support of Motion to Certify a Class and Appoint Class Counsel, dated February 20, 2015 (the "Pls. Memo") (ECF No. 145-1).

Similarly, because the evidence required to prove Plaintiffs' claims against Ferrer will necessarily depend on individual conversations, if any, with Ferrer or FAs, and will therefore differ substantially from the evidence required to prove other class members' claims, Plaintiffs cannot satisfy Rule 23(a)'s threshold requirements of commonality, typicality or adequacy.

For these reasons, as well as the arguments set forth in the UBS Defendants' Opposition to the Motion, dated March 9, 2015 (the "UBS Opp."), in which Ferrer joins and incorporates by reference herein, Plaintiffs' motion for class certification should be denied.

## BACKGROUND

A.   **Allegations Against Ferrer**

Plaintiffs are alleged purchasers of securities issued by certain CEFs and purport to bring this action on behalf of a class of similarly situated investors who purchased CEF shares from January 1, 2008 to May 1, 2012.  (CAC ¶¶ 12-13, 64.)

This action arises out of an alleged "scheme" perpetrated by Defendants UBS PR, Ferrer and Carlos J. Ortiz ("Ortiz") "relating to the marketing and sale of hundreds of millions of dollars of non-exchange traded closed-end funds," including those CEFs purchased by Plaintiffs. (*Id.* ¶ 1.)  Improperly lumping all Defendants together, Plaintiffs allege that "Defendants pumped up the 'market' for CEFs, created the illusion of liquidity, and misrepresented and manipulated the prices of CEFs, while all the while knowing that there was a serious supply and demand imbalance."  (Pls. Memo at 1.)

However, while Plaintiffs assert claims against Ferrer individually for allegedly "tout[ing] the CEFs as safe, liquid investments with high, stable prices, and which yielded consistently higher returns than similar funds" and "promot[ing] the liquidity of the CEFs in a supposedly robust secondary market in which investors could sell their shares for income," neither the Complaint nor the Motion contain any allegations concerning statements about the

-2-

CEFs made *by Ferrer* to any Plaintiff or putative class member.  (CAC ¶ 7; Pls. Memo at 2-3.)

In fact, with the exception of one general interview published in a local Puerto Rico newspaper, *which did not mention the CEFs* (*see* Exhibit A), not one of the alleged misrepresentations or omissions identified by Plaintiffs in the Motion was made by Ferrer.[2]  (*See* Pls. Memo at 2-3.)

The only statements that Plaintiffs allege Ferrer made concerning the CEFs were to UBS PR's "network of financial advisors" and "sales force," *not* Plaintiffs or the public.  For example, Plaintiffs allege that "numerous emails show [Ferrer] misstating the strength, stability, and liquidity of the CEF market in 2008, without ever disclosing **to the UBS PR sales force** that UBS PR was keeping the CEF prices artificially high by increasing its CEF inventory" (CAC ¶ 39); that "despite knowing about the CEF market's illiquidity and in an effort to manipulate the market, Ferrer sent an email **to UBS PR's financial advisors** on September 10, 2008 in an effort to dispel their concerns about the two new CEF offerings" (CAC ¶ 40); and that "Ferrer sent an email **to financial advisors** directing them to tell their customers that CEFs would continue to trade at significant premiums to NAV and provide the 'reinvestment kickers' of the dividend reinvestment program." (CAC ¶ 51) (emphasis added) (*see also* CAC ¶¶ 41, 48, 50).  The Complaint does not allege that any FA repeated any of these remarks to any Plaintiff, nor have Plaintiffs produced a single document they received containing any statement about the CEFs made by or attributed to Ferrer.

---

[2]     Plaintiffs allege that Ferrer made statements "in an interview published in *El Vocero* in April, 2009 claiming that CEF share prices had been stable and performed well."  (Pls. Memo at 3; CAC ¶ 51.)  However, as SEC Chief Administrative Law Judge Brenda P. Murray found, an objective reading of the *El Vocero* article, annexed hereto as Exhibit A, reveals that Ferrer's "statements were about *all mutual funds* in Puerto Rico" and the statements that Plaintiffs find objectionable "were *not about UBS PR Funds*."  Initial Decision, dated October 29, 2013 ("Initial Decision"), at 82 (annexed hereto as Exhibit B) (emphasis added).  Moreover, even if Ferrer's statements in *El Vocero* were about the CEFs, which they were not, class certification as to that portion of Plaintiffs' claims against Ferrer is still inappropriate for the reasons discussed herein.  *See infra* II.B.

B.    **SEC Claims Against Ferrer Are Dismissed**

On May 1, 2012, the SEC issued an Order Instituting Administrative and Cease-and-Desist Proceedings against Ferrer and Ortiz asserting almost identical allegations to those here concerning purported misrepresentations surrounding the CEF market.  (*Id.* ¶ 58.)

After 13 hearing days resulting in a record of 3,178 pages of testimony from 29 witnesses, 536 exhibits and 838 pages of post-hearing briefing, Chief Administrative Law Judge Brenda P. Murray dismissed the proceeding, finding that "UBS PR, Ferrer and Ortiz did not engage in a fraudulent course of conduct or a scheme and did not mislead customers and FAs when they represented the Funds as profitable, safe, and stable investments, and that supply and demand were responsible for Fund prices."  (Exhibit B, Initial Decision at 91.)  Judge Murray also found "***not one bit of evidence*** that UBS PR, Ferrer and Ortiz engaged in a course of conduct to mislead or a scheme to mislead investors by hiding or disguising the fact that UBS PR was in a period when it was not buying Fund shares and was reducing Fund prices."  (*Id.* at 93.) (emphasis added)

With regard to Ferrer's statements and representations, Judge Murray determined that, among other things: (a) Ferrer's statements to *El Vocero* and FAs were not fraudulent because "the information was factually accurate" and "in these circumstances, there were no material omissions" (*id.* at 82); (b) Ferrer's emails to FAs "consisted of just a few lines and were obviously not meant to be a full blown analysis of the benefits and risks of owning Fund shares" (*id.*); (c) no FA testified that he forwarded Ferrer's emails or repeated their contents to customers (*id.*); and (d) "Ferrer had nothing to do with pricing the Funds so he did not make any material omissions by failing to discuss pricing in his communications to FAs who were knowledgeable, or should have been, on the subject" (*id.* at 83).

On March 2, 2015, Defendants moved for an extension of their time to oppose this Motion pending the completion of depositions of Plaintiffs and former plaintiffs.  Accordingly, Ferrer reserves his right to supplement or amend his factual showing in the event that further relevant evidence is obtained through such depositions or other discovery.

## ARGUMENT

### I.    Legal Standard For Class Certification

To obtain class certification, "the district court [must] evaluate whether the four threshold requirements of Rule 23(a) were met, as well as whether Rule 23(b)'s two additional prerequisites were satisfied."  *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 18 (1st Cir. 2008) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997)); *see also* Fed. R. Civ. P. 23.  "Rule 23 does not set forth a mere pleading standard," and a party seeking class certification has the duty of "affirmatively demonstrate[ing] his compliance with the Rule."  *Puerto Rico College of Dental Surgeons v. Triple S Mgmt. Inc.*, 290 F.R.D. 19, 25 (D.P.R. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, — U.S. —, 131 S.Ct. 2541, 2551 (2011)).  A court may certify a class only if it is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  *Id.* (citations omitted).  These prerequisites have not been satisfied here.

### II.    Plaintiffs Cannot Satisfy Class Certification Requirements Under Rule 23(b)(3)

"In cases involving fraudulent statements or misrepresentations, courts generally favor certification where the misrepresentations were materially uniform, but deny certification where they varied from transaction to transaction."  *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 82 (D. Mass. 2005) (citing *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253-56 (2d Cir. 2002)).  Here, individual questions concerning what Ferrer or any FA may have

told each class member, whether any FAs attributed such representations to Ferrer, and what each class member relied on will predominate over common questions. Thus, "class certification is improper because plaintiffs will need to submit proof of the statements made to each plaintiff, the nature of the varying material misrepresentations, and the reliance of each plaintiff upon those misrepresentations in order to sustain their claims." *Moore*, 306 F.3d at 1253.

### A.    Individual Questions Concerning Ferrer's Alleged Statements Predominate Over Common Questions

To prevail on their § 10(b) claim against Ferrer, Plaintiffs must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). However, "[i]f proof of the essential elements of a cause of action requires individual treatment, then class certification is unsuitable." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 187 (3d Cir. 2001). While Plaintiffs broadly assert that securities actions "are particularly amenable to class certification" (Pls. Memo at 4), it "does not follow that a court should relax its certification analysis, or presume a requirement for certification is met, merely because a plaintiff's claims fall within" a particular category of claims, such as consumer or securities fraud claims. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 322 (3d Cir. 2008).

With the exception of a general interview published in *El Vocero*, which *did not mention the CEFs* (*see* Exhibit A), Plaintiffs' claims against Ferrer are based on statements made in a series of internal emails to FAs, not to Plaintiffs, the public or any class member. (*See, e.g.*, CAC ¶¶ 39-41, 48, 50, 51.) Accordingly, to establish that Ferrer "made" a material misrepresentation or omission within the meaning of Rule 10b-5, each class member will need to

prove, *inter alia*, that: (1) after receiving Ferrer's internal emails, their FA subsequently repeated Ferrer's statements to them; and (2) Ferrer had ultimate authority and control over the FA, such that he can be deemed the "maker" of those statements.  *See, e.g.*, *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2301 n.5, 2302, 2305 n.11 (2011).[3]  Because Plaintiffs have produced no evidence of any written representations *to Plaintiffs* concerning the CEFs made by or attributed to *Ferrer*, and because individualized investment recommendations to customers were based on interactive, oral discussions with their FAs (*see* Declaration of Doel García in Support of the UBS Defendants' Opposition to Plaintiffs' Motion To Certify a Class, dated March 9, 2009 (the "García Decl.") at ¶¶4, 6-7), the claims against Ferrer will necessarily require inquiries into thousands of oral communications between each class member and their respective FAs, which will overwhelm any common questions of Ferrer's alleged liability.

Critically, UBS PR did not require FAs to make uniform presentations to customers about the CEFs (*see* García Decl. ¶ 6), which is fatal to Plaintiffs' Motion—fraud claims based on individualized oral representations with material variations are inappropriate for class treatment. *See Van West v. Midland Nat'l Life Ins. Co.*, 199 F.R.D. 448, 454 (D.R.I. 2001) ("to the extent that the alleged misrepresentations include different statements made to individual class members by a variety of agents or brokers, [class certification] would require proof of what each class member was told and the nature of the relationship between [defendant] and the particular agent or broker making the statements").  Indeed, the Advisory Committee's Notes for Rule 23(b)(3) speak directly to this issue: "[A]lthough having some common core, *a fraud case may be unsuited for treatment as a class action if there was material variation in the representations*

---

[3]     Internal statements not publicly disseminated are not actionable under Rule 10b-5.  *See SEC v. Nacchio*, 438 F. Supp. 2d 1266, 1281-82 (D. Colo. 2006) (internal statements are actionable only where they have "the intended result of deceiving investors"); *see also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1226 (10th Cir. 1996).

*made or in the kinds or degrees of reliance by the persons to whom they were addressed.*"  Fed. R. Civ. P. 23(b)(3) advisory committee's note (1966 amendment) (emphasis added).

Circuit courts of appeal have uniformly held that "oral misrepresentations are presumptively individualized," and that "class certification of fraud claims based upon oral misrepresentations [is] improper" unless Plaintiffs show that there were no "material variations" among the misrepresentations or omissions. *Moore*, 306 F.3d at 1253-56 (explaining that the Third, Fourth, Fifth, Sixth and Seventh Circuits "have held that oral misrepresentations are presumptively individualized") (citations omitted).[4]  Because Plaintiffs cannot make any such showing, class certification of the claims against Ferrer is improper.  *See id.* at 1255.

Further, in *Janus*, the Supreme Court held that "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus*, 131 S. Ct. at 2301 n.5, 2302, 2305 n.11.  Thus, each class member must also prove that Ferrer had "ultimate authority" over the statements made to them by, for example, proving that the FAs attributed such statements to Ferrer.  *See id.* at 2302 (noting that "attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by – and only by – the party to whom it is attributed"); *see also SEC v. Daifotis*, 874 F. Supp. 2d 870, 881 (N.D. Cal. 2012).[5]  Therefore, each class member will need

---

[4]      *See also Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 42 (1st Cir. 2003) (noting that plaintiffs "risk losing class status" if they "rely on oral misrepresentations" in support of their claims); *Johnston*, 265 F.3d at 190  ("[I]t has become well-settled that, as a general rule, an action based substantially on oral rather than written communications is inappropriate for treatment as a class action.").

[5]      *Janus* did not limit its decision to situations only involving distinct legal entities, s*ee Janus*, 131 S. Ct. at 2301 n.5, 2302, 2305 n.11, and several courts have also held that the holding in *Janus* applies to corporate insiders. *See Haw. Ironworkers Annuity Trust Fund v. Cole*, No. 3:10CV371, 2011 WL 3862206, at *3-4 (N.D. Ohio Sept. 1, 2011); *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225 (RJS), 2012 WL 4471265, at *10-11 (S.D.N.Y. Sept. 28, 2012); *see also Janus*, 131 S. Ct. at 2310 (Breyer, J., dissenting).

to offer individualized proof of the allegedly fraudulent statements Ferrer "made" through their

FAs, rendering the claims against Ferrer unsuitable for class treatment.[6]

Moreover, to the extent Plaintiffs' claims against Ferrer, including for control person

liability under § 20(a) of the Exchange Act, are based on alleged misrepresentations and/or

omissions disseminated by UBS PR (*see* Pls. Memo at 2-3), statements *not* made by or attributed

to Ferrer, class certification should be denied for the same reasons and arguments set forth herein

and in the UBS Opp., including, but not limited to, because individual determinations of whether

each class member received and/or relied on such alleged misrepresentations will predominate

over common questions.  *See infra* II.B.

### B.      Individual Questions Concerning Reliance Predominate Over Common Questions

"Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of

the §10(b) private cause of action" because "proof of reliance ensures that there is a proper

connection between a defendant's misrepresentation and a plaintiff's injury."  *Amgen Inc. v.*

*Conn. Ret. Plans and Trust Funds*, __ U.S. __, 133 S.Ct. 1184, 1192 (2013) (citation omitted).

However, because requiring direct proof of individual reliance ordinarily precludes certification

of a securities fraud class action,[7] courts have recognized two rebuttable presumptions of

---

[6]      The cases and treatise on which Plaintiffs rely regarding predominance are inapposite.  (Pls. Memo at 10-11.)  In *In re Nexium Antitrust Litig.*, Nos. 14-1521, 14-1522, 2015 WL 265548, at \*8 (1st Cir. Jan. 21, 2015), and *Tardiff v. Knox County*, 365 F.3d 1, 5-6 (1st Cir. 2004), the First Circuit held that certain "*de minimis*" or "limited" individualized inquiries did not necessarily defeat class certification.  Here, in contrast, individual liability determinations are needed for *every* class member.  Likewise, the treatise concerns claims under § 11 of the Securities Act of 1933, not § 10(b) of the Exchange Act.  Further, unlike here, the treatise states that "a court can usually find that common factual and legal issues will predominate" because "[a] Section 11 action is founded on a single document."  J. William Hicks, *17 Civil Liabilities: Enforcement & Litigation under the 1933 Act*, § 4:43.

[7]      *See Johnston*, 265 F.3d at 187 ("If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable") (citation omitted); *Goodman v. Genworth Financial Wealth Mgmt., Inc.*, 300 F.R.D. 90, 103 (E.D.N.Y. 2014) ("unless plaintiffs successfully invoke a class-wide presumption of reliance – the predominance requirement 'would often be an insuperable barrier to class certification, since each of the individual investors would have to prove reliance on the alleged misrepresentation'") (citation omitted); *Kenney v. State Street Corp.*, 754 F. Supp. 2d 288, 292 (D. Mass. 2010) ( "individual issues of reliance often present a bar to class certification").

reliance: the "fraud-on-the-market" presumption and the "*Affiliated Ute*" presumption.

*Stoneridge*, 522 U.S. at 159 (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988) and

*Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 153 (1972)).  Neither presumption applies.

Plaintiffs initially invoked the "fraud-on-the-market" presumption, specifically alleging

that "the presumption of reliance available under the 'fraud on the market theory' applies" to the

Individual Defendants' false and materially misleading statements.  (CAC ¶¶ 80, 92.)  However,

that presumption does not apply because none of Ferrer's alleged misrepresentations concerning

the CEFs were public, and Plaintiffs concede that they "have not and do not suggest [the CEFs

trade in] an efficient market for reliance purposes." (*See* Pls. Memo. in Opp. to Defs.' Motion to

Dismiss at 15 fn. 8) (ECF No. 73).[8]  Plaintiffs have therefore switched course, arguing that the

*Affiliated Ute* presumption now applies to their claims because "this case centers on omissions."

(Pls. Memo at 12.)  But the *Affiliated Ute* presumption does not apply either, because Plaintiffs'

claims against Ferrer are based on alleged affirmative misrepresentations to FAs.

The *Affiliated Ute* presumption of reliance applies only to claims "involving primarily a

failure to disclose."  406 U.S. at 153.[9]  Specifically, *Affiliated Ute* applies "'in instances of total

non-disclosure'" where "'it is of course impossible to demonstrate reliance.'"  *Goodman*, 300

F.R.D. at 104 (quoting *Titan Grp., Inc. v. Faggen*, 513 F.2d 234, 239 (2d Cir. 1975); *see also*

*Johnston*, 265 F.3d at 193 ("presumption of reliance exists in the first place to aid plaintiffs when

reliance on a negative would be practically impossible to prove") (citations omitted).  The

presumption does not apply where, like here, "'positive [affirmative] statements are central to the

---

[8]      The "fraud-on-the-market" theory recognizes a rebuttable presumption of reliance only "on public, material misrepresentations when shares are traded in an efficient market."  *Amgen Inc.*, 133 S.Ct. at 1193

[9]      *See also Starr ex Rel. Estate of Sampson v. Georgeson S'Holder, Inc.*, 412 F.3d 103, 109 n.5 (2d Cir. 2005); *Johnston*, 265 F.3d at 192; *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 219-20 (D.C. Cir. 2010).

alleged fraud, thereby eliminating the evidentiary problems inherent in proving reliance on an omission….'" *Goodman*, 300 F.R.D. at 104 (citation omitted).[10]

Here, Plaintiffs' claims against Ferrer are based on allegations that Ferrer made affirmative misrepresentations to FAs—not to Plaintiffs—concerning the pricing, stability and liquidity of the CEFs, including allegations that he "touted the CEFs as safe, liquid investments with high, stable prices, and which yielded consistently higher returns than similar funds" and that "market forces, such as supply and demand, were actually determining CEF prices" (CAC ¶¶ 7, 30) (*see also*, *e.g.*, CAC ¶¶ 32, 35, 43, 48, 50-51; Pls. Memo at 2-3)  Thus, any concern underlying the need for the *Affiliated Ute* presumption, namely, that it is impossible to prove reliance on an omission, is not present here.  *See Abelson v. Strong*, 644 F. Supp. 524, 528 (D. Mass. 1986) (*Affiliated Ute* presumption does not apply where "information was needed to correct the impression created by the series of misstatements" because "reliance may [] be proven" "where such positive statements exist").

Faced with the fallibility of their position, Plaintiffs simply recast certain alleged affirmative misrepresentations as alleged omissions in their Motion.  For example, Plaintiffs contend "Defendants *falsely represented* that CEFs were priced according to supply and demand and were stable and safe investments [a misrepresentation], and Defendants likewise uniformly *failed to disclose* that the price of CEFs was determined arbitrarily [an omission]." (Pls. Memo at 7) (emphasis added) (CAC ¶ 30).  However, a "claim should not be transformed into an omission simply because the defendants failed to disclose that the allegedly misleading fact was untrue."

---

[10]    *See also In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 26 (D. Mass. 2008).  Plaintiffs' reliance on *In Re Tyco Int'l Ltd.*, No. MD-02-1335-PB, 2006 WL 2349338, at *1 (D.N.H. Aug. 15, 2006) and *Dow Corning Corp. v. BB&T Corp.*, No. 09-5637(FSH)(PS), 2010 WL 4860534, at *1 (D.N.J. Nov. 23, 2010) is misplaced.  As described herein, Plaintiffs' claims against Ferrer center on his alleged misrepresentations, not his "failure to disclose material information." *Tyco*, 2006 WL 2349338, at *6.  Further, *Dow Corning* is entirely unrelated to class certification and stands for the general, albeit irrelevant, proposition that pump and dump schemes, when properly alleged, can be actionable.  (Pls. Memo at 13); *see Dow Corning*, 2010 WL 4860354 at *11-12.

*Johnston*, 265 F.3d at 193; *see also Starr*, 412 F.3d at 109 n.5 (*Affiliated Ute* presumption does not apply where plaintiff's "principal objection to the omissions … is that the omissions exacerbated the misleading nature of the affirmative statements").

Because the *Affiliated Ute* presumption does not apply to the claims against Ferrer, individual questions of reliance will overwhelmingly predominate over common questions. *See also* UBS Opp. at II.B. Even if *Affiliated Ute* did apply, which it does not, Plaintiffs also fail to properly invoke it by not even alleging that Ferrer (i) had a duty to disclose (ii) a material fact but (iii) failed to do so. *See In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. at 26 (*Affiliated Ute* applies "to 'omissions cases' only where there is a special affirmative 'obligation to disclose' material information rather than merely a duty to speak truthfully"); *see also WM High Yield Fund v. O'Hanlon*, No. 04-3423, 2013 WL 3231680, at *6 (E.D. Pa. Jun. 27, 2013) (no duty to disclose where "no affirmative duty to disclose was ever pled" and "[n]o applicable statute or case law [was] cited to support a finding that [the defendant], individually, owed a duty to disclose information to investors").

Further, Plaintiffs' claims against Ferrer under PRUSA and for fraudulent inducement, negligent and fraudulent misrepresentation, rescission, and breach of implied duty of good faith are unsuitable for class treatment because they likewise will require individualized proof from each class member as to whether Ferrer: (i) made a misrepresentation or omission that lead to a misunderstanding, and/or (ii) whether they relied on the alleged misrepresentation or omission and/or (iii) whether they were in privity of contract with Ferrer. *See, e.g.*, *Moore*, 306 F.3d at 1255; 10 L.P.R.A. § 890(a)(2); *Westernbank Puerto Rico v. Kachkar*, No. 07-1606 (ADC/BJM), 2009 WL 6337949, at *21 (D.P.R. Dec. 10, 2009) (citing 31 L.P.R.A. § 3408).[11]

---

[11] Notably, the presumptions of reliance available in federal securities fraud cases do not apply to common law fraud claims. *Securities Investor Protection Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 75 (2d Cir. 2000).

C.     **Class Action Is Not Superior To Individual Actions**

Plaintiffs also must establish that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed R. Civ. P. 23(b)(3).  However, for the reasons set forth in the UBS Opposition, class action is not a superior method of resolving these disputes.  *See* UBS Opp. at IV.  Moreover, it is clear that this case would present "difficulties in managing a class action" due to the individualized nature of having to prove Ferrer's alleged misrepresentations to each class member as well as each class member's reliance on those alleged misrepresentations.  S*ee Johnston*, 265 F.3d at 194 ("Trial of this case would involve essentially countless mini-trials to determine what alleged misrepresentation was made to each individual plaintiff, whether that person relied upon the statement, and the applicability of any defenses"); *In re Bank of Am. Home Affordable Modification Program Contract Litig.*, No. 10-2193-RWZ, 2013 WL 4759649, at *14 (D. Mass. Sept. 4, 2013); *Van West,* 199 F.R.D. at 454.

III.   **Plaintiffs Cannot Satisfy Rule 23(a)'s Requirements**

For Plaintiffs to prevail on this motion, the Court must also be "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart*, 131 S.Ct. at 2551 (quoting *Falcon*, 457 U.S. at 160).  However, by neglecting to submit any sworn affidavit in support of their motion, Plaintiffs failed to provide the Court with adequate support to engage in the "rigorous" analysis necessary to certify a class.  *See Puerto Rico College of Dental Surgeons*, 290 F.R.D. at 26-28 (criticizing plaintiffs' "complete failure to provide any detailed factual argumentation" supporting certification and stating that "courts in this district have consistently denied certification on such weak factual showings") (citations omitted).  The Motion should be denied on that basis alone.  *See* UBS Opp. at I.

Commonality and typicality may be addressed together because there is "overlap among the certification criteria of commonality, Rule 23(a)(2), typicality, Rule 23(a)(3) and

-13-

predominance, Rule 23(b)(3)."  *In re New Motor Vehicles*, 522 F.3d at 19; *Rodriguez-Feliciano v. Puerto Rico Elec. Power Auth.*, 240 F.R.D. 36, 39 (D.P.R. 2007) ("The commonality and typicality requirements of Rule 23(a) … merge into one another").  Here, Plaintiffs contend that commonality is satisfied because "the question of law refers to standardized conduct of the defendant toward members of the proposed class."  (Pls. Memo at 6-7.)  To satisfy commonality, however, Plaintiffs "must do more than merely present common questions" but "must demonstrate 'the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  *Puerto Rico College of Dental Surgeons*, 290 F.R.D. at 26 (quoting *Wal-Mart*, 131 S.Ct. at 2551).

Plaintiffs similarly argue that typicality is satisfied because "Plaintiffs, like the rest of the proposed Class, purchased CEFs during the Class Period at prices that were artificially inflated due to Defendants' uniform material omissions and misrepresentations."  (Pls. Memo at  8.)  But Rule 23(a) requires "the Court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large."  *Collazo v. Calderone*, 212 F.R.D. 437, 442 (D.P.R. 2002).  Typicality "may be defeated … if factual differences predominate to the extent where the court must make highly fact-specific or individualized determinations in order to establish a defendant's liability to each class member."  *Id.* at 443.

Here, each class member, including Plaintiffs, will need to submit proof of specific, individualized misrepresentations or omissions made by or attributed to Ferrer, which precludes Plaintiffs from satisfying commonality and typicality under Rule 23(a).  *See Van West*, 199 F.R.D. at 453 (typicality not satisfied where evidence required to prove class representative's claim differs substantially from evidence required to prove claims of other class members

because such claims rested not only on literature distributed to all prospective class members, but also on alleged oral representations made by his agent or broker).  Plaintiffs also fail to show that their damages are typical or measurable on a class-wide basis.  *See* UBS Opp. at II.C.

Regarding adequacy, Plaintiffs assert that they "will fairly and adequately protect the interests of the class" because their "interests and those of the rest of the proposed Class are completely aligned: all purchased CEFs at inflated prices based on the omissions and wrongful conduct of Defendants during the Class Period."  (Pls. Memo at 9-10)  Plaintiffs have failed to provide any support for their assertion that their interests are "completely aligned" with those of the class, that they purchased shares in each of the CEFs, or that they regularly communicate with counsel.  *See* UBS Opp. at III.  Therefore, Plaintiffs fail to satisfy the adequacy prerequisite of Rule 23(a).  *See Rodriguez-Feliciano*, 240 F.R.D. at 39.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, and those set forth in the UBS Opposition, Ferrer respectfully requests that Plaintiffs' motion to certify a class be denied.

RESPECTFULLY SUBMITTED in San Juan, Puerto Rico, on March 9, 2015.

IT IS HEREBY CERTIFIED that the foregoing was filed electronically with the Clerk of the Court using CM/ECF on this same date and that, as such, the foregoing was served electronically upon all counsel of record.

Guillermo J. Bobonis
Enrique G. Figueroa-Llinás
BOBONIS, BOBONIS & RODRIGUEZ POVENTUD
129 De Diego Ave.
San Juan, P.R. 00911-1927
Telephone: (787) 725-7941
Facsimile: (787) 725-4245

By:  /s/ Guillermo J. Bobonis
       Guillermo J. Bobonis

-15-

Melvin A. Brosterman (admitted *pro hac vice*)
Francis C. Healy (admitted *pro hac vice*)
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Attorneys for Defendant Miguel A. Ferrer*