**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re: UBS FINANCIAL SERVICES, INC. OF PUERTO RICO SECURITIES LITIGATION | Civil Case No.3: 12-cv-01663-CCC<br><br>SECURITIES CLASS ACTION<br><br><u>JURY TRIAL DEMANDED</u><br><br>**REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR INTERVENTION AND TO SUPPLEMENT COMPLAINT** |

Plaintiffs SDM Holdings, Inc., Ricardo Roman-Rivera, and Carmelo Roman ("Plaintiffs") hereby respond to Defendants' Opposition to Plaintiffs' Motion to Intervene and Supplement Complaint ("Plaintiffs' Motion")[1].

## **INTRODUCTION**

As set forth in Plaintiffs' moving papers (ECF No. 187), Plaintiffs have moved to intervene Nydia Alcaide, Transporte De Goma, Samuel Morales Vega, and Crist & John Recycling, Inc. ("Intervenors") as additional class representatives and to supplement the Complaint to extend the Class Period into 2013 (a year after the Complaint was filed) as Rule 15(d) and case law interpreting it patently permit.

In opposing Plaintiffs' Motion, as to supplementation, Defendants repeat the same "chicken little" arguments they made to the Magistrate Judge in seeking a one-month extension to file their opposition to Plaintiffs' June 30, 2015 Motion to Certify – *i.e.*, that Plaintiffs had purportedly made "drastic alterations" to their factual allegations, and engaged in "impropriety" by seeking to account for facts that had transpired since the Complaint was filed in August 2012, and information learned in on-going discovery. In response to that motion, the Magistrate Judge granted the requested one-month extension, while expressly noting that he was not adopting Defendants' contentions regarding why the extension was appropriate – so that even if Defendants are correct (which they are not), they have suffered no prejudice as a result of the purportedly "new" claims added by this motion.

More importantly, however, Plaintiffs dispute that the proposed extension of the Class Period has remade their claims as Defendants argue – instead it merely includes additional purchasers who continued to be misled after the SEC filed its charges. UBS, in settling the SEC's charges, attempted to paint them as technical violations that had caused no losses to

---

[1] Defendants' opposition to Plaintiffs' Motion is referred to herein as "Defs. Br."

investors, and which had been corrected long ago.  By UBS's "no harm, no foul" arguments it made to the press, in letters to investors, and to all UBS PR employees, UBS continued to mislead investors, including those who purchased after the May 1, 2012 SEC charges were published (and the date on which the Class Period in the Complaint currently ends).  Moreover, Defendants have known throughout discovery that Plaintiffs considered the 2013 Closed End Fund ("CEF") price collapse relevant to the existing class member claims, because it affected Plaintiffs' damages, so had Defendants properly complied with their existing discovery obligations, this matter would have no impact on discovery at all.

As to intervention, Plaintiffs timely moved to intervene class representatives while ensuring (through depositions, documents, and briefing) there is no prejudice. Nor do any of the technical challenges Defendants raise in their brief have merit.  Thus, in accordance with the principles underlying Rules 24 and 15(d), Plaintiffs' Motion should be granted.

## ARGUMENT

**I.      The Complaint Should Be Supplemented to Permit Investors Who Purchased CEFs Between May 2012 and September 2013 to Recover**

Defendants have rehashed the same arguments that they have made in a series of briefs and motions made over the last 90 days – *i.e.*, that Plaintiffs have purportedly improperly and unfairly changed the theory and scope of their claims.  Plaintiffs have, however, long been abundantly clear that this case involves 15 Funds as opposed to the six Funds Defendants suggest, and a longer class period than that proposed in the Complaint.  Indeed, on June 30, 2015, Plaintiffs moved to certify a class of investors in 15 different CEFs based on a common scheme of artificially inflating their supposed "market prices" from January 2008 to September 2013 through a pattern of false statements, half truths, and misleading omissions.  While Defendants claim that the Motion to Certify, and now Plaintiffs' Motion here, have "radically

change[d]" the case, even a cursory review of the Complaint versus Plaintiffs' later papers shows the weakness in Defendants' position.

As Plaintiffs explained in their recent opposition to Defendants' motion to strike, the allegations of Defendants' false and misleading statements and omissions about the CEFs have barely changed since the SEC filed their charges and Plaintiffs filed their Complaint. *See* ECF No. 201 at 2 ("[T]his case has *always* been and continues to be about a scheme to mislead investors about the 'fundamental characteristics' of the CEFs and their supposed 'market prices.'") (emphasis in orginal). What has changed between August 2012, when the original Complaint was filed, and June 30, 2015, is that the prices of the CEFs collapsed. This put the lie to the position repeatedly and publicly espoused by UBS and its senior officers taken after UBS had agreed to settle the SEC charges: that regardless of whether there had been technical violations of the federal securities law in 2008-2009 (which UBS had chosen not to contest), the CEFs were an excellent long-term investment.

This was the theme that UBS officers and their public relations firm, Marchand ICS Group, Inc. ("Marchand") carefully planted in local Puerto Rico newspapers after the SEC issued its press release about its settlement with UBS. Indeed, UBS's misleading story on the SEC charges is in the very news articles that Defendants have submitted with their opposition papers on this very motion. For example, on May 2, 2012, *El Nuevo Dia* reported the following as UBS's response to the SEC charges and settlement:[2]

**Message to clients**

After the announcement, UBS sent a letter to its clients, to which El Nuevo Día gained access. In the letter, UBS said that it was "pleased" to have reached an agreement with the SEC.

---

[2] Defendants submitted the Spanish version of the May 2, 2012 article (Defs. Br., Ex. 2). Ex. A to the Declaration of Amanda F. Lawrence ("Lawrence Decl.") is the English translation. Other articles Defendants attached in their submission included similar statements attributed to UBS.

3

> *"The investors who purchased (closed-end) Fund shares during this period and still keep them, have obtained substantial earnings during the last three years"*, indicated the letter from the investment firm.
>
> According to UBS, during the last year, most of the funds have generated annual revenues in excess of 20%.
>
> *"We believe that any realized loss by the investors who purchased shares through UBS during the period from 2008 to 2009 and sold them, was less than $5 million", said UBS when indicating that, as of March, the aggregate capitalization of the funds was about $5,000 million*.

(emphasis added).

The letter UBS mailed to investors to which the *El Nuevo Dia* article appears to refer has only recently been produced from Marchand.[3] Also just produced from Marchand's files was an e-mail from UBS's chief in the United States – which was directed "to All Puerto Rico Employees." This e-mail included four key messages as the takeaway from the UBS press release on UBS's settlement with the SEC:

- The SEC settlement in this civil administrative proceeding puts an end to an investigation that we told our clients about back in February of 2011.

- This matter relates to the trading of Fund shares between 2008 and 2009, a period during which the global financial markets experienced significant turmoil.

- *Clients who bought shares during this period and still hold them have made substantial returns over the past three years*. Most of the Funds have produced total annual returns of more than 20% during the past year.

- *Some investors who bought shares during this period and sold them may have lost money, however, UBS believes that the total aggregate of those*

---

[3] While Plaintiffs served a third-party subpoena on Marchand dated July 27, 2015, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), UBS counsel, objected to the return date for production. On October 14, 2015, ten weeks after service of the subpoena, Marchand produced 62 pages of documents, including the "notice" to investors attached as Ex. B to the Lawrence Decl. Marchand has yet to produce its e-mails in response to the subpoena (Lawrence Decl., ¶3) and Defendants have hidden away their e-mail communications with Marchand under an unorthodox invocation of the "attorney-client" privilege. *See* the excerpt of UBS's privilege log withholding e-mail communications with Marchand, Ex. C to the Lawrence Decl.

>    *losses is about $5 million*.  By comparison, the total market capitalization
>    of the UBS Funds as of 3/31/2012 was almost $5 billion.

Ex. D to Lawrence Decl (emphasis added).

As UBS made it plain that the misconduct asserted by the SEC was "old news" and had not injured investors, and that the CEFs remained a terrific investment, it is hardly surprising that investors continued to purchase CEFs after the SEC announced its charges. Only in 2013 was the "no harm, no foul" message shown to be untrue – when Carlos Ortiz finally changed the so-called CEF "market prices" to correspond to their much lower net asset values.  Defendants have steadfastly acted to hide the ball by improperly refusing to produce any documents dated after May 1, 2012.  As Plaintiffs explained when seeking to compel UBS officers' documents that were created after May 2012, the 2013 events are an important part of the *existing* case because they are necessary to calculate investors' damages, regardless of whether the investors purchased the CEFs before or after May 1, 2012.  *See* ECF No. 197 at 5-10.  Plaintiffs have brought this motion to supplement the Complaint to permit investors who purchased their shares *after* May 1, 2012 to recover, because they continued to be misled – as described above – and should be permitted to recover as part of the class in this action.

## II. Plaintiffs' Motion to Intervene Is Procedurally Proper

As to intervention, Defendants attempt to have Plaintiffs' Motion denied on two alleged procedural "defects."  Both arguments fail under ample case law.

To begin with, the law is clear that, at intervention, an accompanying pleading is not required for the Motion to be granted.  Indeed, it is the majority position among the federal courts of appeal that a motion to intervene can be granted even if no proposed pleading is attached. *See, e.g., Spring Const. Co., Inc. v. Harris*, 614 F.2d 374, 376-77 (4th Cir. 1980) (intervention allowed where intervenor's petition set forth sufficient facts and allegations to

5

apprise opposing party of intervenor's claims); *Beckman Industries, Inc. v. International Ins. Co*., 966 F.2d 470, 474-75 (9th Cir. 1992) *certiorari denied* 506 U.S. 868 (same); *U.S. v. Metropolitan St. Louis Sewer Dist*., 569 F.3d 829, 834 (8th Cir. 2009) (same). For example, in *Westchester Fire Ins. Co. v. Mendez*, the Ninth Circuit squarely rejected Defendants' argument that the motion must be denied because it did not have an accompanying pleading. 585 F.3d 1183, 1188 (9th Cir. 2009). The court held that the intervenor's failure to file a pleading was a "'purely technical' defect which does not result in the 'disregard of any substantial right.'" *Id*.[4] The court observed that it and other courts "have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion." *Id*. Furthermore, here, there can be no question that Defendants are aware of the basis for intervention and the claims of the Intervenors: ***they are identical to those of the current named Plaintiffs and the Class as Intervenors adopt the Complaint in whole.***[5]

Secondly, Plaintiffs ***and Intervenors*** actually filed the motion. *See, e.g.,* ECF No. 187-1 at 2 ("Plaintiffs and proposed Intervenors jointly move for the latters' intervention as additional class representatives.") Even if they had not, the law is clear that Plaintiffs may file this motion. *See, e.g., In re Cigna Corp. Sec. Litig.*, No. CIV.A. 02-8088, 2005 WL 3952802, at *1 (E.D. Pa. Feb. 23, 2005) (granting motion of lead plaintiff to allow two other putative class members to intervene as proposed class representatives); *In re JDS Uniphase Corp. Sec. Litig*., No. C 02-1486, 2005 WL 2562621, at *5 (N.D. Cal. Oct. 12, 2005). Plaintiffs' Motion thus cannot be denied on the technical grounds urged by Defendants.

---

[4] Unless otherwise indicated, citations are omitted and emphasis is added.

[5] Should the Court require a pleading with Interevenors' names added and the proposed extended Class Period listed, Plaintiffs can file such a pleading. Furthermore, the fact that Intervenors adopt the Complaint in its entirety "satisfies the low threshold requirement of common questions or law or fact." *P.R. Tel. Co., Inc. v. San Juan Cable LLC,* 298 F.R.D. 28, 31 (D.P.R. 2014).

6

**III.    The Motion Is Timely**

The motion to intervene was filed at the appropriate time: after Intervenors realized their rights may be affected and as soon as they obtained account documents from UBS. While Defendants would like to impose a more stringent timeliness standard on Intervenors (Defs. Br. at 8), that is not the law and would defeat the very purpose of class actions if applied. Timeliness is not measured based on when the case was filed (Defs. Br. at 8). Even Defendants' own cases dictate that timeliness is actually measured by when "the putative intervenor knew or reasonably should have known that ***his interest was imperiled before he decided to seek intervention***." *Efron v. UBS Fin. Servs. Inc. of P.R.,* 746 F.3d 30, 35 (1st Cir. 2014).

In this case, the question is thus at what point in time Intervenors became aware that Plaintiffs may not be able to adequately represent their interests. That date is when Defendants made the argument, in their opposition to class certification, that Plaintiffs could only represent the five funds in which they invested. Plaintiffs vigorously dispute this assertion, but in an abundance of caution, sought intervention. Therefore, it can be said that intervention now is not only timely but ***early*** as the Court has not yet determined whether Plaintiffs can represent all 15 funds. *See, e.g. Beach v. Healthways, Inc.,* 264 F.R.D. 360, 364 (M.D. Tenn. 2010) (it was not until the court found lead plaintiff inadequate that intervention was required); *In re Lutheran Bhd Variable Ins. Prods. Co.,* No. 99-MD-1309, 2002 WL 31371945, at *3 (D Minn. Oct. 7, 2002) (motion was timely as brought after learning that representatives' claims were dismissed); *In re Bridgestone Sec. Litig.,* 430 F.Supp. 2d 728, 728 (M.D. Tenn. 2006). While Defendants point to *Boston Scientific Corp. ERISA Litig.,* 254 F.R.D. 24 (D. Mass. 2008) throughout their brief to suggest a lack of timeliness (Defs. Br. at 8), that case is readily distinguishable and, indeed, has been distinguished by other cases. *See, e.g. Beach,* 264 F.R.D. at 365. The Court in *Boston Scientific,* in denying a motion for intervention, went out of its way to note the "unusual

7

circumstances" of the case, including the fact that the intervenor had been an original plaintiff who withdrew and then, two years later, sought to return to the case.

If Defendants' argument was to be accepted, it would violate the very purpose of class actions. As numerous courts have stated, following the Supreme Court's ruling in *American Pipe and Construction, Co. v. Utah,* 414 U.S. 538 (1974), intervening absent class members are permitted, if not encouraged, to sit on the proverbial sides lines until their rights may be affected. The very purpose of the *American Pipe* decision was to prevent a "needless multiplicity of actions" that would result if putative class members were required to file actions to hedge against the possibility of the class action failing. One court recently, in *Chen-Oster v. Goldman, Sachs & Co.,* No. 10 Civ. 6950, 2015 WL 4619663, at *6-8 (S.D.N.Y. Aug. 3, 2015) stated that:

> In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 552 (1973), the Supreme Court characterized potential class members, during the pre-certification period, as "mere passive beneficiaries of the action brought in their behalf." The Court held that "[n]ot until the existence and limits of the class have been established and notice of membership has been sent does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case." *Id*. Indeed, it would undermine the efficiencies of class litigation to require absent class members who learn of nothing more than the existence of the litigation to intervene immediately in order to avoid the risk that, at some later stage in the case, the class representatives may no longer be able to protect their interests.
>
> \*   \*   \*
>
> Unnamed class members need not monitor class litigation to ensure that the class representatives maintain standing and otherwise remain suitable.

Therefore, Intervenors did precisely what the law envisions: waited until their rights potentially became imperiled and then sought intervention.

## IV. There Is No Prejudice to Defendants from the Intervention of New Plaintiffs

Defendants make baseless arguments as to how intervention will somehow be prejudicial to them. (Defs. Br. at 4, 6-11). Again, Defendants were made aware of the intent to intervene and offered depositions of the two proposed Intervenors prior to the date their opposition brief

was due. ***They declined***. ECF No. 187-2, ¶4. Even now that Defendants opposed intervention, Plaintiffs have agreed to permit the depositions of the Intervenors and scheduled those depositions, at Defendants' request, for October 28 and 29. Lawrence Decl., ¶4. Furthermore, Plaintiffs immediately produced Intervenors' documents to permit Defendants review time. *Id.*, ¶5. It is inconceivable that Defendants will be prejudiced by intervention given these facts. Defendants categorize intervention as being done upon the "completion of briefing" (Defs. Br. at 10), but this is patently untrue. Defendants have requested a surreply on class certification to be filed November 4, 2015 (ECF No. 194) - ***following depositions of the Intervenors*** which Plaintiffs do not oppose provided that it is limited to Intervenors' adequacy. They have thus been afforded documents, depositions, ample notice, and briefing regarding the Intervenors. There is no prejudice. *See,e.g. Adrey v. Federal Kemper Ins. Co.,* 142 F.R.D. 105, 117 (E.D. Pa. 1992) (Intervenors made themselves available for discovery in anticipation of intervention, thus no prejudice); *Florida Pediatric Soc. v. Benson,* No. 05-23037-CIV, 2008 WL 3072805, at *1 (S.D. Fla. Aug. 28, 2008) (intervention allowed when two extra months would be required to take discovery from intervenors and postpone class certification).

Defendants' cases suggesting prejudice are readily distinguishable. As discussed above, *Boston Scientific* (Defs. Br. at 9) turned on "unusual circumstance," including lengthy briefing about the adequacy of the intervenor: a prior named plaintiff who withdrew as he was unwilling to timely attend a deposition. 254 F.R.D. 24, 35. *In re Sonus Networks, Inc. Sec. Litig.,* 229 F.R.D. 339 (D. Mass. 2005), (Defs. Br. at 9), likewise turned on very unusual and specific facts as the court there issued an order allowing plaintiffs to add named plaintiffs, which they ignored and then, months later, sought to rectify that error through intervention. The Court held that prejudice to defendants existed because plaintiff and his counsel "miscalculated by not heeding the warning provided by the [order]." *Id.* at 346. Finally, *P.R. Tel. Co., Inc.,* 298 F.R.D. 28,

9

(Defs. Br. at 10), is procedurally at odds with this case as intervention was sought after the close of fact discovery, on the eve of summary judgment, and in the midst of settlement negotiations. *P.R. Tel. Co., Inc.,* 298 F.R.D. at 32.

Conversely, Defendants attempt to minimize the prejudice to the class absent intervention. (Defs. Br. at 11). This is not surprising given the fact that, should the Court hold Plaintiffs can only represent the five funds in which they invested ***and*** deny intervention, the case will be limited to five funds – or roughly one third of the total damages. Defendants are simply trying to escape liability to investors in those ten funds, despite damages that are likely to run into the hundreds of millions of dollars (if not more). This is not what the federal rules on class certification intend.[6] *See, e.g. Lawrence v. Phillip Morris Cos. Inc.,* No. 94-CV-1494, 1999 WL 51845, at *3 (E.D.N.Y. 1997) (intervention would allow similarly situated class members to be "rest assured their claims will be fully and fairly represented . . .").

## CONCLUSION

For the reasons stated herein, Plaintiffs ask that this Court grant their motion and: (1) permit intervention by Intervenors; and (2) allow Plaintiffs to supplement the Complaint to extend the Class Period.

Dated: October 23, 2015            Respectfully submitted,
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**

s/ Amanda F. Lawrence
David R. Scott, Esq. (admitted *pro hac vice*)
Amanda F. Lawrence, Esq. (admitted *pro hac vice*)

---

[6] While Defendants argue that Intervenors' interests would be protected in individual FINRA actions (Defs. Br. at 10), this is a red herring. The four intervenors might be able to file FINRA actions, but the members of the class they would represent will largely be unable to file FINRA actions due to a lack of representation, resources, or information. *See,* ECF No. 169-10. Therefore, once again, Defendants are setting up Intervenors and thousands of class members for ***no relief***. Likewise, although Defendants point to the *Fernandez* action as protecting investors in these funds, they have moved to dismiss that case on multiple grounds. *See* ECF Nos. 87 and 91. This case, on the other hand, has survived a motion to dismiss and a motion for reconsideration.

156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537
Fax: (860) 537-4432
david.scott@scott-scott.com
alawrence@scott-scott.com

Beth A, Kaswan, Esq. (admitted *pro hac vice)*
Deborah Clark-Weintraub, Esq. (admitted *pro hac vice)*
Joseph P. Guglielmo, Esq. (admitted *pro hac vice*)
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Tel.: (212) 223-6444
Fax: (212) 223-6334
bkaswan@scott-scott.com
dweintraub@scott-scott.com
jguglielmo@scott-scott.com

Luis E. Miñana, Esq.
USDC-PR No. 225608
**ESPADA,MIÑANA, & PEDROSA LAW OFFICES, PSC.**
122 Calle Manuel Dómenech Altos
Urb, Baldrich
San Juan, PR 00918
minanalaw@yahoo.com
Tel.: (787) 758-1999
Fax: (787) 773-0500

and

Héctor Eduardo Pedrosa-Luna, Esq.
USDC-PR No. 223202
P.O. Box 9023963
San Juan, PR 00902-7511
Tel.: (787) 920-7983
Fax: (787) 764-7511

*Lead Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2015 , I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

At Colchester, Connecticut, October 23, 2015.

    s/ Amanda F. Lawrence
    Amanda F. Lawrence, Esq. (admitted *pro hac vice*)
    **SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
    156 South Main Street
    P.O. Box 192
    Colchester, CT  06415
    Tel.:  (860) 537-5537
    Fax:  (860) 537-4432
    alawrence@scott-scott.com